# Exhibit 1

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

ANTHONY L. SLAPIKAS
AND ALICE B. SLAPIKAS
621 Orchard Hill Drive
Pittsburgh, PA 15238
for themselves and all others similarly
situated,

        Plaintiff,

    v.

FIRST AMERICAN TITLE INSURANCE
COMPANY
c/o Corporation Service Company
2704 Commerce Drive
Harrisburg, PA 17110

       Defendant.

CIVIL DIVISION

No. 6D 32908

**COMPLAINT IN CIVIL ACTION--
CLASS ACTION**

Code No. 011

Filed on behalf of: Anthony and Alice
Slapikas, for themselves and all others
similarly situated

Counsel of Record for these Parties:

Adrian N. Roe, Esquire
Pa. I.D. No. 61391

Watkins Dulac & Roe P.C.
Two Gateway Center, 17 East
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
(412) 434-5544

## <u>JURY TRIAL DEMANDED</u>





OPS$LAURIE01
12-19-2005  04:05:11
GD-05-032908

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| ANTHONY L. SLAPIKAS<br>AND ALICE B. SLAPIKAS<br>for themselves and all others similarly<br>situated,<br><br>           Plaintiffs,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CLASS ACTION**<br><br>No.<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION—CLASS ACTION

AND NOW COME Plaintiffs Anthony L. Slapikas and Alice B. Slapikas, husband and

wife (hereinafter "Plaintiffs"), for themselves and all others similarly situated, by their

undersigned counsel, Watkins Dulac & Roe P.C., and respectfully submit this Complaint In Civil

Action—Class Action.  Plaintiffs plead based on personal knowledge as to themselves and based

on information and belief formed after reasonable investigation as to all other matters.

### I. PARTIES

1.      Plaintiffs reside at 626 Orchard Hill Drive, Pittsburgh, PA 15238 ("Property").

2.      Defendant First American Title Insurance Corporation ("First American") is

registered to do business in the Commonwealth of Pennsylvania.

### II. JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the parties to this action.

4.      Venue is proper because Plaintiffs reside in Allegheny County, First American does business in Allegheny County, and some of the transactions at issue occurred in Allegheny County..

## III. TRANSACTIONS INVOLVING PLAINTIFFS

5.      Plaintiffs purchased the Property on or about January 19, 1990.

6.      On or about September 19, 2001, Plaintiffs refinanced the Property by means of a loan from Chase Manhattan Mortgage Company (the "Chase Refinancing").

7.      In connection with the Chase Refinancing, Plaintiffs purchased a loan policy of title insurance.

8.      A true and correct copy of the HUD-1 Settlement Statement for the Chase Refinancing is attached hereto as Exhibit 1.

9.      On or about November 7, 2001, the mortgage ("Chase Mortgage") executed by Plaintiffs in connection with the Chase Refinancing was recorded with the Allegheny County Recorder of Deeds.

10.     On or about June 24, 2003, Plaintiffs refinanced the Property by means of a loan from National City Mortgage Corporation in the amount of $168,000 (the "Nat. City Refinancing").

11.     Mezzo Land Services, LLC, an authorized agent of Defendant First American, acted as the Settlement Agent in connection with the Nat. City Refinancing.

12.     In connection with the Nat. City Refinancing, Plaintiffs purchased a lender's policy of title insurance issued by First American for a premium of $1,198.75.

13.     A true and correct copy of the HUD-1 Settlement Statement prepared in connection with the Nat. City Refinancing is attached hereto as Exhibit 2.

2

14.     First American is a member of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP").

15.     TIRBOP is licensed by the Pennsylvania Insurance Department.

16.     TIRBOP has prepared a Title Insurance Rate Manual ("Manual").

17.     The Manual sets forth the schedule of rates for TIRBOP members.

18.     The Manual has been filed with and approved by the Pennsylvania Insurance Department in accordance with The Insurance Company Law of 1921, 40 P.S. § 910-41.

19.     As a TIRBOP member, First American is legally obligated to charge the rates set forth in the Manual.

20.     A true and correct copy of the Manual as in effect on the date of the Nat. City Refinancing is attached hereto as Exhibit 3.

21.     Sections 5.6 of the TIRBOP Manual, as in effect on the date of the Nat. City Refinancing, provided:

> When a refinance or substitution loan is made within 3 years from the date of the closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the charge shall be 80% of the reissue rate. . . .

22.     The rate specified in Section 5.6 of the Manual is hereinafter referred to as the "Refinance Rate."

23.     In connection with the Nat. City Refinancing, First American performed underwriting, which included a search for prior deeds and mortgages in the chain of title for the Property.  The underwriting disclosed the Chase Mortgage.  As a result of its receipt of this evidence of an earlier title insurance policy and/or previously insured mortgage interest, First American knew that Plaintiffs qualified for the Refinance Rate.

3

24. Notwithstanding its knowledge that Plaintiffs qualified for the Refinance Rate Rate, First American prepared a HUD-1 Settlement Statement, attached hereto as Exhibit 2, which falsely represented that an amount equivalent to the Basic Rate set forth in the Manual was the "actual" charge for title insurance in connection with the Nat.City Refinancing.

25. This representation was false and misleading. The Basic Rate was not the true and accurate charge for the Nat. City Refinancing because, under Section 5.6 of the Manual, Plaintiffs qualified for the Refinance Rate.

26. Notwithstanding its knowledge that Plaintiff qualified for the Refinance Rate, First American charged Plaintiffs the Basic Rate.

27. Plaintiffs actually and reasonably relied on First American's representations in the HUD-1 Settlement Statement regarding the true and accurate charge for title insurance.

28. As a direct and proximate result of First American's conduct, Plaintiffs paid the Basic Rate rather than the Refinance Rate for title insurance in connection with the Nat. City Refinancing and were thus overcharged in the amount of $335.65.

## IV. CLASS ACTION ALLEGATIONS

29. The acts, practices and conduct of which Plaintiffs complain commonly affect a class consisting of all owners of residential real estate in the Commonwealth of Pennsylvania who, at any time during the six years preceding the filing of this Complaint: (a) paid premiums for the purchase of title insurance from First American; (b) qualified for the Reissue Rate, Refinance Rate, or other discount from the Basic Rate provided in the Manual; and (c) did not receive the discount specified in the Manual (hereinafter the "Plaintiff Class").

30. Plaintiffs are members of the Plaintiff Class.

4

31.     The members of the Plaintiff Class are so numerous that joinder is impractical. Upon information and belief, the Plaintiff Class is comprised of thousands of individuals who are residents of Pennsylvania.

32.     This action can be efficiently and effectively managed as a class action. The size of the Plaintiff Class is not so large that management of the action as a class action will be excessively difficult.

33.     There are questions of law and fact common to the members of the Plaintiff Class, which questions predominate over any individual issues.

34.     Plaintiffs' claims are typical of the claims of all members of the Plaintiff Class. By proving their case, Plaintiffs will simultaneously prove the case of the members of the Plaintiff Class.

35.     Plaintiffs will fairly and adequately represent the Plaintiff Class. Plaintiffs are willing and able to serve as a representative of the Plaintiff Class, and have no knowledge of any possible divergent interest between or among Plaintiffs and any member of the Plaintiff Class. Plaintiffs have engaged competent counsel capable of providing effective representation on behalf of Plaintiffs and the Plaintiff Class. Plaintiffs has or can acquire adequate financial resources to assure that the Plaintiff Class's interests will not be harmed.

36.     The prosecution of separate actions by individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class which would create incompatible standards of conduct.

37.     The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Plaintiff Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38.     This Court is an appropriate forum for the litigation of the claims of the entire Plaintiff Class.

39.     Questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting individual members.  The determinative facts and legal principles apply universally to Plaintiff and the members of the Plaintiff Class.  Indeed, the predominating legal issue in this case, which cuts across the entire Plaintiff Class, is whether First American breached a legal duty universally owed to Plaintiffs and the members of the Plaintiff Class.  If liability is established on the basis of the common facts applied to the universally-applicable principles of law, then damages will be calculated based on the filed rates.

40.     In light of the complexity of the issues and the expense of litigation, the separate claims of members of the Plaintiff Class are insufficient in amount to support separate actions and, in the absence of class certification, members of the Plaintiff Class will, as a practical matter, be effectively precluded from protecting and enforcing their legal rights.  A class action would be a superior method of adjudicating the claims of the Plaintiff Class.

41.     The amount that may be recovered by individual members of the Plaintiff Class is not so small in relation to the expense and effort of administering this action as not to justify a class action.

42.     Plaintiffs are not aware of any litigation that has been commenced by or against members of the Plaintiff Class in Pennsylvania involving any of the issues presented in this case.

## V.  **FIRST AMERICAN'S ILLEGAL COURSE OF CONDUCT**

43.     First American engaged in a common, routine, and customary practice and course of conduct of preparing HUD-1 Settlement Statements that, as in the case of Plaintiffs, falsely represented that an amount corresponding to the Basic Rate was the "actual" or "true and accurate" amount for title insurance.

6

44. Based on information obtained during underwriting, First American knew that the true and accurate amount for title insurance as to Plaintiffs and the members of the Plaintiff Class was an amount corresponding to the Refinance Rate or, in certain cases, the Reissue Rate set forth in Section 5.3 of the Manual.

45. First American engaged in a common, routine, and customary practice and course of conduct of overcharging persons engaged in real estate transactions to whom it had made the false representations alleged in paragraph 43.

46. First American maintained a common, routine and customary practice and course of conduct of granting the discounts provided for in the Manual only when persons engaged in real estate transactions specifically requested or demanded the discounts and/or in situations in which it served the competitive business interests of First American to apply the discounted rates.

47. First American knew that the vast majority of persons engaged in real estate transactions who qualified for discounts, such as Plaintiffs, did not receive the discounts to which they were entitled under the Manual.

48. With regard to the collection of premiums for title insurance and the performance of title examination and other services, First American acted not only in its capacity as a title insurer, but also as agent and fiduciary for Plaintiffs and the members of the Plaintiff Class.

49. Plaintiffs and the members of the Plaintiff Class reposed a special trust and confidence in First American. Plaintiffs and the members of the Plaintiff Class delegated to First American responsibility for structuring the purchase of title insurance, including the preparation of a true and accurate HUD-1 Settlement Statement and the computation of the applicable rate or charge for the title insurance.

7

50.     First American structured the transactions to charge the higher Basic Rate rather than the applicable and legally required discounted rates.  The transactional structure selected by First American benefited First American but harmed the consumers.

51.     Plaintiffs and the members of the Plaintiff Class received no additional coverage or benefit of any kind as a result of paying the Basic Rate as opposed to the Reissue Rate or the Refinance Rate.

52.     By virtue of the responsibility for structuring the transaction delegated to it, First American determined the rate to be charged for title insurance.  First American routinely abused this position of trust by selecting the Basic Rate rather than the discounted Reissue Rate or Refinance Rate.

53.     Plaintiffs and the members of the Plaintiff class relied on the representations made to them by First American that the charge for title insurance set forth on Line 1108 of the HUD-1 Settlement Statement (executed by Plaintiffs and each member of the Plaintiff Class) was a true and accurate charge for title insurance.

54.     The charge for title insurance set forth on Line 1108 of the HUD-1 executed by Plaintiffs and each member of the Plaintiff Class was not true and accurate because said charge was not in accordance with the Manual.

55.     Based on its position in the title insurance business and as agent for Plaintiffs and the Plaintiff Class, First American had actual or constructive knowledge that Plaintiffs and the members of the Plaintiff Class qualified for but did not receive the available discounts.  To the extent, if any, that First American claims that the discounts are available only upon the production of evidence of a prior title insurance policy within the period specified in the Manual, which is not a meritorious defense, First American obtained such evidence in the ordinary course

8

of underwriting the title insurance policies purchased by Plaintiffs and each member of the Plaintiff Class.

56.     Plaintiffs and the members of the Plaintiff Class seek compensatory damages representing the difference between the amount charged for title insurance charged by First American and the amount that the premiums would have been had First American charged the discounted rates specified in the Manual.

## VI. <u>CAUSES OF ACTION</u>

Pleading in the alternative, Plaintiffs assert the following causes of action.

### <u>COUNT I</u>
### (Breach of Express Contract)

57.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 56 of this Complaint as if set forth fully herein.

58.     First American, through its authorized agents (including, without limitation, Mezzo Land Servicing LLC), entered into express contacts (hereinafter the "Express Contract") with Plaintiffs and each member of the Plaintiff Class.

59.     The terms of the Express Contract are set forth in the HUD-1 Settlement Statement signed by Plaintiffs, Exhibit 2 to the Complaint, and materially identical HUD-1 Settlement Statements signed by each and every member of the Plaintiff Class.

60.     Plaintiffs (as well as the members of the Plaintiff Class) and First American mutually assented to the terms of the Express Contract.

61.     The terms of the Express Contract were that, for the consideration recited on Line 1108 of the HUD-1 Settlement Statement, First American would (a) prepare the HUD-1 Settlement Statement; (b) enter "actual" or true and accurate charges on the HUD-1 Settlement Statement; and (c) charge a true and accurate amount for title insurance, all as set forth in the

HUD-1 Settlement Statement attached hereto as Exhibit 2 or materially identical forms executed by each member of the Plaintiff Class.

62.     As to Plaintiffs and each member of the Plaintiff Class, First American materially breached the Express Contract by failing to (a) prepare true and accurate HUD-1 Settlement Statement, (b) stating false and inaccurate charges for title insurance on the HUD-1 Settlement Statement, and (c) charging an amount for title insurance that was not true and accurate as it was not the rate mandated by the Manual.

63.     As a result of First American's breaches of the Express Contract, Plaintiffs and the Plaintiff class have suffered damages.

## COUNT II
### (Breach of Implied Contract)

64.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

65.     Pursuant to the terms set forth in the HUD-1, First American entered into implied contracts (the "Implied Contract") with Plaintiffs and the members of the Plaintiff Class.

66.     Plaintiffs (as well as the members of the Plaintiff Class) and First American mutually assented to the terms of the Implied Contract.

67.     The terms of the Implied Contract are set forth in the HUD-1 Settlement Statement signed by Plaintiffs, Exhibit 2 to the Complaint, and materially identical HUD-1 Settlement Statements signed by each and every member of the Plaintiff Class.

68.     The terms of the Implied Contract were that, for the consideration recited on Line 1108 of the HUD-1 Settlement Statement, First American would (a) prepare the HUD-1 Settlement Statement; (b) enter "actual" or true and accurate charges on such HUD-1 Settlement Statement; and (c) charge a true and accurate amount for title insurance, all as set forth in the

10

HUD-1 Settlement Statement attached hereto as Exhibit 2 or materially identical forms executed by each member of the Plaintiff Class.

69.     As to Plaintiffs and each member of the Plaintiff Class, First American materially breached the Implied Contract by failing to (a) prepare  true and accurate HUD-1 Settlement Statement, (b) stating false and inaccurate charges for title insurance on the HUD-1 Settlement Statement, and (c) charging an amount for title insurance that was not true and accurate as it was not the rate mandated by the Manual.

70.     As a direct and proximate result of First American's breaches of the Implied Contract, Plaintiffs and the Plaintiff Class members have suffered damages.

## COUNT III
### (Fraud)

71.     Plaintiffs hereby incorporates by reference each and every allegation contained in paragraphs 1 through 70 of this Complaint as if set forth fully herein.

72.     In connection with the closing of Nat. City Refinancing and comparable transactions involving each member of the Plaintiff Class, First American uttered false and materially misleading representations and/or failed to disclose material information while under a duty to speak

73.     First American's representations on the HUD-1 that the "actual" or "true and accurate" charge for title insurance was as set forth on Line 1108 of the HUD-1 (the "Misrepresentation") was false and misleading.

74.     First American uttered the Misrepresentation with knowledge of its falsity or with reckless disregard as to its falsity.

75.     The Misrepresentation was materially misleading because Plaintiffs and the members of the Plaintiff Class would not have paid the Basic Rate if First American had not falsely represented that it was the applicable charge.

11

76.     First American uttered the Misrepresentation with the intent of misleading Plaintiffs and each member of the Plaintiff Class. Plaintiffs and each member of the Plaintiff Class justifiably relied on the Misrepresentations.

78.     By virtue of the circumstances as a whole, including the Misrepresentation in the HUD-1, the standardized and routinized nature of the title insurance transactions at issue, and the delegation to First American of responsibility for structuring the title insurance transactions, First American owed special legal duties to Plaintiffs and the members of the Plaintiff Class.

79.     First American's special duties were in the nature of fiduciary duties.

80.     By virtue of the special duties First American owed to Plaintiffs and the members of the Plaintiff Class, First American was legally obligated to disclose the applicable rates under the Manual, to correct the Misrepresentation, and/or to charge eligible persons the Reissue Rate or the Refinance Rate.

81.     First American breached its special duties to Plaintiffs and the members of the Plaintiff Class by failing to disclose the applicable rates under the Manual, failing to correct the Misrepresentation, and/or by charging Plaintiffs and the members of the Plaintiff Class the Basic Rate rather than the Reissue Rate or Refinance Rate.

82.     As a direct and proximate result of the fraudulent conduct of First American, Plaintiff and the Plaintiff Class have suffered damages in an amount to be proved at trial.

83.     First American acted with malicious, willful and/or with reckless disregard for the rights of Plaintiffs and/or the members of the Plaintiff Class, thereby entitling Plaintiffs and the members of the Plaintiff Class to recover punitive damages.

## COUNT IV
### (Unfair Trade Practices and Consumer Protection Law)

84.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 83 of this Complaint, including but not limited to, the common law fraud allegations alleged in Count III, as if set forth fully herein.

85.     The purchase by Plaintiffs and the members of the Plaintiff Class of title insurance constitutes the purchase of services primarily for personal, family or household purposes under Section 9 of the Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 P.S. § 201-9.2.

86.     The conduct of First American violates some or all of the following provisions of the UTPCPL:

·   § 201-2(4)(v) – "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"

·   § 201-2(4)(vii) – "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"

·   § 201-2(4)(ix) – "advertising goods or services with the intent not to sell them as advertised"; and

·   § 201-2(4)(xxi) – "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."

87.     First American committed a *per se* violation of the UTPCPL by charging an amount for title insurance in excess of that allowed under law, 40 P.S. §§ 910-37(h).

13

88.     As a result of the unlawful conduct of First American, Plaintiffs and the Plaintiff

Class members have suffered damages in an amount to be proved at trial.

## COUNT V
### (Conversion)

89.     Plaintiffs hereby incorporate by reference each and every allegation contained in

paragraphs 1 through 88 of this Complaint as if set forth fully herein.

90.     The assessment of premiums by First American from Plaintiffs and the Plaintiff

Class members which were not calculated in accordance with the Manual constituted the

conversion of the monies of Plaintiffs and the members of the Plaintiff Class.

91.     As a direct and proximate result of the conversion by First American of monies

belonging to Plaintiffs and/or members of the Plaintiff Class, Plaintiffs and/or members of the

Plaintiff Class have suffered damages in an amount to be proved at trial.

## COUNT VI
### (Unjust Enrichment)

92.     Plaintiffs hereby incorporates by reference each and every allegation contained in

paragraphs 1 through 91 of this Complaint as if set forth fully herein.

93.     First American has been unjustly enriched at the expense of Plaintiffs and the

members of the Plaintiff Class.

94.     As a direct and proximate result of the unjust enrichment of First American,

Plaintiffs and the Plaintiff Class members have suffered damages in an amount to be proved at

trial.

## COUNT VII
### (Breach of Duty of Good Faith and Fair Dealing)

95.     Plaintiffs hereby incorporates by reference each and every allegation contained in

paragraphs 1 through 94 of this Complaint as if set forth fully herein.

96. First American owed Plaintiffs and the Plaintiff Class members a duty of good faith and fair dealing.

97. First American breached its duty of good faith and fair dealing by assessing premiums from Plaintiffs and the Plaintiff Class members that were not calculated in accordance with the Manual.

98. As a direct and proximate result of the breaches by First American of their duty of good faith and fair dealing, Plaintiffs and the Plaintiff Class members have suffered damages in an amount to be proved at trial.

**COUNT VIII**
**(Bad Faith—42 Pa. C.S. § 8371)**

99. Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 98 of this Complaint as if set forth fully herein.

100. The conduct of First American, as described in the foregoing, violates state law, including the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.5(a), and the common law of fraud, and constitutes bad faith pursuant to 42 Pa. C.S. § 8371.

101. As a result of the unlawful conduct of First American, Plaintiffs and the members of the Plaintiff Class have suffered damages in an amount to be proved at trial.

WHEREFORE, Plaintiffs demands the following relief:

1. For an order certifying the proposed Plaintiff Class, or such other Plaintiff Classes or subclasses as the Court deems advisable, appointing the named Plaintiffs as representatives of the Plaintiff Class, appointing Plaintiffs' counsel as counsel for the Plaintiff Class, and providing for appropriate notice to the Plaintiff Class; and

15

2.      For compensatory damages on behalf of Plaintiffs and the members of the
Plaintiff Class in an amount to be proved at trial, including prejudgment interest to the extent
allowable under law; and

3.      For punitive damages to the extent allowable under law; and

4.      For an order that Plaintiffs be awarded all expenses, costs and disbursements
incident to the prosecution of this action, including reasonable attorney's fees and litigation
expenses to the extent allowable under law; and

5.      For such damages as are authorized by the UTPCPL, including (i) the greater of
three times the amount damages or $100.00 per Plaintiff or Plaintiff Class Member; (ii) the costs
of this action including reasonable attorney's fees and litigation expenses; and (iii) any additional
relief deemed by the Court to be necessary or proper; and

6.      For such other and further relief as the court deems just.

**JURY TRIAL DEMANDED AS TO ALL COUNTS AND CLAIMS SO TRIABLE**

Respectfully submitted,

Dated: December _19_ , 2005

_____
Adrian N. Roe
Pa. I.D. No. 61391

*Of Counsel:*

Mark R. Koberna
Sonkin & Koberna Co., LPA
55 Public Square, Suite 1660
Cleveland, OH 44113
(216) 861-6833

David D. Yeagley
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street
Suite 1100
Cleveland, OH 44112-1448
(216) 583-7000

Watkins Dulac & Roe P.C.
Two Gateway Center, 17 East
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
(412) 434-5544
aroe@watkinsdulac.com

Counsel for Plaintiff, Anthony L. Slapikas
and Alice Slapikas, for themselves
and all others similarly situated

**A.** U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

## SETTLEMENT STATEMENT
Optional Form for Transactions without Sellers

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| ANTHONY L. SLAPIKAS and ` | CHASE MANHATTAN MORTGAGE CORP |
| ALICE B. SLAPIKAS | 6000 FREEDOM SQUARE DRIVE SUITE 260 |
| 626 ORCHARD HILL DRIVE | INDEPENDENCE, OH 44131 |
| PITTSBURGH, PA 15238 | |
| SSN: 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 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 | |

| PROPERTY LOCATION: | | |
|---|---|---|
| 626 ORCHARD HILL DRIVE | SETTLEMENT AGENT: | Aegis Settlement Services, Inc. |
| PITTSBURGH, PA 15238 | PLACE OF SETTLEMENT: | 4290 Old William Penn Highway |
| Allegheny County, Pennsylvania | | Monroeville, Pa 15146 |
| | SETTLEMENT DATE: | September 19, 2001     Disburse:09/24/01 |
| | LOAN NUMBER: | 1581619161 |

### L. SETTLEMENT CHARGES

| | | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|---|
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | 1501. | |
| 801. Loan Origination Fee 1.6323% to Allied Mortgage Capital Corp | | 2,530.00 | | |
| 802. Loan Discount         % to | | | 1502. | |
| 803. Appraisal Fee        to APPRAISALS BY GUNNY | | 275.00 | | |
| 804. Credit Report       to | | | 1503. | |
| 805. Lender's Inspection Fee     to | | | | |
| 806. Mortgage Ins. App. Fee     to | | | 1504. | |
| 807. Mortgage Broker Fee     to | | | | |
| 808. | | | 1505. | |
| 809. | | | | |
| 810. | | | 1506. | |
| 811. | | | | |
| 812. TAX SERVICE FEE       to TRANSAMERICA | | 69.00 | 1507. | |
| 813. UNDERWRITING FEE      to CMMCS SETTLEMENT SRVCS | | 175.00 | | |
| 814. MESSENGER         to CHASE MANHATTAN MORTGAGE | | 14.00 | 1508. | |
| 815. FLOOD DETERMINATION-IN to FDSI | | 11.00 | | |
| 816. FLOOD CERT - LIFE OF LOA to FDSI | | 7.00 | 1509. | |
| 817. ADMIN FEE         to CHASE MANHATTAN MORTGAGE | | 100.00 | | |
| 818. DOC PREP FEE        to CHASE MANHATTAN MORTGAGE | | 100.00 | 1510. | |
| 819. YSP PAID BY CMMC      to Allied Mortgage Capital Corp    POC $387.50 | | | | |
| 820. | | | 1511. | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest   09/24/01   to   10/01/01   @ $         26.540000/day | | 185.78 | 1512. | |
| 902. Mortgage Insurance Prem for        months to RADIAN | | 33.58 | | |
| 903. Hazard Insurance Prem for     1.0 yr to                POC $640.00b | | | 1513. FIRST MORTGAGE          to | |
| 904. | | | CHASE MANHATTAN | 148,500.00 |
| 905. | | | 1514. | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance    11.000  months @ $       53.34 per month | | 586.74 | 1520. TOTAL DISBURSED | 148,500.00 |
| 1002. Mortgage Insurance         months @ $        per month | | | (enter on line 1603) | |
| 1003. City/Town Taxes   9.000  months @ $     23.02 per month | | 207.18 | | |
| 1004. County Taxes    9.000  months @ $     57.48 per month | | 517.32 | | |
| 1005. School Taxes    4.000  months @ $    192.88 per month | | 771.52 | | |
| 1006.           months @ $        per month | | | | |
| 1007.           months @ $        per month | | | | |
| 1008. Aggregate Adjustment | | -776.17 | | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement Fee       to | | | | |
| 1102. Title Search        to | | | | |
| 1103. Title Examination      to | | | | |
| 1104. Title Ins. Binder      to | | | | |
| 1105. Document Prep.       to | | | | |
| 1106. Notary Fees        to Aegis Settlement Services, Inc. | | 10.00 | | |
| 1107. Attorney's Fees       to | | | | |
|       (includes above item numbers:               ) | | | | |
| 1108. Title Insurance       to UNITED GENERAL TITLE INSURA | | 794.70 | | |
|       (includes above item numbers:               ) | | | | |
| 1109. Lender's Coverage   $       155,000.00      794.70 | | | | |
| 1110. Owner's Coverage   $ | | | | |
| 1111. Endorsements 100, 300, 900  to Aegis Settlement Services, Inc. | | 150.00 | | |
| 1112. Closing Service Letter Fee   to United General Title Insurance Con | | 35.00 | | |
| 1113. | | | **N.   NET SETTLEMENT** | |
| 1114. | | | | |
| 1115. | | | 1600.  Loan Amount | $ 155,000.00 |
| 1116. | | | | |
| 1117. | | | 1601.  Plus Cash/Check from | $ 0.00 |
| 1118. | | | Borrower | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording fees: Mortgage $    63.50 ; Releases $ | | 63.50 | 1602.  Minus Total Settlement | $ 5,955.15 |
| 1202. City/County Tax/Stamps:   Mortgage    $ | | | Charges (line 1400) | |
| 1203. State Tax/Stamps:     Mortgage    $ | | | 1603.  Minus Total Disbursements | $ 148,500.00 |
| 1204. | | | to Others (line 1520) | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | 1604.  Equals Disbursements to | |
| 1301. Survey | | | Borrower (after expiration | |
| 1302. Pest Inspection | | | of any applicable rescission | |
| 1303. Lien Letters        to Henry M. Horvat, Recording Accoun | | 65.00 | period required by law) | $ 544.85 |
| 1304. OVERNIGHT MAIL      to HENRY M HORVAT, RECORDING | | 30.00 | | |
| 1305. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on line 1602) | | 5,955.15 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement & any attachments referred to herein.

Borrower _____
ANTHONY L. SLAPIKAS

_____
ALICE B. SLAPIKAS

Certified to be a true copy.

Form HUD-1A (2/94) ref. RESPA

_____
Aegis Settlement Services, Inc.
Settlement Agent

1.0   04-98   ( A013483 / A013

PLAINTIFF'S EXHIBIT 1   ALL-STATE LEGAL®

OMB NO. 2502-0265

| | B. TYPE OF LOAN: | | |
|---|---|---|---|
| | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. | | |
| **T OF HOUSING & URBAN DEVELOPMENT** | 6. FILE NUMBER: ML03548 | | 7. LOAN NUMBER: 0002458175 |
| **TTLEMENT STATEMENT** | 8. MORTGAGE INS CASE NUMBER: | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0  3/98  (ML03548.PFD/ML03548/33)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Anthony L. Slapikas and Alice B. Slapikas h/w 626 Orchard Hill Drive Pittsburgh, PA 15238 | | National City Mortgage Company 3232 Newmark Drive, Bldg. #6 Miamisburg, OH  45342 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:  56-1234567 | I. SETTLEMENT DATE: |
|---|---|---|
| 626 Orchard Hill Drive Pittsburgh, PA 15238 Allegheny County, Pennsylvania | Mezzo Land Services, LLC<br><br>PLACE OF SETTLEMENT<br>626 Orchard Hill Drive Pittsburgh, PA 15238 | June 24, 2003<br><br>Disburse:06/30/03 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 9,132.71 | 403. | |
| 104. Mortgage Payoff to Chase Manhattan Mortgage Corp./ | 144,015.65 | 404. | |
| 105. Mortgage Payoff | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes  to | | 406. City/Town Taxes  to | |
| 107. County Taxes  to | | 407. County Taxes  to | |
| 108. School Taxes  to | | 408. School Taxes  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 153,148.36 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 168,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes  to | | 510. City/Town Taxes  to | |
| 211. County Taxes  to | | 511. County Taxes  to | |
| 212. School Taxes  to | | 512. School Taxes  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 168,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 153,148.36 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 168,000.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 14,851.64 | **603. CASH ( TO ) ( FROM ) SELLER** | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower _____  Seller

Anthony L. Slapikas

Alice B. Slapikas

PLAINTIFF'S EXHIBIT
2
ALL-STATE LEGAL®

# MANUAL OF

# TITLE INSURANCE RATING BUREAU OF PENNSYLVANIA

150 Strafford Avenue
Suite 215
P.O. Box 395
Wayne, Pennsylvania 19087-0395
Phone: (610) 995-9995
E-mail: TIRBOP@titlebureaus.com

## NOTICE

**THIS RATE MANUAL HAS BEEN APPROVED BY THE
PENNSYLVANIA INSURANCE DEPARTMENT
AS AMENDED THROUGH APRIL 1, 2003.**



# TITLE INSURANCE RATE MANUAL
# COMMONWEALTH OF PENNSYLVANIA

This Manual sets forth the definitions, general rules, rating systems, coverages, schedule of rates and Charges, and approved policy forms, endorsements and other forms for use by members of and subscribers to the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP").

TIRBOP is licensed by the Pennsylvania Insurance Department pursuant to Section 741 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, 40 P.S. § 910-41 ("The Insurance Company Law of 1921").

This Manual and its contents have been filed with and approved by the Pennsylvania Insurance Department in accordance with The Insurance Company Law of 1921. The provisions of this Manual are binding upon all members and subscribers of TIRBOP and their agents and must be used on and after the effective date hereof unless a specific deviation from this Manual has been filed by an individual member or subscriber company with, and approved by, the Pennsylvania Insurance Department.

## MEMBERS OF TIRBOP AS OF THE MOST RECENT AMENDMENT DATE ARE:

American Pioneer Title Insurance Company
Chicago Title Insurance Company
Commerce Title Insurance Company
Commonwealth Land Title Insurance Company
Commonwealth Land Title Insurance Company of New Jersey
Fidelity National Title Insurance Company of New York
Fidelity National Title Insurance Company
First American Title Insurance Company
Guarantee Title and Trust Company
Guardian National Title Insurance Company
Industrial Valley Title Insurance Company
Investors Title Insurance Company
Lawyers Title Insurance Corporation
Manito Title Insurance Company
National Land Title Insurance Company
National Title Insurance Company of New York
Old Republic National Title Insurance Company
Southern Title Insurance Corporation
Stewart Title Guaranty Company
T. A. Title Insurance Company
The Security Title Guarantee Corporation of Baltimore
Ticor Title Insurance Company
Transnation Title Insurance Company
United General Title Insurance Company
Westcor Land Title Insurance Company

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| **1.** | **DEFINITIONS** | |
| | 1.1 "Insured" | 1 |
| | 1.2 "Insurer" | 1 |
| | 1.3 "Agent" | 1 |
| | 1.4 "Approved Attorney" | 1 |
| | 1.5 "Commitment" | 1 |
| | 1.6 "Charge(s)" | 1 |
| **2.** | **GENERAL RULES** | |
| | 2.1 Title Insurance Charge | 1 |
| | 2.2 Cancellation Notification | 2 |
| | 2.3 Additional Work Charges | 2 |
| | 2.4 Charge for Additional Coverages | 2 |
| | 2.5 Delivery of Policy - Liability | 2 |
| | 2.6 Payment of Charges | 2 |
| | 2.7 Prohibition of Use of Non-Approved Forms | 2 |
| **3.** | **RESERVED FOR FUTURE USE** | 3 |
| **4.** | **RESERVED FOR FUTURE USE** | 3 |
| **5.** | **POLICIES AND RATES** | |
| | 5.0 Methods of Operation | 3 |
| | 5.1 Owner's Title Insurance | 3 |
| | 5.2 Leasehold Title Insurance | 4 |
| | 5.3 Reissue Rate | 4 |
| | 5.4 Subdivision or Condominium Regimes | 5 |
| | 5.5 Mortgage Title Insurance | 5 |
| | 5.6 Refinance and Substitution Loans | 6 |
| | 5.7 Permanent Loan Following A Construction Loan | 6 |
| | 5.8 Assignment of Mortgage | 6 |
| | 5.9 Extension or Modification of an Insured Loan | 6 |
| | 5.10 Postponement of Issuance of Owner's Policies | 8 |
| | 5.11 Mechanics' Lien Insurance | 8 |
| | 5.12 Charges for Properties Covered by The Community Reinvestment Act | 9 |
| | 5.13 Co-Insurance - Basis for Calculating Charge | 9 |
| | 5.14 Sheriff's Distribution Policy | 10 |
| | 5.15 ALTA Short Form Residential Loan Policy | 10 |
| | 5.16 Record Owner and Lien Certificate | 11 |
| | 5.17 Enhanced Coverage Residential Policies | 11 |
| | 5.50 Schedule of Rates - Company or Agent Procedure | 13 |
| | 5.51 Schedule of Rates - Approved Attorney Procedure | 14 |

i

04/01/03

6.  **ENDORSEMENTS AND RATES**                                          **PAGE**

6.1     TIRBOP - ENDORSEMENT PA 100 (Rev'd 03/01/00)
        Where There is No Apparent Violation of Restrictions by
        Existing Construction.................................................................... 14

6.2     TIRBOP - ENDORSEMENT PA 101 (Rev'd 03/01/00)
        Where Restrictions Appear to Be Violated By Existing Construction ......... 15

6.3     TIRBOP - ENDORSEMENT PA 102 (Rev'd 03/01/00)
        Where Proposed New Construction Does Not
        Indicate that Restrictions Will be Violated .......................................... 15

6.4     TIRBOP - ENDORSEMENT PA 103 (Rev'd 03/01/00)
        Where Proposed Construction Will Apparently Violate Restrictions........... 15

6.5     TIRBOP - ENDORSEMENT PA 104 (Rev'd 03/01/00)
        Where There Is No Apparent Violation of Restrictions by
        Existing Construction.................................................................... 16

6.6     TIRBOP - ENDORSEMENT PA 300 (03/01/95)
        Survey Exception ......................................................................... 16

6.7     TIRBOP - ENDORSEMENT PA 301 (03/01/95)
        Survey Exception ......................................................................... 16

6.8     TIRBOP - ENDORSEMENT PA 400  (10/01/99)
        (ALTA Endorsement 7) - Manufactured Housing Unit .............................. 16

6.9     TIRBOP - ENDORSEMENT PA 500  (10/01/99)
        (ALTA Endorsement 11) - Mortgage Modification.................................... 16

6.10    TIRBOP - ENDORSEMENT PA 600 (03/01/95)
        Federal Home Loan Bank Endorsement............................................... 17

6.11    TIRBOP - ENDORSEMENT PA 710 (03/01/95)
        (ALTA Endorsement 6) - Renegotiated Interest..................................... 17

6.12    TIRBOP ENDORSEMENT PA 710-6.2 (03/01/95)
        (ALTA Endorsement 6.2) - Renegotiated Interest - Negative Amortization 17

6.13    TIRBOP - ENDORSEMENT PA 810 (03/01/95)
        (ALTA Endorsement 4.1) - Condominium Endorsement Under PA
        Uniform Condominium Act ............................................................. 17

6.14    TIRBOP - ENDORSEMENT PA 820  (Rev'd 10/01/99)
        (ALTA Endorsement 5.1) - Planned Unit Development Endorsement ........ 17

6.15    TIRBOP - ENDORSEMENT PA 900 (03/01/95)
        (ALTA Endorsement 8.1) - Environmental Protection Lien Endorsement .. 18

6.16    TIRBOP -ENDORSEMENT PA 1000 (01/01/02)
        Mandatory Advance Endorsement...................................................... 18

6.17    TIRBOP - ENDORSEMENT PA 1010 (01/01/02)
        Revolving Line of Credit/Open End Mortgage Endorsement...................... 18

6.18    TIRBOP - ENDORSEMENT PA 1015 (01/01/02)
        Open End Mortgage/Construction Endorsement ..................................... 18

6.19    TIRBOP - ENDORSEMENT PA 1020 (03/01/95)
        FNMA Balloon Endorsement ............................................................ 19

6.20    TIRBOP - ENDORSEMENT PA 1030  (Rev'd 10/01/99)
        (ALTA Endorsement 9) - Special Risks (Restrictions, Encroachments,
        Minerals) .................................................................................. 19

07/01/02

PAGE

6.21 TIRBOP - ENDORSEMENT PA 1031(10/01/99)
(ALTA Endorsement 9.1) - Restrictions, Encroachments, Minerals:
Unimproved Land ................................................................................... 19
6.22 TIRBOP - ENDORSEMENT PA 1032 (10/01/99)
(ALTA Endorsement 9.2) - Restrictions, Encroachments, Minerals:
Improved Land ....................................................................................... 20
6.23 TIRBOP - ENDORSEMENT PA 1040 (Rev'd 03/01/00)
Fairway Endorsement - Partnership ....................................................... 20
6.24 TIRBOP - ENDORSEMENT 1041 (03/01/00)
Fairway Endorsement - LLC .................................................................. 20
6.25 TIRBOP - ENDORSEMENT 1055 (01/01/02)
Non-Imputation Endorsement ................................................................ 20
6.26 TIRBOP - ENDORSEMENT PA 1070 (03/01/95)
General Endorsement .............................................................................. 20
6.27 TIRBOP - ENDORSEMENT PA 1080 (03/01/00)
Abbreviated Endorsement Form - Residential Mortgage ...................... 21
6.28 TIRBOP - ENDORSEMENT PA 1090 (03/01/00)
Inter Vivos Trust ................................................................................... 21
6.29 TIRBOP - ENDORSEMENT PA 1100 (03/01/00)
Waiver of Arbitration ............................................................................ 21
6.30 TIRBOP - ENDORSEMENT PA 1110 (03/01/00)
First Loss ............................................................................................... 21
6.31 TIRBOP - ENDORSEMENT PA 1120 (03/01/00)
Last Dollar ............................................................................................. 21
6.32 TIRBOP - ENDORSEMENT PA 1130 (07/01/02)
(ALTA Endorsement 13) - Leasehold Owners Endorsement ................ 22
6.33 TIRBOP - ENDORSEMENT PA 1140 (07/01/02)
(ALTA Endorsement 13.1) - Leasehold Loan Endorsement .................. 22

7. SUPPLEMENTAL CHARGES
7.1 Cancellation Charge .............................................................................. 23
7.2 Escrow Service Charge .......................................................................... 23
7.3 Commitments Issued Under the Approved Attorney Procedure ........... 23
7.4 Pass Through Charges ........................................................................... 23
7.5 Closing Service Letter ........................................................................... 24

8. APPROVED POLICY FORMS
ALTA Owner's Policy (10/17/92)
ALTA Loan Policy (10/17/92)
ALTA U.S. Policy (9/28/91)
ALTA Short Form Residential Loan Policy (10/21/00)
Sheriff's Distribution Policy (03/01/95)
Record Owner and Lien Certificate (03/01/95)
ALTA Homeowners Policy of Title Insurance (For a One-to-Four Family Residence)
(10/17/98 - as revised by TIRBOP 07/01/02)
ALTA Expanded Coverage Residential Loan Policy (For a One-to-Four Family Residence)
(10/13/01 - as revised by TIRBOP 07/01/02)

04/01/03

9. **APPROVED ENDORSEMENT FORMS**
   TIRBOP - ENDORSEMENT PA 100 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 101 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 102 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 103 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 104 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 300 (03/01/95)
   TIRBOP - ENDORSEMENT PA 301 (03/01/95)
   TIRBOP - ENDORSEMENT PA 400 (ALTA ENDORSEMENT 7) (10/01/99)
   TIRBOP - ENDORSEMENT PA 500  (ALTA ENDORSEMENT 11) (10/01/99)
   ·TIRBOP - ENDORSEMENT PA 600 (03/01/95)
   TIRBOP - ENDORSEMENT PA 710 (ALTA ENDORSEMENT 6) (03/01/95)
   TIRBOP - ENDORSEMENT PA 710-6.2 (ALTA ENDORSEMENT 6.2) (03/01/95)
   TIRBOP - ENDORSEMENT PA 810 (ALTA ENDORSEMENT 4.1) (03/01/95)
   TIRBOP - ENDORSEMENT PA 820 (ALTA ENDORSEMENT 5.1) (Rev'd 10/01/99)
   TIRBOP - ENDORSEMENT PA 900 (ALTA ENDORSEMENT 8.1) (03/01/95)
   TIRBOP - ENDORSEMENT PA 1000 (Rev'd 01/01/02)
   TIRBOP - ENDORSEMENT PA 1010 (Rev'd 01/01/02)·
   TIRBOP - ENDORSEMENT PA 1015 (Rev'd 01/01/02)
   TIRBOP - ENDORSEMENT PA 1020 (03/01/95)
   TIRBOP - ENDORSEMENT PA 1030 (ALTA ENDORSEMENT 9) (Rev'd 10/01/99)
   TIRBOP - ENDORSEMENT PA 1031 (ALTA ENDORSEMENT 9.1) (10/01/99)
   TIRBOP - ENDORSEMENT PA 1032 (ALTA ENDORSEMENT 9.2) (10/01/99)
   TIRBOP - ENDORSEMENT PA 1040 (Rev'd 03/01/00)
   TIRBOP - ENDORSEMENT PA 1041 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1055 (01/01/02)
   TIRBOP - ENDORSEMENT PA 1070 (03/01/95)
   TIRBOP - ENDORSEMENT PA 1080 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1090 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1100 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1110 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1120 (03/01/00)
   TIRBOP - ENDORSEMENT PA 1130 (ALTA ENDORSEMENT 13) (07/01/02)
   TIRBOP - ENDORSEMENT PA 1140 (ALTA ENDORSEMENT 13.1) (07/01/02)

10. **SUPPLEMENTAL FORMS**
    CLOSING SERVICE LETTER - TIRBOP PA CSL (10/01/00)
    TIRBOP - 31 PA Code § 126.1  Waiver of Owner's Title Insurance (01/01/02)

iv

07/01/02

## 1. DEFINITIONS

1.1  "Insured" is the party to whom coverage is extended by the terms of the policy.

1.2  "Insurer" is a title insurance company which is a member or subscriber of the Title Insurance Rating Bureau of Pennsylvania.  Unless otherwise indicated, "Insurer" includes all who are expressly authorized to act on behalf of the Insurer, including its employees and Agents.

1.3  "Agent" is a person, firm, association, corporation, partnership, cooperative or joint stock company expressly authorized by written contract with an Insurer to solicit risks, collect fees, and prepare Commitments and/or title insurance policies on its behalf and certified by the Insurance Department of the Commonwealth of Pennsylvania ("Department").

1.4  "Approved Attorney" is an attorney admitted to practice in Pennsylvania who because of experience and knowledge of real estate law in Pennsylvania is approved by an Insurer and upon whose examination of title and report the Insurer or Agent may issue a policy of title insurance.  Such Approved Attorney must take financial responsibility for the search, examination, closing, and the final certification of title to the Insurer or Agent in a real estate transaction.  Such Approved Attorney may not also act as an employee of an Insurer, an Agent, or an employee or affiliate of an Agent in a transaction in which he or she acts as an Approved Attorney.

1.5  "Commitment", as used herein, is the agreement of an Insurer to issue its policy or policies of title insurance to a proposed Insured, as owner or mortgagee of an estate or interest in the land described therein, all subject to the provisions set forth in the Schedules and Conditions and Stipulations of said Commitment.  The Commitment sets forth the requirements including payment of premium and Charges, that must be complied with prior to the issuance of the policy or policies.

1.6  "Charge(s)" used herein means "fee" as defined in Section 701 of The Insurance Company Law of 1921 and includes "premium, examination and settlement or closing fee and every other Charge" provided for in this Manual made by an Insurer, Agent or by Approved Attorney.

## 2. GENERAL RULES

2.1  All Charges for title insurance coverage provided by the approved policies and endorsements must be made as set forth in this Manual.

The Charge(s) set forth in this Manual include transmittal of documents and/or funds by first class U.S. mail, transfer of funds by the issuance of checks, the delivery of documents and checks for recording, and the delivery of documents and checks to the lender, purchaser, creditor and/or other person with an interest in the insured transaction (collectively "Interested Party") by first class U.S. mail and other means chosen by the Insurer or Agent.

1

04/01/03

The Charge(s) set forth in this Manual do not include the following:

    (a)    document preparation, other than the commitment, closing statement and title insurance policy with endorsements;

    (b)    government charges for recording documents;

    (c)    overnight delivery requested by an Interested Party;

    (d)    bank wire transfer of funds requested by an Interested Party; or

    (e)    receipt and printing of documents (other than the commitment, closing statement and title insurance policy with endorsements) transmitted electronically by an Interested Party.

2.2    Insurer, upon notification to its applicant, may decline to search, examine, issue its Commitment or insure any title, or to issue any endorsement to a policy. Insurer may, at any time, in its sole discretion, refuse an application or cancel any unclosed application of the applicant, without liability on the part of Insurer.

2.3    Insurer may impose additional Charges in especially difficult title matters. Insurer may impose additional Charges for examination of title which may involve multiple chains of title, land under water, coal, oil, gas or mineral searches, railroad property searches, land in beds of streets, rights-of-way, driveways, foreclosures, tax sales, proceedings under federal bankruptcy or state insolvency related statutes, or which involve other unusual difficulties or unusual expenditures. There shall be a reasonable relationship between the services performed, expenses incurred and the amount charged by the Insurer or Agent.

These Charges will be filed with the Department each quarter by Insurer. Agents are responsible for the filing of this information with Insurer for inclusion in Insurer's quarterly report which will report on Charges collected both by Insurer and by the Agent under this Section of the Manual.

2.4    Nothing herein shall prohibit Insurer from charging an additional special fee for affirmative risk coverage(s) not contained in this Manual. These fees will be filed with the Department each quarter by Insurer. Agents are responsible for the filing of this information with Insurer for inclusion in the Insurer's quarterly report which will report on Charges collected both by Insurer and the Agent under this Section.

2.5    Insurer may withhold delivery of the policy of title insurance and have no liability until all applicable Charges, set forth in this Manual, have been paid in full and all conditions of the Insurer's Commitment satisfied.

2.6    All Charges made pursuant to this Manual must be paid at the time of closing, unless otherwise agreed to by Insurer or as otherwise set forth in this Manual.

2

04/01/03

2.7     No policy, endorsement or other coverage may be issued which varies the terms, conditions, stipulations or exclusions of a policy unless first approved by the Department. Approved policies and endorsements are for use by members and subscribers of TIRBOP as set forth in Sections 8 and 9 of this Manual.

3.     **RESERVED FOR FUTURE USE**

4.     **RESERVED FOR FUTURE USE**

5.     **POLICIES AND RATES**

5.0     METHODS OF OPERATION

    A.     "Company or Agent Procedure". Under this procedure, the Insurer or Agent examines title and handles settlement and issues a Commitment and/or policy. The Charges for policies issued under this procedure are set forth in Section 5.50 of this Manual.

    B.     "Approved Attorney Procedure". Under this procedure, the Approved Attorney certifies the title to the Insurer or Agent on a preliminary report of title based upon the Approved Attorney's examination of title. "Examination" for the purpose of this section is the process of abstracting or searching or causing an abstract or search to be made of the appropriate public records for those matters affecting title to a specific parcel of land, examining the results thereof, and reporting such results and conclusions to the Insurer or its Agent in a preliminary report of title. The Insurer or its Agent, in reliance upon such report, may issue a Commitment and the Approved Attorney may conduct a settlement or closing based upon such report and Commitment. Subsequently, the title insurance policy shall be issued by the Insurer or Agent based upon the Approved Attorney's final certificate of title. In certain cases an Approved Attorney may submit only a final certificate of title to the Insurer or Agent, and based upon such certificate the Insurer or Agent may issue the title insurance policy. The Charge by the Insurer for policies issued under this procedure are set forth in Section 5.51 of this Manual.

    C.     The charge for the search, examination of title and the settlement by the Approved Attorney is not governed by this Manual.

5.1     OWNER'S TITLE INSURANCE

    A.     An owner's policy issued at the time of the purchase of the property shall be based on the full consideration, including the aggregate unpaid principal sum of any mortgage(s) or other liens, claims, taxes and any other municipal charge not being paid, and any amount in excess of the full consideration the purchaser may request. In a transaction involving the sale of real estate, an owner's policy must be issued unless the new owner has waived, in writing, the purchase of an owner's policy in accordance with 31 Title Pa. Code § 126.1. (See Supplemental Form TIRBOP - 31 PA Code § 126.1 Waiver of Owner's Title Insurance (01/01/02))

    B.     Where an owner desires that an owner's policy be issued after acquisition of title, the rate shall be based upon any amount the owner may request but not less than the present fair market value of the property as of the time the owner's policy is issued.

3

04/01/03

C.   When the lender insured under a loan policy acquires title to the land by foreclosure or by voluntary conveyance in extinguishment of the debt and requests owner's title insurance, such lender may be issued an owner's policy and the applicable Charge shall be based upon the fair market value of the property at the time the owner's policy is issued.

## 5.2   LEASEHOLD TITLE INSURANCE

When title insurance is issued for a leasehold estate by the issuance of an owner's policy and/or loan policy with Endorsement PA 1130 and/or Endorsement PA 1140 attached, the amount of insurance shall be equal to:

(a)   the aggregate of the total rentals payable under the lease; or

(b)   the aggregate of the total rents for the 6 years immediately following the settlement or closing of the lease transaction; or

(c)   a reasonable statement of estimated rents on percentage leases; or

(d)   the appraised value at the time of insuring the premises as established by an appraiser acceptable to the Insurer; or

(e)   the land and total projected costs of such proposed improvements in the case of proposed construction; or

(f)   the purchase price of the estate when insuring an assignment of a leasehold estate, including all obligations assumed.

The Charge for the issuance of an owner's policy with Endorsement PA 1130 attached or the issuance of a loan policy with Endorsement PA 1140 attached shall be the same Charge for the issuance of a policy insuring a fee simple estate under this Manual. Where an owner's policy and loan policy are issued simultaneously on the same property with Endorsements PA 1130 and PA 1140 respectively attached, they shall be treated as a single policy and the Charge shall be based on the policy with the highest limits.

Where a leasehold interest is to be insured simultaneously with the interest of an owner and/or mortgagee of the fee simple estate, the Charge shall be the applicable rate for owner and/or mortgagee plus 30% of the applicable Charge for the leasehold interest. The Charge for any insurance in excess of the face amount of such owner's and/or loan policy shall be determined under the applicable Schedule of Rates.

## 5.3   REISSUE RATE

A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy.

4

07/01/02

The Reissue Rate is set forth in Section 5.50 of this Manual.

The provisions of this Section are not applicable to the Approved Attorney Procedure.

### 5.4 SUBDIVISION OR CONDOMINIUM REGIMES

When title insurance has been issued to an operative builder and within 10 years of the issuance of the title insurance policy, the operative builder sells completed units out of the subdivision, planned unit development, cooperative or condominium, the Charge shall be 90% of the reissue rate when evidence of the earlier issued policy is produced. For the purpose of this Section, an "operative builder" shall mean one who assembles and sells:

(a)     group of at least five units on a single tract or series of contiguous tracts;

(b)     or a group of at least five units developed pursuant to the Pennsylvania Uniform Condominium Act or pursuant to a cooperative regime.

The provisions of this Section are not applicable to the Approved Attorney Procedure.

### 5.5 MORTGAGE TITLE INSURANCE

A.     A loan policy cannot be issued in an amount less than the full principal debt secured by real property unless it is issued in an amount equal to the fair market value of the real property securing the debt. A policy may be issued in an amount in excess of the debt where agreed to by the Insurer and the Insured.

B.     A loan policy insuring a mortgage on a loan which provides for negative amortization may not be issued in an amount less than the maximum principal amount (including interest which may be added to principal) which may be secured by such mortgage.

C.     When a loan policy insures a mortgage of real property, personal property and personal property affixed to the realty, the Charge shall be based on the amount of the mortgage loan attributable to real property and personal property affixed to the realty as certified by the mortgagee.

D.     Where a loan policy and owner's policy are issued simultaneously on the same property, they shall be treated as a single policy and the Charge shall be based on the policy with the highest limits.

E.     When separate loan policies are issued simultaneously, insuring two or more mortgages on the same property, there shall be one Charge for all policies which shall be determined by the aggregate liability of the policies.

F.     When more than one loan policy is issued simultaneously to insure multiple properties securing a single loan, the Charge for these policies shall be aggregated and based upon the amount of the loan.

5

5.6    REFINANCE AND SUBSTITUTION LOANS

When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate. The provisions of this Section are not applicable to the Approved Attorney Procedure.

5.7    PERMANENT LOAN FOLLOWING A CONSTRUCTION LOAN

When a policy has been issued on a construction loan mortgage, and within 6 months from completion of the building, the same mortgagor executes a new mortgage, the Charge shall be 50% of the reissue rate provided that the new policy is being issued by the same Insurer which issued the previous construction loan policy.

The provisions of this Section are not applicable to the Approved Attorney Procedure.

5.8    ASSIGNMENT OF MORTGAGE

A.    When the mortgage being assigned was not previously insured, the Charge for a policy shall be based on the amount of the unpaid principal balance. There is no additional Charge when the mortgage or the assignment of mortgage is part of a single transaction being insured.

B.    When an assignee desires an endorsement to an existing policy changing the name of the Insured only and does not require a change in the effective date of the policy nor require that the assignment be included as an insured instrument, the Charge shall be $25.00.

C.    Where the Insurer is being asked to insure an assignment of a previously insured mortgage and the assignment of mortgage is being made within 10 years from the date of the execution of the mortgage, the title must be certified down from the date of the recording of the mortgage, through the date of the recording of the assignment. A new policy or endorsement to the existing policy furnishing coverage up to and including the date of recording of the assignment shall be issued for 60% of the reissue rate provided that it is being issued by the same Insurer which issued the original policy.

The provisions of Paragraph C of this Section are not applicable to the Approved Attorney Procedure.

5.9    EXTENSION OR MODIFICATION OF AN INSURED LOAN

A.    Where a mortgage which was previously insured is still in effect, and that mortgage is to be amended by an extension or modification agreement, an endorsement to the existing policy or a new policy may be issued by the same Insurer which covers the extension or modification agreement, after continuation searches have been obtained covering the period from the recording date of the mortgage through the recording date of the extension or modification agreement.

6

B.   The Charge for a new policy or endorsement to an existing policy issued in conjunction with an extension or modification agreement, that does not increase the unpaid principal balance, shall be calculated on the basis of the unpaid principal balance in accordance with the following applicable rates:

Up to 5 years ................................................................50% of reissue rate

Over 5 years to 10 years...............................................70% of reissue rate

Over 10 years ...............................................................100% of basic rate

C.   The Charge for a new policy or endorsement to an existing policy issued in conjunction with an extension or modification agreement that increases the unpaid principal balance shall be calculated in two steps. First, the Charge for the new policy or endorsement that relates to the unpaid principal balance of the loan immediately prior to the increase shall be calculated as set forth above in paragraph B. Second, the Charge for the new policy or endorsement which relates to the increase in coverage amount, i.e., the difference between the unpaid balance of the loan immediately prior to its increase and the new coverage amount, shall be 80% of the reissue rate.

Example: On January 1, 1997, owner modifies his mortgage loan (originally created in the amount of $100,000 on January 1, 1991) by increasing the amount of the loan to $150,000. The unpaid balance immediately prior to the modification is $80,000. The Charge for the new policy or endorsement is calculated as follows: 70% of the reissue rate for $80,000 of coverage to which is added the difference between (i) 80% of the reissue rate on an $80,000 policy and (ii) 80% of the reissue rate on a $150,000 policy.

D.   If under a modification agreement, new property(ties) are added, 80% of the reissue rate shall be charged from dollar one based upon the value of the new property(ties), together with charging the applicable rate under paragraph B of this Section, based upon the unpaid principal balance of the loan. Any increases in the unpaid principal balance of the loan shall be charged the applicable rate under Paragraph C of this Section.

Example No. 1: On January 1, 1997, the owner and lender modify the mortgage loan (mortgage originally created in the amount of $900,000 on January 1, 1993) by adding new property(ties) to the mortgage as collateral, pursuant to a mortgage modification agreement. The new property(ties) have a fair market value of $200,000. The current unpaid principal balance of the loan secured by the mortgage is $700,000. The Charge for the new policy or endorsement to the existing policy is calculated as follows:

(i)    80% of reissue rate on $200,000 .......$   978.30; to which is added
(ii)   50% of reissue rate on $700,000 .......$1,623.94
                            Total Charge:  $2,602.24

7

07/01/02

**Example No. 2:** Same facts as Example #1 above and in addition, new monies are loaned in the amount of $300,000, thereby increasing the unpaid principal balance of the loan to $1,000,000. The Charge for the new policy or endorsement to the existing policy is calculated in the same manner as Example #1, to which is added $810 (being the difference between (i) 80% of the reissue rate on a $1,000,000 policy and (ii) 80% of the reissue rate on a $700,000 policy); thus making for a total Charge of $3,412.24.

E.  When a new policy is issued in connection with an extension or modification of a previously insured mortgage loan, the original policy must be returned for cancellation.

The provisions of this Section shall not be applicable to the Approved Attorney Procedure.

## 5.10  POSTPONEMENT OF ISSUANCE OF OWNER'S POLICIES

When an Owner acquires a premises and purchases title insurance and the Owner does not grant a mortgage on the premises at the time of the acquisition, at the written request of the Insured Owner, the issuance of an owner's policy may be postponed for a period not to exceed 12 months after the date of recording the deed. If during the 12 month period, the Insured Owner places a mortgage on the premises, no separate charge other than an additional Charge due for a loan policy in an amount in excess of the owner's policy, if any, shall be charged for the issuance of the owner's and loan policies. However, a work Charge for conducting the loan closing and issuance of an updated title Commitment, if required, may be made which shall not exceed 25% of the reissue rate for such increased loan policy. In no event shall the provisions of this Section apply beyond the 12 month period.

## 5.11  MECHANICS' LIEN INSURANCE

If it can be shown by reason of construction which has or is to occur that a statutory lien for labor or material may gain priority over the instrument being insured, an additional Charge shall be made as follows:

A.  New Construction.

The minimum Charge for insurance covering unfiled mechanics' and materialmen's liens when improvements have been completed or new construction commenced within the statutory period prior to issuance of the policy shall be as follows:

1/2 of 1% of the amount of the policy up to and including $50,000

1/4 of 1% of the amount of the policy on the excess over $50,000 up to and including $2,000,000

1/8 of 1% of the amount of the policy on the excess over $2,000,000.

8

B.   Alterations and Repairs.

The Charge for insurance covering mechanics' liens based on alterations and repairs shall be computed on the basis referred to in Paragraph A above on the cost of repairs or the amount of insurance, whichever shall be less.

C.   Waiver of Charge.

The Insurer reserves the right to waive such additional Charge when, in its opinion, based upon the protective devices and procedures used in the transaction, the risk involved does not warrant payment thereof.

## 5.12   CHARGES FOR PROPERTIES COVERED BY THE COMMUNITY REINVESTMENT ACT

When title insurance is issued on a property that has been registered and identified by the insured lender as one participating in a program under the Community Reinvestment Act or under the Pennsylvania Housing Finance Agency Law and that program is designed either: (i) assist low and moderate income borrowers, or (ii) to assist economically distressed neighborhoods, a Charge of 75% of the basic rate will apply.  This Charge is applicable only where a policy is issued in the amount of $200,000 or less.  If an owner's and loan policy are issued simultaneously, then the higher policy amount must be $200,000 or less in order to qualify for this discount.

The provisions of this Section are not applicable to the Approved Attorney Procedure.

## 5.13   CO-INSURANCE - BASIS FOR CALCULATING CHARGE

In a transaction where the total liability is assumed by two or more Insurers with the liability being divided between the Insurers from the first dollar, the Charge for the liability assumed by each Insurer shall be calculated as though each Insurer was the primary insurer from the first dollar of its liability based upon the amount of liability assumed.

9

07/01/02

5.14    SHERIFF'S DISTRIBUTION POLICY

The Charge for Insurance under this Section shall be:

A.    Fund Created at a Judicial Sale Other Than a Tax Sale

For distribution in amounts up to $2,000...................................$125.00

For amounts over $2,000:

$2,001 to $15,000 inclusive ................add $5.00 per ................... $1,000

$15,001 to $30,000 inclusive ..............add $4.50 per ................... $1,000

$30,001 to $50,000 inclusive ..............add $4.00 per ....................$1,000

$50,001 to $100,000 inclusive ...........add $3.50 per ...................$1,000

$100,001 to $500,000  inclusive..........add $3.00 per ....................$1,000

$500,001  to $1,000,000 inclusive.......add $2.50 per ...................$1,000

$1,000,001 to $2,000,000 inclusive .....add $2.00 per ....................$1,000

$2,000,001 and over.............................add $1.25 per ....................$1,000

For each distribution endorsement................................................$25.00

B.    Fund created at a tax sale for distribution of the entire fund ..........$200.00

5.15    ALTA SHORT FORM RESIDENTIAL LOAN POLICY

The Charge for the ALTA Short Form Residential Loan Policy shall be $125.00 in addition to the otherwise applicable Charge.  This policy insures the lender making a mortgage loan on a 1 to 4 family residence or condominium unit.  This policy is an abbreviated short form version of the current ALTA Loan Policy, incorporating all of the terms and provisions of the ALTA Loan Policy, which is designed to be delivered to the lender at closing.  This policy contains blanket exceptions to taxes, covenants and restrictions, easements, reservations of minerals or mineral rights, and offers certain affirmative assurances with respect to these exceptions desired by lenders, including certain affirmative assurances with respect to survey matters.  This policy also includes an Addendum, which can be used to set forth additional exceptions or to limit the affirmative assurances.  This policy is designed so that certain ALTA endorsement forms may be specified, and thus incorporated, by checking appropriate boxes, and making the appropriate endorsement Charge(s) in accordance with this Manual. When this policy form is used, there can be no separate Charge for TIRBOP Endorsements PA 100 and PA 300.

10

5.16 RECORD OWNER AND LIEN CERTIFICATE

The basic liability hereunder shall be $2,000.00. The Charge for the certificate which gives information about the state of title of the record owner shall be $250.00 per chain of title. Insurer in its discretion may increase the basic liability limits, applying the basic rates for the amount of increased liability. When insurance is requested from the same Insurer upon the same property within 6 months from the date the certificate is issued, credit will be given against the Charge for the amount paid.

5.17 ENHANCED COVERAGE RESIDENTIAL POLICIES

A. ALTA Homeowner's Policy of Title Insurance (For a One-to-Four Family Residence) (hereinafter the "Homeowner's Policy") provides coverage beyond that included in the ALTA Owner's Policy (10/17/92) and is often referred to as the "Enhanced Coverage Homeowner's Policy". The Homeowner's Policy may only be issued to a homeowner who will reside in premises improved by a one-to-four family residence. The Charge for the Homeowner's Policy is the Charge under the applicable Schedule of Rates for the stated amount of insurance in Schedule A, together with an additional 15% Charge which is to be calculated by applying that percentage to the Schedule of Rates - Company or Agent Procedure, and not the Schedule of Rates - Approved Attorney Procedure.

B. ALTA Expanded Coverage Residential Loan Policy (For a One-to- Four Family Residence) (hereinafter the "Expanded Coverage Loan Policy") is the companion loan policy to the Homeowner's Policy. The Expanded Coverage Loan Policy incorporates the following endorsement coverages within its body by reference without the need to issue endorsements: ALTA Form 4.1 (Endorsement PA 810), ALTA Form 5.1 (Endorsement PA 820), ALTA Endorsement Form 6 (Endorsement PA 710), ALTA Endorsement Form 6.2 (Endorsement PA 710-6.2), ALTA Form 8.1 (Endorsement PA 900), and ALTA Form 9 (Endorsement PA 1030). The Charge for the Expanded Coverage Loan Policy is the Charge under the applicable Schedule of Rates for the stated amount of insurance in Schedule A, together with an additional 15% Charge, which is to be calculated by applying that percentage to the Schedule of Rates - Company or Agent Procedure and not the Schedule of Rates - Approved Attorney Procedure, and a flat endorsement fee of $200. When this policy form is used, there can be no separate Charge for the endorsements described above or for Endorsement PA 100 and Endorsement PA 300.

C. When the Homeowners Policy and the Expanded Coverage Loan Policy (collectively, hereinafter the "Enhanced Coverage Residential Policies") are simultaneously issued on the same property, they shall be treated as a single policy and the Charge shall be based on the applicable Schedule of Rates for the policy with the highest limits, together with an additional 15% Charge and a flat endorsement fee of $200.00. This additional 15% Charge shall be calculated by applying that percentage to the Schedule of Rates - Company or Agent Procedure and not the Schedule of Rates - Approved Attorney Procedure.

11

07/01/02

When an Expanded Coverage Loan Policy is issued simultaneously with the ALTA Owners Policy (10/17/92), the Charge shall be based on the applicable Schedule of Rates for the policy with the highest limits, together with an additional 15% Charge and a flat endorsement fee of $200.00. This additional 15% Charge shall be calculated by applying that percentage to the rate for the loan policy limit, based upon the Schedule of Rates - Company or Agent Procedure and not the Schedule of Rates - Approved Attorney Procedure. In the event that the calculated Charge for the Expanded Coverage Loan Policy exceeds the Charge for the issuance of the ALTA Owner's Policy (10/17/92), the Charge shall be based upon the Expanded Coverage Loan Policy, together with the flat endorsement fee of $200.00 (see Example No. 2 below).

**Example No. 1:**

| Simultaneous Reissue Policies | Insurance | Charge | +15% | |
|---|---|---|---|---|
| ALTA Owner's Policy 10-17-92 - | $200,000.00 | $1,222.88 | | |
| **Enhanced Coverage Loan Policy** - | $150,000.00 | $ 997.88 | $1,147.56 | + $200.00 |

Since the $1,222.88 is greater than the $1,147.56, the Charge for this transaction is $1,222.88, plus the flat endorsement fee of $200.00.

**Example No. 2:**

| Simultaneous Reissue Policies | Insurance | Charge | +15% | |
|---|---|---|---|---|
| ALTA Owner's Policy 10-17-92 - | $200,000.00 | $1,222.88 | | |
| **Enhanced Coverage Loan Policy** - | $190,000.00 | $1,177.88 | $1,354.56 | + $200.00 |

Since the $1,354.56 is greater than the $1,222.88, the Charge for this transaction is $1,354.56, plus the flat endorsement fee of $200.00

**Example No. 3:**

| Simultaneous Reissue Policies | Insurance | Charge | +15% |
|---|---|---|---|
| **Homeowner's Policy** - | $200,000.00 | $1,222.88 | $1,406.31 |
| ALTA Loan Policy 10-17-92 - | $190,000.00 | $1,177.88 | |

The Charge for this transaction is $1,406.31, plus the Charge for any endorsements issued in connection with the loan policy.

D.    Whenever an Enhanced Coverage Residential Policy is issued under the Approved Attorney Procedure, the additional 15% charge shall be calculated by applying the specified percentage to the Charge under the Company or Agent Procedure, notwithstanding that the Charge made is under the Approved Attorney Procedure.

E.    Whenever Section 5.4, 5.6, 5.7, 5.8, 5.9, or 5.12 is applicable in conjunction with the issuance of an Enhanced Coverage Residential Policy(s), the Charge shall be calculated first in accordance with such Section, and then 15% of this amount will be added, together with the $200 flat endorsement fee for the Expanded Coverage Loan Policy, if applicable.

12

F.  When the Homeowner's Policy and the 1992 ALTA loan policy are simultaneously issued on the same property, they shall be treated as a single policy and the Charge shall be based on the applicable Schedule of Rates for the policy with the highest limits, together with an additional 15% Charge and any endorsement fees for the loan policy shall be charged in accordance with Section 6 of this Manual. The additional 15% Charge shall be calculated by applying that percentage to the Schedule of Rates - Company or Agent Procedure applicable to the amount of the Owner's policy and not the Schedule of Rates - Approved Attorney Procedure.

5.50   SCHEDULE OF RATES - COMPANY OR AGENT PROCEDURE

The Charge for Owners, Leasehold and Mortgage Insurance shall be:

| UNIT OF INSURANCE OR FRACTION THEREOF | BASIC RATE | REISSUE RATE |
|---|---|---|
| $ 0  to $30,000 | $420.00 | Reissue Rate shall be 90% of the Basic Rate for all units of insurance or fraction thereof up to and including $2,000,000. |
| $30,001 to $45,000 Add per 1,000 | $7.25 | See Addendum A for detailed schedule of rates. |
| $45,001 to $100,000 Add per 1,000 | $6.00 | |
| $100,001 to $500,000 Add per 1,000 | $5.00 | |
| $500,001 to $1,000,000 Add per 1,000 | $3.75 | |
| $1,000,001 to $2,000,000 Add per 1,000 | $2.75 | |
| $2,000,001 to $7,000,000 Add per 1,000 | $2.00 | |
| $7,000,001 to $30,000,000 Add per 1,000 | $1.50 | |

13

04/01/03

5.51   SCHEDULE OF RATES - APPROVED ATTORNEY PROCEDURE

The Charge for Owners, Leasehold and Mortgage Insurance shall be:

UNIT OF INSURANCE
    OR
FRACTION THEREOF

$ 0 to $30,000.......................................................................................$125.00

$30,001 to $100,000 ................add $3.25 per $1,000 or fraction thereof

$100,001 to $500,000............add $2.75 per $1,000 or fraction thereof

$500,001 to $1,000,000 ...........add $2.50 per $1,000 or fraction thereof

$1,000,001 to $2,000,000 ........add $2.25 per $1,000 or fraction thereof

$2,000,001 to $7,000,000 ........add $2.00 per $1,000 or fraction thereof

$7,000,001 to $30,000,000 ......add $1.50 per $1,000 or fraction thereof

6.   ENDORSEMENTS AND RATES

The Charge for an endorsement set forth in this Manual shall be made each time an endorsement is attached to a policy regardless of the number of policies issued in a particular transaction; provided, however, a Charge for endorsements priced as a percentage shall only be made once in transactions where multiple loan polices are issued in accordance with Manual Rule 5.5(E) or (F).   All Charges for endorsements priced as a percentage shall be calculated by applying the specified percentage to the Charge under the Company or Agent Procedure notwithstanding the fact that a particular policy is issued under the Approved Attorney Procedure.

6.1   TIRBOP - ENDORSEMENT PA 100 - WHERE THERE IS NO APPARENT VIOLATION OF RESTRICTIONS BY EXISTING CONSTRUCTION (Rev'd 03/01/00)

Loan Policy Only

This endorsement insures that the restrictions have not been violated and that a future violation thereof will not cause a forfeiture or reversion of title. The Charge for this endorsement is $50.00.

14

07/01/02

6.2  TIRBOP - ENDORSEMENT PA 101 - WHERE RESTRICTIONS APPEAR TO BE VIOLATED BY EXISTING CONSTRUCTION  (Rev'd 03/01/00)

Owner's and/or Loan Policy

This endorsement insures against loss or damage (loss of income or profit excluded) occasioned by the enforcement or attempted enforcement of said restrictions to remove the whole or any portion of the improvements now on the premises and/or to collect money damages in lieu thereof. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $75.00.

6.3  TIRBOP - ENDORSEMENT PA 102 - WHERE PROPOSED NEW CONSTRUCTION DOES NOT INDICATE THAT RESTRICTIONS WILL BE VIOLATED (Rev'd 03/01/00)

Owner's and/or Loan Policy

This endorsement insures that existing and/or presently contemplated construction on the described real estate will not violate the covenants, conditions and restrictions referred to in Schedule "B" of the title insurance policy. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $75.00.

6.4  TIRBOP - ENDORSEMENT PA 103 - WHERE PROPOSED CONSTRUCTION WILL APPARENTLY VIOLATE RESTRICTIONS (Rev'd 03/01/00)

Owner's and/or Loan Policy

This endorsement insures that the proposed new construction completed in strict accordance with plans and specifications filed with the Insurer will not violate the restrictions set forth in Schedule "B" of the policy, except to the extent set out on the endorsement. Thereafter, the policy will insure against loss or damage (loss of income or profit excluded) occasioned by the enforcement or attempted enforcement of said restrictions to require the removal of the whole or any portion of the improvements, then on the premises or proposed to be constructed in accordance with the said plans and specifications and/or collect money damages in lieu thereof. The Charge for this endorsement shall be as follows:

$10.00 per  $1,000 for the initial $500,000 of coverage

$5.00 per  $1,000 for the next $500,000 of coverage

$2.50 per  $1,000 for the next $1,000,000 of coverage

$1.25 per  $1,000 for the excess over $2,000,000 to $30,000,000

07/01/02

6.5  TIRBOP - ENDORSEMENT PA 104 - WHERE THERE IS NO APPARENT VIOLATION OF RESTRICTIONS BY EXISTING CONSTRUCTION (Rev'd 03/01/00)

Owner's Policy Only

This endorsement offers the same coverage to an owner or lessee as TIRBOP Endorsement PA 100 offers to a mortgagee. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $75.00.

6.6  TIRBOP - ENDORSEMENT PA 300 - SURVEY EXCEPTION  (03/01/95)

Loan Policy Only

This endorsement has the effect of insuring without exception for matters discoverable by survey (except as might be specifically noted) and will further insure against loss or damage by reason of encroachment (other than by party walls), whether by the building on the mortgaged premises encroaching upon adjacent property, or by any building on adjacent property encroaching on the mortgaged premises. The Charge for this endorsement is $50.00.

6.7  TIRBOP - ENDORSEMENT PA 301 - SURVEY EXCEPTION  (03/01/95)

Owner's Policy Only

This endorsement offers the same coverage to an owner or lessee as TIRBOP Endorsement PA 300 offers to a mortgagee. The Charge for this endorsement is 20% of the applicable basic or reissue rate.

6.8  TIRBOP - ENDORSEMENT PA 400 - (ALTA ENDORSEMENT 7) - MANUFACTURED HOUSING UNIT (10/1/99)

Owner's Policy and/or Loan Policy

This endorsement amends the definition of "land" in the policy to include a manufactured housing unit located on the land on the date of the policy. The Charge for this endorsement is $50.00.

6.9  TIRBOP - ENDORSEMENT PA 500  - (ALTA ENDORSEMENT 11) - MORTGAGE MODIFICATION (10/1/99)

Loan Policy Only

This endorsement insures against loss arising from the invalidity of a lien of the insured mortgage resulting from modification to the insured mortgage. The Charge for this endorsement is set forth in Section 5.9 of this Manual.

16

07/01/02

6.10   TIRBOP - ENDORSEMENT PA 600 - FEDERAL HOME LOAN BANK
ENDORSEMENT (03/01/95)

Loan Policy Only

Where required by an office of the Federal Home Loan Bank, this endorsement may be
issued. The Charge for this endorsement is $25.00.

6.11   TIRBOP - ENDORSEMENT PA 710 (ALTA ENDORSEMENT 6) - RENEGOTIATED
INTEREST  (03/01/95)

Loan Policy Only

Where required by a mortgagee, an Insurer may provide coverage under this endorsement to
insure the priority of the lien of a mortgage that can by its terms be renegotiated as to its rate
of interest.  This coverage insures the priority of the lien through any number of renegotiated
interest terms.  The Charge for this  endorsement is $50.00.

6.12   TIRBOP - ENDORSEMENT PA 710-6.2 (ALTA ENDORSEMENT 6.2)
RENEGOTIATED INTEREST - NEGATIVE AMORTIZATION (03/01/95)

Loan Policy Only

Where required by a mortgagee, an Insurer may provide coverage under this endorsement to
insure the priority of the lien of a mortgage that can by its terms be renegotiated as to its rate
of interest.  This coverage insures the priority of the lien through any number of renegotiated
interest terms, including negative amortization.  The Charge for this endorsement is $50.00.

6.13   TIRBOP - ENDORSEMENT PA 810 (ALTA ENDORSEMENT 4.1) - CONDOMINIUM
ENDORSEMENT UNDER PA UNIFORM CONDOMINIUM ACT (03/01/95)

Owner's and/or Loan Policy

This endorsement affords multiple forms of coverage with respect to the Condominium
Regime and Documentation, when affixed to a policy in which the insured land is a
condominium unit together with its percentage interest in the common elements.  The Charge
for this endorsement is $50.00.

6.14   TIRBOP - ENDORSEMENT PA 820 (ALTA ENDORSEMENT 5.1) - PLANNED UNIT
DEVELOPMENT ENDORSEMENT (Rev'd 10/01/99)

Owner's and/or Loan Policy

This endorsement affords multiple forms of coverage with respect to the Planned Unit
Development Regime and Documentation, when affixed to a policy in which the insured land
is a Planned Unit Development.  The Charge for this endorsement is $50.00.

17

6.15    TIRBOP - ENDORSEMENT PA 900 (ALTA ENDORSEMENT 8.1) - ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT (03/01/95)

Loan Policy Only (Primarily Residential Property)

This endorsement provides coverage to a lender by insuring the lien priority of the insured mortgage over those environmental protection liens recorded in the land records except with respect to environmental protection liens provided for by certain statutes identified in the endorsement. The Charge for this endorsement is $50.00.

6.16    TIRBOP - ENDORSEMENT PA 1000 - MANDATORY ADVANCE ENDORSEMENT (Rev'd 01/01/02)

Loan Policy Only

This endorsement provides limited insurance for loan advances, such as in a construction mortgage disbursement made subsequent to the date of the policy. Such advances must be made pursuant to the terms of the Loan Agreement and at all times during which the "Vestee" (person who is vested with title ownership of the land secured by the mortgage at the date of the policy) is the owner of the property. The endorsement insures the lien priority of such advances. The Charge for this endorsement is $50.00.

6.17    TIRBOP - ENDORSEMENT PA 1010 - REVOLVING LINE OF CREDIT/OPEN END MORTGAGE ENDORSEMENT (Rev'd 01/01/02)

Loan Policy Only

This endorsement provides limited insurance for mandatory loan advances made pursuant to a mortgage that qualifies as an "Open End Mortgage" by statute. Such advances must be made pursuant to the loan agreement and subject to the requirements of the statute and at all times during which the "Vestee" (person who is vested with title ownership of the land secured by the mortgage at the date of the policy) is the owner of the property. The endorsement insures the lien priority of such advances. The Charge for this endorsement is $50.00 when issued in connection with a policy on a 1 to 4 family residential property; when issued in connection with other property, the Charge is 10% of the applicable basic or reissue rate with a minimum Charge of $50.00.

6.18    TIRBOP - ENDORSEMENT PA 1015 - OPEN END MORTGAGE/CONSTRUCTION ENDORSEMENT (Rev'd 01/01/02)

Loan Policy Only

This endorsement provides limited insurance for construction loan advances made pursuant to a mortgage that qualifies as an "Open End Mortgage" by statute. Such advances must be made to pay toward or to provide funds to the mortgagor to pay toward all or part of the costs of completing any erection, construction, alteration, or repair of any part of the mortgaged premises which is the statutory requirement and made at all times during which the mortgagor of the insured mortgage is still the owner of the estate or interest covered by the

07/01/02

policy. The endorsement insures the lien priority of such advances. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $50.00

6.19    TIRBOP - ENDORSEMENT PA 1020 - FNMA BALLOON ENDORSEMENT (03/01/95)

<u>Loan Policy Only</u>

This endorsement insures a lender against the invalidity or unenforceability or loss of priority of the insured mortgage resulting from provisions which provide for a conditional right to refinance and a change in the rate of interest as set forth in the mortgage. The Charge for this endorsement is $50.00.

6.20    TIRBOP - ENDORSEMENT PA 1030 (ALTA ENDORSEMENT 9) - SPECIAL RISKS (RESTRICTIONS, ENCROACHMENTS, MINERALS) (Rev'd 10/01/99)

<u>Loan Policy Only</u>

This endorsement offers the lender a variety of additional affirmative coverages including, but not limited to, insurance that there are no covenants, conditions or restrictions under which the lien of the mortgage can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired; insurance against present violations of covenants, conditions or restrictions; and insurance against encroachments and against damage to existing improvements which encroach upon easement areas or damage resulting from the right to use the surface of the land for the extraction of minerals. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $75.00.

6.21    TIRBOP - ENDORSEMENT PA 1031 - (ALTA ENDORSEMENT 9.1) UNIMPROVED LAND (RESTRICTIONS, ENCROACHMENTS, MINERALS) (10/01/99)

<u>Owner's Policy Only</u>

This endorsement offers the Insured a variety of additional affirmative coverages including, but not limited to, insurance that there are no present violations on the land of covenants, conditions, restrictions or statutory setback requirements; insurance that there are no encroachments onto the land from adjoining land; insurance that there are no notices of environmental violation recorded; and insurance against damage to buildings constructed on the land after the date of the policy from the exercise of the right to extract or develop minerals. The Charge for the endorsement is 20% of the applicable basic or reissue rate unless it is issued with TIRBOP Endorsement PA 301 in which case it will be priced at 10% of the applicable basic or reissue rate; the minimum Charge is $75.00.

19

07/01/02

6.22    TIRBOP - ENDORSEMENT PA 1032 - (ALTA ENDORSEMENT 9.2)
        IMPROVED LAND (RESTRICTIONS, ENCROACHMENTS, MINERALS) (10/01/99)

        Owner's Policy Only

        This endorsement offers the Insured a variety of additional affirmative coverages including
        but not limited to, insurance that there are no present violations on the land of covenants,
        conditions, restrictions or statutory setback requirements; insurance that there are no
        encroachments onto the land from adjoining land; insurance that there are no notices of
        environmental violation recorded; and insurance against damage to existing buildings
        resulting from the exercise of a right of easement or a right to extract or develop minerals.
        The Charge for this endorsement is 20% of the applicable basic or reissue rate unless it is
        issued with TIRBOP Endorsement PA 301 in which case it will be priced at 10% of the
        applicable basic or reissue rate; the minimum Charge is $75.00.

6.23    TIRBOP - ENDORSEMENT PA 1040 - FAIRWAY PARTNERSHIP (Rev'd 03/01/00)

        Owner's Policy Only

        This endorsement insures that the Insurer will not deny liability under the policy by reason of
        partners changing in a partnership. The Charge for this endorsement is $500.00.

6.24    TIRBOP - Endorsement PA 1041 - Fairway LLC (03/01/00)

        Owner's Policy Only

        This endorsement insures that the Insurer will not deny liability under the policy by reason of
        members charging in a limited liability company. The Charge for this endorsement is
        $500.00.

6.25    TIRBOP - ENDORSEMENT PA 1055 - NON-IMPUTATION ENDORSEMENT (01/01/02)

        Owner's and/or Loan Policy

        This endorsement insures that the Insurer will not deny liability to certain incoming parties as
        a result of the Insured having knowledge imputed to it in partnership, corporate or limited
        liability company transactions. The Charge for this endorsement is 20% of the applicable
        basic or reissue rate.

6.26    TIRBOP - ENDORSEMENT PA 1070 - GENERAL ENDORSEMENT (03/01/95)

        This endorsement is to be used only for purposes of correcting and/or amending previously
        issued policies or for granting affirmative coverage not otherwise covered by the other
        endorsements set forth in this Manual.

        This endorsement may not be used to provide the following coverages: Truth-in-Lending;
        Zoning; Creditors Rights; Doing Business; Usury; Tie-In Interstate; or Subdivision.

20

6.27    TIRBOP - ENDORSEMENT PA 1080 - ABBREVIATED FORM ENDORSEMENT(S) - RESIDENTIAL MORTGAGE (03/01/00)

Loan Policy Only

This endorsement incorporates by reference nine (9) other endorsements contained in this Manual. Each of the referenced endorsements, as requested by the lender, can be checked in the appropriate block. The Charge for each endorsement so checked shall be made in accordance with this Manual. There is no other Charge to be made for the use of this endorsement.

6.28    TIRBOP - ENDORSEMENT PA 1090 - INTER VIVOS TRUST (03/01/00)

Owner's Policy Only

This endorsement expands the definition of "Insured" in the Policy to include trustees under an inter vivos trust subject to certain conditions identified in the endorsement. The Charge for this endorsement is $125.00.

6.29    TIRBOP - ENDORSEMENT PA 1100 - WAIVER OF ARBITRATION (03/01/00)

Loan Policy Only

This endorsement amends the 1992 ALTA Loan Policy by deleting Paragraph 13 of the Conditions and Stipulations Section of the policy, relating to arbitration. The Charge for this endorsement is $100.00

6.30    TIRBOP - ENDORSEMENT PA 1110 - FIRST LOSS (03/01/00)

Loan Policy Only

This endorsement provides, under certain conditions, that the amount which the insurer shall be liable to pay under the policy shall be determined without requiring maturity of the indebtedness by acceleration or otherwise. The Charge for this endorsement is 10% of the applicable basic or reissue rate with a minimum Charge of $500.00.

6.31    TIRBOP - ENDORSEMENT PA 1120 - LAST DOLLAR (03/01/00)

Loan Policy Only

This endorsement provides that if the insured lender applies all payments by the mortgages to the release of security other than the land insured under the policy (as shown on Schedule A), until such time as the aggregate principal indebtedness is reduced to the amount of the policy, coverage under the policy will not be reduced by such payment. The Charge for this endorsement shall be 10% of the applicable basic or reissue rate with a minimum Charge of $500.00.

21

07/01/02

6.32    TIRBOP - ENDORSEMENT PA 1130 - (ALTA ENDORSEMENT 13)
LEASEHOLD OWNERS ENDORSEMENT (07/01/02)

<u>Owner Policy Only</u>

This endorsement may only be issued at the time of the issuance of the ALTA Owner's Policy (10/17/92). The endorsement sets forth how the leasehold estate is valued for purposes of a loss under the policy and the items covered by the issuance of the endorsement. The Charge for the issuance of the endorsement, together with the ALTA Owner's Policy (10/17/92), is set forth in Section 5.2 of this Manual.

6.33 ·  TIRBOP - ENDORSEMENT PA 1140 - (ALTA ENDORSEMENT 13.1)
LEASEHOLD LOAN ENDORSEMENT (07/01/02)

<u>Loan Policy Only</u>

This endorsement may only be issued at the time of the issuance of the ALTA Loan Policy (10/17/92). The endorsement sets forth how the leasehold estate is valued for purposes of a loss under the policy and the items covered by the issuance of the endorsement. The Charge for the issuance of the endorsement, together with the ALTA Loan Policy (10/17/92), is set forth in Section 5.2 of this Manual.

07/01/02

## 7. SUPPLEMENTAL CHARGES

### 7.1 CANCELLATION CHARGE

If application is canceled after the Commitment is issued under Company or Agent Procedure, a minimum Charge of $100.00 is to be made for such cancellation.

### 7.2 ESCROW SERVICE CHARGE

All escrows and escrow services shall be the subject of a written agreement when the Insurer or its Agent holds funds from a settlement or closing for disbursement at some later date. A minimum service Charge of $25.00 shall be made for the first 6 months and a minimum Charge of $25.00 shall be made for each year beyond the initial 6 month period for which the funds are held.

### 7.3 COMMITMENT ISSUED UNDER THE APPROVED ATTORNEY PROCEDURE

When under the Approved Attorney Procedure an Insurer issues a Commitment, the Charge for same shall be a minimum of $25.00. The Charge may be applied as a credit toward the applicable rate for title insurance.

### 7.4 PASS-THROUGH CHARGES

Search and examination services are included in the basic and reissue rates for policies issued under the Company or Agent Procedure. Additional Searches and Certifications may be required in a particular closing. If so, they must comply with the following rules:

(a) The actual fee charged the appropriate party will not exceed the charge made by the issuing governmental agency for the Searches and Certifications shown below. When a HUD-1 Settlement Statement is used, these charges must be reported in the 1300 Section.

      (1) Real Estate Tax Searches and/or Certifications.

      (2) Water and Sewer Searches and/or Certifications.

      (3) Municipal Lien Searches and/or Certifications.

      (4) Domestic Relations and Support Lien Searches and/or Certifications.

(b) The actual cost of obtaining certain other Searches and Certifications shown below may be passed on to an Interested Party.

      (1) Corporate Lien Searches.

      (2) Corporate Good Standing Certificates.

      (3) Uniform Commercial Code Searches.

23

07/01/02

(4)   Condominium, Cooperative and Planned
Community Certifications.

## 7.5   CLOSING SERVICE LETTER - TRANSACTION SPECIFIC

This letter, which is limited to a specific transaction, when requested provides a lender with certain protection against fraud, misapplication of funds or failure to follow written closing instructions by the Agent or Approved Attorney, subject to the provisions contained herein. The Charge for the issuance of this letter shall be $35.00, and it shall be remitted in its entirety to the Insurer (which for purposes of this Section does not include Agent or Approved Attorney).  (See Supplemental Form Closing Service Letter - TIRBOP PA CSL (10/01/00))

24

07/01/02

## **VERIFICATION**

I, Anthony L. Slapikas, do hereby verify that the statements of fact made in the foregoing COMPLAINT IN CIVIL ACTION - CLASS ACTION are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

DATE: 12-15-05

ANTHONY L. SLAPIKAS

## VERIFICATION

I, Alice B. Slapikas, do hereby verify that the statements of fact made in the foregoing COMPLAINT IN CIVIL ACTION - CLASS ACTION are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

DATE: 12-15-05

_____
ALICE B. SLAPIKAS