# Exhibit 3



Slip Copy                                                                                                                    Page 1
Slip Copy, 2005 WL 3434074 (S.D.Ill.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
Peter P. FIORE, Jr., individually and on behalf of all others similarly situated, Plaintiff,
v.
FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant.
**No. 05-CV-474-DRH.**

Dec. 13, 2005.

Jeffrey Hammel, Hammel Law Office, Belleville, IL, Judy L. Cates, Cates, Kurowski et al., Swansea, IL, for Plaintiff.
Elizabeth Ann Teutenberg, Kathy A. Wisniewski, Bryan Cave-St. Louis, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER

HERNDON, J.
**\*1** Before the Court are two motions: Plaintiff's motion to remand (Doc. 8) and Defendant's motion to dismiss (Doc. 5). Defendant First American Title Insurance Company ("Defendant"), as its name suggests, is a company that sells title insurance. Plaintiff Peter P. Fiore, Jr., individually and on behalf of all others similarly situated ("Plaintiff"), [FN1] is a former consumer of Defendant's services. Plaintiff originally filed this action in St. Clair County Circuit Court. Defendant then removed to this Court. For the reasons stated below, the Court denies Plaintiff's motion to remand and dismisses this case with leave for Plaintiff to refile.

> FN1. Plaintiff purports to represent all individuals "who have received title insurance and loan and real estate closing services by agents, apparent agents, representatives and/or employees of First American Title Insurance Co., whom have not complied with Illinois as well as other state laws." (Doc. 2, Pl.Compl., ¶ 14.) Plaintiff's putative class includes
> all customers of the Defendant, First American Title Insurance Co., in the states of Alabama, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Texas, Washington and Wisconsin.
> (*Id.* ¶ 5.) As of this date, no motion for class certification is pending.

I. *Background*

Plaintiff, on behalf of a putative class, brings suit under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT.. 505/01 et seq. ("ICFA" or the "Act") and other state consumer-fraud statutes. (Doc. 2, Pl.Compl., ¶ ¶ 7-8.) His allegations center on Defendant's "uniform and common practice of overcharging the actual costs incurred to perform title insurance and loan and real estate closing services without complying with the laws of the State of Illinois as well as with other state consumer laws." (*Id.* ¶ 13.) Plaintiff alleges that "[t]he conduct of [Defendant] was deceptive, fraudulent, unfair and misleading, and an improper concealment, omission or suppression of a material fact" (*id.* ¶ 21), and additionally that Defendant violated ICFA by

a) [M]isrepresent[ing] to the Plaintiffs the actual cost of certain closing charges including, but not limited to, credit reports, tax service contracts to the [lender], flood certification fees, settlement or closing fees, recording fees, wire transfer fees and delivery fees;
b) Omitting and/or concealing/suppressing from Plaintiffs the fact that its title insurance closing costs were not in compliance with Illinois law by failing to disclose and charge to Plaintiff the actual costs thereof;
c) By overcharging and concealing the actual costs of the services aforesaid; and
d) By retaining and converting monies in excess of the actual costs thereof and not informing Plaintiffs or refunding the same to Plaintiffs.

(*Id.* ¶ 6.) With regard to damages, Plaintiff alleges "that the damages incurred by said customers outside the State of Illinois are not greater than $5,000,000" (*Id.*), and that each of the members of the putative class is entitled to an amount "less than $75,000." (*Id.* ¶ 23.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2005 WL 3434074 (S.D.Ill.)  
**(Cite as: Slip Copy)**

Page 2

## II. *Analysis*

### 1. Motion to Remand

The Court first considers Plaintiff's motion to remand. This case was originally removed by Defendant pursuant to the Class Action Fairness Act of 2005, Pub.L. No. 109-2, 119 Stat. 14 ("CAFA"). Defendant's position is that because CAFA confers federal jurisdiction over any action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2), and because a "common sense" (Doc. 17, p. 5) reading of Plaintiff's complaint indicates that Plaintiff sues for more than $5,000,000, the Court has jurisdiction over this action. Plaintiff, arguing for remand under 28 U.S.C. § 1447(c), [FN2] responds that the matter in controversy is "clearly" less than $5,000,000 (Doc. 8, p. 3), and that "[t]he allegations of Plaintiff's Complaint should be accepted as true and [construed] in light most favorable to the Plaintiff." (Doc. 8, p. 4.)

> FN2. In pertinent part, 28 U.S.C. § 1447(c) states that if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

**\*2** A defendant may remove a case only if a federal district court would have original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). [FN3] Statutes providing for removal are construed narrowly, and doubts about removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993). The burden of establishing jurisdiction in the federal courts falls on the party seeking removal. *Id.*

> FN3. 28 U.S.C. § 1441 states:
> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties....

CAFA, which took effect on February 18, 2005, extends federal jurisdiction over any class action in which (1) minimal diversity exists, (2) the number of putative class members exceeds 100, and (3) the matter in controversy exceeds $5,000,000. Pub.L. 109-2, 119 Stat. 4 (2005); 28 U.S.C. § § 1332(d). Here, neither (1) nor (2) is at issue. Minimal diversity exists, and the number of putative class members exceeds 100. [FN4] The amount in controversy, however, is disputed by the parties. Also at issue is the question of who bears the burden or risk of establishing federal jurisdiction in the CAFA context-the party removing or the party seeking remand.

> FN4. Defendant asserts that the number of putative Plaintiffs is 8,653,141. (Doc. 3, Decl. Mary Murphy-Nelson, ¶ 3.)

The Seventh Circuit, in *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir.2005), recently addressed both issues. First, it held that despite language in the Senate Judiciary Committee's CAFA report-which Defendant relies heavily on-and despite the holdings of several district courts, the rule that the proponent of federal jurisdiction bears the risk of non-persuasion remains unchanged by CAFA. [FN5] *Brill,* 427 F.3d 448. Defendant, therefore, bears the risk of nonpersuasion on the remand question here. Second, the court held that it is the removing party's burden to show, by a reasonable probability, what the stakes of the litigation are given the plaintiff's demands. *Id.* at 449 (citing *Smith v. American General Life & Accident Ins. Co.,* 337 F.3d 888, 892 (7th Cir.2003); *Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir.1997)). At issue, therefore, is whether Defendant has shown by a reasonable probability that the stakes here exceed the statutory minimum of $5,000,000.

> FN5. In rejecting the argument that CAFA shifts the burden to the proponent of remand, the Seventh Circuit noted the Supreme Court's holding in *Pierce v. Underwood,* 487 U.S. 552, 566-68, 108

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00084-JFC Document 11-3 Filed 01/19/06 Page 4 of 6
Case 1:05-mc-02025 Document 98-1 Filed 01/19/2006 Page 4 of 6

Slip Copy  Page 3
Slip Copy, 2005 WL 3434074 (S.D.Ill.)
**(Cite as: Slip Copy)**

S.Ct. 2541, 101 L.Ed.2d 490 (1988), that "naked legislative history has no effect," and further indicated that in order to change the established rule, "Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve." Brill, 427 F.3d at 448. The Seventh Circuit additionally found that "the rule makes practical sense" because when a removing defendant has information a plaintiff may lack, "a burden that induces the removing party to come forward with the information-so that the choice between state and federal court may be made accurately-is much to be desired." Id. at 447-48.

The Court finds that Defendant has made such a showing. To begin with, Plaintiff has not, as he asserts, capped the class's total recovery at $5,000,000. Plaintiff's complaint refers just once to amount in controversy: in that reference, it states that "the damages incurred by ... customers outside the State of Illinois are not greater than $5,000,000." (Doc. 2, Pl.Compl., ¶ 5.) This assertion plainly does not limit the total amount in controversy to $5,000,000; rather, it purports to limit the recovery of putative class members outside Illinois. This does not control in determining whether federal jurisdiction is proper. Under CAFA, the $5,000,000 threshold pertains to the *aggregate* amount in controversy. 28 U.S.C. § 1332(d) ("In any class action, the claims of the individual class members shall be aggregated to determined whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs."). Here, the aggregate amount in controversy includes both claims arising inside and outside of Illinois. This amount is not limited by Plaintiff's complaint.

**\*3** Moreover, even if Plaintiff had attempted to allege a cap of $5,000,000-and to the extent Plaintiff has attempted to limit non-Illinois class members' recovery to $5,000,000-such a cap is effective only if alleged in good faith. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (holding that an amount alleged to be in controversy only controls if the claim is made in good faith); see also Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 881 (7th Cir.2001) (noting the *St. Paul'* s good-faith requirement in a similar context); Normand v. Orkin Exterminating Co., 193 F.3d 908 (7th Cir.1999) (same); Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir.1995) (same). Here, Plaintiff cannot in good faith place a $5,000,000 limitation on the recovery of the putative class, nor can he limit, in good faith, the non-Illinois class members' recovery to $5,000,000. Plaintiff's complaint consists of allegations that Defendant committed fraud, misrepresented its fee amounts, and overcharged putative class members in relation to various closing charges "including, but not limited to, credit reports, tax service contracts to the [lender], flood certification fees, settlement or closing fees, recording fees, wire transfer fees and delivery fees." (Doc. 2, Pl.Compl., ¶ 6.) Though Plaintiff does not indicate how much he seeks on a per-claim basis, it is clear from the nature of his charges that the sum is of some significance. [FN6] Defendant, further, indicates-and Plaintiff does not deny-that there are 8,653,141 members of Plaintiff's putative class, 8,229,769 members of whom reside outside of Illinois. [FN7] (Doc. 1, ¶ 12; Doc. 3, Decl. Mary Murphy-Nelson, ¶ 3.) Thus, if each class member's claim averaged just $.58, or if each non-Illinois class member's averaged just $.61, the jurisdictional threshold would be surpassed. Given the nature of Plaintiff's charges, the Court finds this outcome implausible. Plaintiff cannot in good faith limit the class recovery or the non-Illinois recovery to $5,000,000. His stated attempts to do so are mere wishful thinking.

> FN6. Plaintiff asserts that he was billed $1,639.09 by Defendant, and that this amount is "typical of the charges of the members of the class." (Doc. 2, Pl.Compl, ¶ 3.) He does not indicate, however, how much of this amount owes to Defendant's impropriety. The only reference Plaintiff makes as to the amount of his and other class members' recoveries is that each individual claim does not exceed $75,000. (*Id.*)

> FN7. Though Plaintiff is correct that the Court, in deciding the removal question, may only consider the state of affairs at the time the case was removed, BEM I, L.L.C. v. Anthropoligie, Inc., 301 F.3d 548, 551 (7th Cir.2002); Chase, 110 F.3d at 429; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir.1992), this fact does not preclude this Court from considering Defendant's allegation that the putative class contains 8,653,141 members. Defendant made its allegation in its notice of removal, and it relates to a time period (2002-04) that concluded prior to the outset of this litigation. (Doc. 1, ¶ 12.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3434074 (S.D.Ill.)
**(Cite as: Slip Copy)**

Page 4

This latter point, however, is inconsequential in the context of this inquiry, as Defendant has shown that it is highly probable that the amount in controversy exceeds CAFA's $5,000,000 jurisdictional threshold. There appear to be more than 8.6 million class members in this case-a staggering sum-each with potentially significant claims. Given the nature of these claims, and given the overwhelming size of Plaintiff's putative class, the Court finds that there is a reasonable probability that the amount in controversy exceeds $5,000,000. For this reason, the Court denies Plaintiff's motion to remand.

2. Motion to Dismiss

The second matter before the Court is Defendant's motion to dismiss. (Doc. 5.) Defendant argues that Plaintiff's complaint must be dismissed due to his failure to plead his fraud claims with the particularity demanded by Federal Rule of Civil Procedure 9(b). Plaintiff disagrees.

**\*4** Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [FN8] This heightened pleading requirement is premised upon a desire "to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual." *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 748 (7th Cir.2005); *see also Ackerman v. Northwestern Mutual Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir.1999). The purpose of the requirement is to "force the plaintiff to do more than the usual investigation before filing his complaint," a task that is warranted in light of the "great harm" that can result to company or individual upon the filing of a fraud action. *Ackerman,* 172 F.3d at 469; *see also Fidelity Nat'l Title Ins. Co.,* 412 F.3d at 749 (noting that Rule 9(b) "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"). In order to meet Rule 9(b)'s strictures and survive dismissal, a plaintiff must generally allege the who, what, where, and when of the alleged fraud. *Ackerman,* 172 F.3d at 469; *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990); *see also Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) ( "[Rule 9(b) ] requires 'the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." ' " (citations omitted))

> FN8. All fraud actions proceeding in federal court are subject to Rule 9(b)'s heightened standard, regardless of whether they are based on state or federal law. *Ackerman v. Northwestern Mutual Life Ins. Co.,* 172 F.3d 467, 470 (7th Cir.1999) (citing *Herman & Maclean v. Huddleston,* 459 U.S. 375, 387-89, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)).

Here, Plaintiff's complaint lacks the particularity required by Rule 9(b). Plaintiff's central allegations of fraud are that Defendant "misrepresented to the Plaintiffs the actual cost of certain closing charges including, but not limited to, credit reports, tax service contracts to the [lender], flood certification fees, settlement or closing fees, recording fees, wire transfer fees and delivery fees," and that it "omitt[ed] and/or conceal[ed]/suppress[ed] from Plaintiffs the fact that its title insurance closing costs were not in compliance with Illinois law by failing to disclose and charge to Plaintiffs the actual costs thereof." (Doc. 2, Pl.Compl., ¶ 6.) Plaintiff details no specific allegations of fraud with regard to his dealings with Defendant other than to allege that he did business with Defendant, that Defendant's conduct was fraudulent, and that "[t]he total billings submitted to Plaintiff for [Defendant's services amounted to] $1,639.09." (Doc. 2, Pl.Compl., ¶¶ 1-6.)

These allegations are insufficient to satisfy Rule 9(b)'s requirements. Although Plaintiff alleges that Defendant misrepresented the actual costs of its closing charges, he does not demonstrate exactly what this misrepresentation consisted of-that is, he fails to sufficiently state the "what" of the alleged fraud. Plaintiff does not indicate, for example, whether Defendant perpetrated its fraud simply by assessing charges in excess of its actual closing costs, or if Defendant's misrepresentations consisted of actual statements made to Plaintiff and members of the putative class. What conduct, exactly, was fraudulent? Plaintiff's complaint begs the question.

**\*5** In order to sufficiently plead a fraud action under Rule 9(b), a plaintiff must at least identify the misrepresentations that give rise to his complaint. *Viacom, Inc.,* 20 F.3d at 777. Plaintiff has failed to do so here. Accordingly, the Court grants Defendant's motion to dismiss.

III. *Conclusion*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2005 WL 3434074 (S.D.Ill.)  
**(Cite as: Slip Copy)**

Page 5

For the reasons above, the Court DENIES Plaintiff's motion to remand (Doc. 8) and GRANTS without prejudice Defendant's motion to dismiss (Doc. 5). Plaintiff has until January 31, 2006 to refile his complaint.

IT IS SO ORDERED.

S.D.Ill.,2005.  
Fiore v. First American Title Ins. Co.  
Slip Copy, 2005 WL 3434074 (S.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 3:05cv00474 (Docket) (Jul. 06, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.