IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANTHONY L. SLAPIKAS and ALICE B. SLAPIKAS, for themselves and all others similarly situated, | : : : | |
| | : | No. 2:06-cv-00084-JFC |
| Plaintiffs, | : : | Judge Joy Flowers Conti |
| vs. | : : | **PLAINTIFFS' BRIEF IN** |
| | : | **OPPOSITION TO** |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | : : | **DEFENDANT'S MOTION** **TO DISMISS** |
| | : | |
| Defendant. | : : | Adrian N. Roe, Esquire Pa. Bar No. 61391 |
| | : : | Charles B. Watkins, Esquire Pa. Bar No. 01082 |
| | : : | Kenneth J. Witzel, Esquire Pa. Bar No. 82814 |
| | : : : : : | Watkins Dulac & Roe P.C. Two Gateway Center, 17 East 603 Stanwix Street Pittsburgh, Pennsylvania 15222 (412) 434-5544 |
| | : : : | Counsel for Plaintiffs Anthony L. and Alice B. Slapikas |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

I.      INTRODUCTION ........................................................................ 1

II.     THE COMPLAINT .................................................................... 3

III.    ARGUMENT ............................................................................. 4

      A.     The Cases Pending in State Court.......................................... 5

      B.     The Complaint Adequately Alleges a Claim
             for Breach of Express Contract............................................... 5

      C.     The Complaint Adequately Alleges a Claim
             for Breach of Implied Contract ............................................... 7

      D.     Plaintiffs Have Alleged Actionable Representations
             and Omissions ........................................................................ 8

           1.     Plaintiffs Have Adequately Alleged a Claim
                  for Affirmative Misrepresentation ............................... 8

                 a.     The Filed Rate Doctrine Does Not Bar
                       Plaintiffs' Suit ................................................... 9

           2.     Consistent with *Patterson,* First American
                  Owed Fiduciary Duties to Plaintiffs ........................... 10

      E.     Plaintiffs Can Maintain a UTPCPL Claim Arising From the
             Purchase of a Title Insurance Policy on Their Residences ...................... 12

           1.     Plaintiffs Engaged in the Quintessential Consumer
                 Transaction.................................................................. 12

           2.     Plaintiffs Have Alleged Facts Sufficient to State a
                 Claim for Relief Under Sections 201-2(4)(v), (vii)
                 and (ix) of the UTPCPL................................................ 12

           3.     Plaintiffs Have Adequately Alleged a Claim for
                 Relief Under the Catch-All Provision of the UTPCPL................ 13

F.  Plaintiffs Have Alleged a Valid Conversion Claim ................................ 13

G.  Plaintiffs Have Alleged a Valid Unjust Enrichment Claim .................... 14

H.  Plaintiffs' Claim for Breach of the Implied Duty of Good
    Faith and Fair Dealing Should be Merged into Their
    Express Contract ..................................................................................... 14

I.  Plaintiffs Have Alleged a Viable Action Under the
    Insurance Bad Faith Statute, 42 P.S. § 8371 ........................................... 14

IV.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.,*
    524 U.S. 214 (1998)............................................................................... 9

*Becker v. Chicago Title Ins. Co.,*
    2004 U.S. Dist. LEXIS 1988 (E.D. Pa. Feb. 4, 2004) ............................ 11

*Bowley v. City of Uniontown Police Dept.,*
    404 F.3d 783 (3d Cir. 2005)................................................................. 4, 5

*Brickman Group Ltd. v. CGU Ins. Co.,*
    865 A.2d 918 (Pa. Super. 2004)....................................................... 14, 15

*Bristol Township v. Independence Blue Cross,*
    2001 U.S. Dist. LEXIS 16594 (E.D. Pa. Oct. 10, 2001)......................... 13

*Brown v. MCI Worldcom Network Servs., Inc.,*
    277 F.3d 1166 (9th Cir. 2002) ................................................................ 10

*Calabro v. Department of Aging,*
    689 A.2d 347 (Pa. Cmwlth. 1997) ........................................................... 6

*Commonwealth v. Percudani,*
    825 A.2d 743 (Pa. Cmwlth. 2003) .......................................................... 13

*Contawe v. Crescent Heights of America, Inc.,*
    2004 W.L. 2244538 (E.D. Pa. 2004) ....................................................... 11

*Cummings v. Express Financial Services, Inc. and Stewart Title Guaranty Co.,*
    Civil Action No. 000747, March Term 2005............................................. 2

*Daas v. Epplen,*
    162 Colo. 60, 424 P.2d 779 (1967)........................................................... 7

*Dubin v. Security Union Title Ins. Co.,*
    162 Ohio App.3d 97, 2005 Ohio App. LEXIS 323
    (Ohio App., 8th Dist. 2005) ...................................................................... 2

*Evanns v. AT&T Corp.,*
    229 F.3d 837 (9th Cir. 2000) .................................................................... 9

*Gonzalez v. Old Kent Mortgage Co.,*
    2000 U.S. Dist. LEXIS 14530 (E.D. PA. Sept. 21, 2000) ...................... 14

*Gray v. Nationwide Mut. Ins. Co.,*
    422 Pa. 500, 223 A.2d 8 (1966)............................................................... 10

*Hampden Real Estate, Inc. v. Metropolitan Management Group,*
    2003 U.S. Dist. LEXIS 24409 (E.D. Pa. Dec. 30, 2003)........................ 6

*Hampden Real Estate, Inc. v. Metropolitan Management Group,*
    142 Fed. Appx. 600 (3d Cir. 2005).......................................................... 6, 7

*Hardy v. Pennock Ins. Agency, Inc.,*
    529 A.2d 471 (Pa. Super. 1987)............................................................... 12

*Hatalowich v. Redevelopment Authority of Monessen,*
    454 Pa. 481, 312 A.2d 22 (1973)............................................................. 5

*Heller v. Deutsche Bank AG,*
    2005 U.S. Dist. LEXIS 3444 (E.D. Pa. Mar. 30, 2005)......................... 11

*Ihnat v. Pover,*
    146 P.L.J. 299 (Allegh. Co. 1998) ........................................................ 10, 11

*In re Johnson,*
    292 B.R. 821 (E.D. Pa. Bankr. 2003) .................................................... 11

*In re K-Dur Antitrust Litigation,*
    338 F.Supp.2d 517 (D. N.J. 2004) .......................................................... 13

*In the Matter of Coordinated Title Ins. Cases,*
    2004 WL 690380 (N.Y. Sup. Ct., Nassau Co., Jan. 8, 2004) ................. 2

*John B. Conomos, Inc. v. Sun Co.,*
    831 A.2d 696 (Pa. Super. 2003)............................................................... 8

*LaCourse v. Kiesel,*
    366 Pa. 385, 77 A.2d 877 (1950)............................................................. 6, 9

*Lipton v. MCI Worldcom, Inc.,*
    135 F. Supp. 2d 182 (D.D.C. 2001) ........................................................ 10

*Luttenegger v. Conseco Financial Servicing Corp.,*
    671 N.W.2d 425 (Iowa 2003) .................................................................. 7

*Marco Supply Co. v. AT&T Communications, Inc.,*
875 F.2d 434 (4th Cir. 1989) ...................................................................... 9

*McShane v. Recordex Acquisition Corp.,*
2003 Phila. Ct. Com. Pl. LEXIS 54 (Phila. Co. Nov. 14, 2003)............... 6

*Mitchell v. Chicago Title Ins. Co.,*
2003 W.L. 23786983 (Minn. Dist. Ct. Dec. 22, 2003) ........................... 1, 2

*Nationwide Mut. Ins. Co. v. Brown,*
2005 U.S. Dist. LEXIS 25417 (W.D. Pa. Sept. 8, 2005)......................... 15

*New York Life Ins. Co. v. Brandwene,*
316 Pa. 218, 172 A. 669 (1934)................................................................ 9

*Omnicron Systems, Inc. v. Weiner,*
860 A.2d 554 (Pa. Super. 2004)................................................................ 5

*Patterson v. Fidelity National Title Ins. Co.,*
152 P.L.J. 286 (Allegh. Co. 2004) ........................................2, 8, 10-14

*Pekular v. Eich,*
513 A.2d 427 (Pa. Super. 1986)................................................................ 12

*Pressley v. The Travelers Property Casualty Corp.,*
817 A.2d 1131(Pa. Super. 2003)............................................................... 14

*Schermer v. Wilmart,*
282 Pa. 55, 127 A. 315 (1925)................................................................. 5

*Tran v. Metropolitan Life Ins. Co.,*
408 F.3d 130 (3d Cir. 2005)...................................................................... 12

*Travelers Cas. & Sur. Co. v. Castegnaro,*
565 Pa. 246, 772 A.2d 456 (2001)........................................................... 6

*Tribune Review Publishing Co. v. Westmoreland Cty. Housing Auth.,*
574 Pa. 661, 833 A.2d 112 (2003)........................................................... 6

*Toy v. Metropolitan Life Ins. Co.,*
___ Pa. ___, 882 A.2d 462 (2005)........................................................ 14, 15

## STATUTES AND RULES

40 P.S.§ 910-37 ........................................................................................ 1

40 P.S. § 910-42 ...................................................................................... 1

42 P.S. § 6152 ......................................................................................... 6

42 P.S. § 8371 ......................................................................................... 4, 14

73 Pa. C.S. § 201-1 *et seq.* ................................................................. 4

73 P.S. § 201-2(xxi) .............................................................................. 13

Fed R. Civ. P. 12(b)(6) .......................................................................... 4, 5

Fed R. Civ. P. 8(a) ................................................................................. 14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY L. SLAPIKAS and ALICE B. SLAPIKAS, for themselves and all others similarly situated, | : : : : | No. 2:06-cv-00084-JFC |
| Plaintiffs, | : : | Judge Joy Flowers Conti |
| vs. | : : | *Filed Electronically* |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | : : : | |
| Defendant. | : | |

**PLAINTIFFS' BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### I. INTRODUCTION

This proposed class action seeks damages on behalf of thousands of Pennsylvania homeowners who were overcharged for title insurance when they refinanced their home mortgages.  The Complaint alleges that Defendant First American Title Insurance Company ("First American") charged plaintiffs the "Basic Rate" for title insurance even though it knew they were entitled to a premium discount mandated by law.[1]

---

[1] First American is a member of the Title Insurance Rating Board of Pennsylvania ("TIRBOP").  *See* Complaint Exhibit ("Ex.") 3, at page 2.  Pursuant to Pennsylvania law, 40 P.S. § 910-37(b), this "rating organization" has filed its Manual of Title Insurance Rating ("Manual") (Complaint Ex. 3) with the Pennsylvania Insurance Commissioner. The Manual, as approved by the Commissioner, is binding on First American.  40 P.S. §§ 910-37(h), 910-42.

Section 5.3 of the Manual provides that an insured is entitled to a ten percent discount, known as the "Reissue Rate," if title insurance has been purchased as to the same property within ten years preceding the transaction.  Section 5.6 of the Manual provides for a twenty-eight percent discount, known as the "Refinance Rate," if the prior purchase of title insurance with respect to the same property occurred within three years. *See Mitchell v. Chicago Title Ins. Co.,* 2003 WL 23786983, at *2, n. 1 (Minn. Dist. Ct.

Courts in three other states have certified materially identical class actions.[2]

Within Pennsylvania, the Courts of Common Pleas of both Allegheny County[3] and

Philadephia County[4] have overruled preliminary objections in comparable proposed class

actions.

The reported decisions express a common theme:

> No evidence is in the record to indicate that a consumer actually knew that they were entitled to the discount and knowingly waived the discount in favor of paying the higher premium. . . . ***[I]t is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars [in premium], would choose to pay the higher rate and forego a savings mandated by law.***

*In the Matter of Coordinated Title Ins. Cases*, 784 N.Y.S.2d 919, 2004 WL 690380, at

**6 and 9 (Sup. Ct., Nassau Co., N.Y.) (Jan. 8, 2004) (emphasis added).

First American does not once suggest in its motion papers[5] that Plaintiffs were

charged the correct rate for title insurance.  While thus tacitly admitting that Plaintiffs

---

Dec. 22, 2003) ("Reissue rates are lower in part because [the insurer] would have knowledge that a title insurer already has completed a substantial portion of the investigation into the title history of a given property such that the risk to be insured only involves the relevant dates *after* the earlier policy was issued.") (emphasis original).

[2]*Dubin v. Security Union Title Ins. Co.,* 162 Ohio App.3d 97, 2005 Ohio App. LEXIS 323 (Ohio App., 8th Dist. 2005), *review denied,* 107 Ohio St. 3d 1683, 2005 Ohio LEXIS 2956 (Ohio 2005); *Mitchell v. Chicago Title Ins. Co.,* 2003 WL 23786983 (Minn. Dist. Ct. Dec. 22, 2003); *In the Matter of Coordinated Title Ins. Cases,* 2004 WL 690380 (N.Y. Sup. Ct., Nassau Co., Jan. 8, 2004).

[3]*Patterson v. Fidelity National Title Ins. Co.,* 152 P.L.J. 286 (Allegh. Co. 2004) (Horgos, J.).

[4]*Cummings v. Express Financial Services, Inc. and Stewart Title Guaranty Co.,* Civil Action No. 000747, March Term 2005 (The Docket Report in the *Cummings* case is Exhibit 1 to this Brief).

[5] Motion To Dismiss Plaintiff's Complaint ("Motion") and First American's Memorandum In Support Of Its Motion To Dismiss Plaintiff's Complaint ("Memorandum").

2

were overcharged, First American posits that there simply is *no private cause of action and no judicial remedy available to plaintiffs.*

Contrary to First American's suggestion, title insurers do not enjoy immunity in Pennsylvania.  However, while tens if not hundreds of thousands of Pennsylvania consumers have valid claims against First,American, individually-speaking, these consumers, who have been overcharged amounts ranging from approximately thirty dollars to several hundred dollars, could not individually afford to bring suit to enforce their rights to compensation.  This class action is the only means by which defrauded Pennsylvania consumers can avail themselves of their rights, and correspondingly First American can be held to its obligations, under Pennsylvania law.

## II.  THE COMPLAINT

As alleged in detail in the Complaint, Plaintiffs purchased title insurance when they refinanced their home in September 2001 through Chase Manhattan Bank (the "Chase Refinancing").  Complaint ¶¶ 1, 5-9.  In June 2003, Plaintiffs again refinanced, this time through National City Mortgage Corporation (the "Nat. City Refinancing").  *Id.* ¶ 10.  An authorized agent of Defendant First American acted as settlement agent for the Nat. City Refinancing.  *Id.* ¶ 11.

In connection with the Nat. City Refinancing, First American performed a title search, which disclosed the mortgage recorded in connection with the Chase Refinancing. *Id.* ¶ 23.  As a result of this discovery, First American knew that Plaintiffs had purchased title insurance on the same property within the preceeding three years and thus qualified under Section 5.6 of the Manual for the discounted Refinance Rate premium   Complaint ¶¶ 9, 23, 55.

Despite this knowledge, First American prepared a HUD-1 Settlement Statement ("HUD-1") that falsely represented that an amount corresponding to the undiscounted, Basic Rate was the "actual" charge for title insurance.  Complaint ¶ 24 and Complaint Ex. 2.  Plaintiffs relied on this false representation, paid the premium specified by First American, and were thus overcharged by the difference between the Basic and Refinance Rate, *i.e.,* $335.65.  *Id.*  ¶ 28.

Plaintiffs reposed "special trust and confidence in First American."  *Id.* ¶ 49. Plaintiffs "delegated to First American responsibility for structuring the purchase of title insurance . . . ."  *Id.*  First American abused this trust by structuring the title insurance transaction to charge Plaintiffs the higher Basic Rate rather than the applicable and legally required Refinance Rate.  *Id.* ¶ 52.  The higher Basic Rate provided no benefit to Plaintiffs because the coverage provided by a title insurance policy purchased at the discounted rate is identical to the coverage provided by a policy purchased at the Basic Rate.  *Id.* ¶ 51.

The Complaint alleges eight counts:  I (Breach of Express Contract); II (Breach of Implied Contract); III (Fraud); IV (Violation of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. § 201-1 *et seq.* ("UTPCPL")); V (Conversion); VI (Unjust Enrichment); VII (Breach of Duty of Good Faith and Fair Dealing); and VIII (Violation of the Insurance Bad Faith Statute, 42 P.S. § 8371).

### III.  ARGUMENT

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in the law most favorable to plaintiff."  *Bowley v. City of Uniontown Police*

*Dept.,* 404 F.3d 783, 786 (3d Cir. 2005).  A Rule 12(b)(6) motion may be granted "[o]nly

if it is certain that no relief could be granted under the facts pleaded . . . ."  *Id.*  First

American's arguments (which are addressed below in the order presented in First

American's Memorandum) do not meet this standard.  Accordingly, the Court should

deny First American's Motion to Dismiss.

> ### A.      The Cases Pending in State Court

First American is correct that counsel for Plaintiffs have brought comparable class

action lawsuits against other TIRBOP members:  *See Patterson v. Fidelity National Title

Ins. Co.*, GD 03-21176 (Allegh. Co.); *DeCooman v. Lawyers Title Insurance Co.*, GD-05-

17476 (Allegh. Co.).  Both cases are pending before Judge Robert P. Horgos in the Court

of Common Pleas of Allegheny County.[6]

> ### B.      The Complaint Adequately Alleges
> ###          a Claim for Breach of Express Contract

Under Pennsylvania law, the necessary elements of a claim for breach of contract

are (i) mutual assent to the same terms, (ii) exchanged consideration, and (iii) breach.

*Omnicron Systems, Inc. v. Weiner,* 860 A.2d 554, 564 (Pa. Super. 2004).  The Complaint,

¶¶ 61-63, alleges each of these elements.  No particular language is required to establish a

contract so long as there is evidence of mutual assent and consideration.  *See Hatalowich

v. Redevelopment Authority of Monessen,* 454 Pa. 481, 486, 312 A.2d 22, 24-25 (1973).

*See also Schermer v. Wilmart,* 282 Pa. 55, 58-59, 127 A. 315, 316 (1925) (deposit receipt

constituted contract).  A party may be held liable in contract based on false

---

[6]Judge Horgos previously overruled in part the preliminary objections in
*Patterson.  See* Ex. 1. The parties' cross motions for class certification and summary
judgment have been fully brief and heard and are under consideration by Judge Horgos.
In *DeCooman*, the parties have completed briefing and argument on defendant's
preliminary objections and are awaiting decision.

representations in a contract.[7]  Falsity of the representation may be shown by reference to an applicable law or regulation.[8]

First American fails to articulate any persuasive defense to Plaintiffs' express contract claim.  First American's assertion that the HUD-1 "is not a contract with First American," Memorandum, at 3, is contradicted by the face of the HUD-1.  The first page of the HUD-1 states "This form is furnished to give you [the consumer] a statement of actual settlement costs."  Complaint, Ex. 2, page 1.  Line 1108 of the HUD-1 states a price of $1,198.75 payable "to First American Title Insurance Company."  *Id.* page 2.  The HUD-1 is signed by both Plaintiffs and Mezzo Land Service LLC, which is alleged to be the authorized agent of First American.  Complaint ¶¶ 11, 58.[9]

First American argues that a HUD-1 Settlement Statement cannot serve as a written contract.  Memorandum, at 4.  However, the case upon which First American principally relies, *Hampden Real Estate, Inc. v. Metropolitan Management Group*, 2003 U.S. Dist. LEXIS 24409 (E.D. Pa. Dec. 30, 2003), was reversed by the Third Circuit.  In *Hampden Real Estate, Inc. v. Metropolitan Management Group*, 142 Fed. Appx. 600,

---

[7]*Calabro v. Department of Aging,* 689 A.2d 347, 349 and n.2 (Pa. Cmwlth. 1997) (party liable for false representation in contract that statement was "true and accurate").

[8]*LaCourse v. Kiesel,* 366 Pa. 385, 388-89, 77 A.2d 877, 879-80 (1950) (contractual representation false in light of applicable zoning code); *McShane v. Recordex Acquisition Corp.*, 2003 Phila. Ct. Com. Pl. LEXIS 54, **4, 7 (Phila. Co. Nov. 14, 2003) (denying preliminary objections to breach of contract claim based on medical records services' alleged failure to comply with fee schedule in Medical Records Act, 42 P.S. § 6152 ).

[9]A principal is bound by the contractual undertakings of its agents.  *See Tribune Review Publishing Co. v. Westmoreland Cty. Housing Auth.,* 574 Pa. 661, 674-75, 833 A.2d 112, 119-20 (2003); *See also Travelers Cas. & Sur. Co. v. Castegnaro*, 565 Pa. 246, 252, 772 A.2d 456, 460 (2001) ("An agent of a company … is more properly characterized as an extension of that entity, rather than a separate part of it.").

603-04 (3d Cir. 2005) (unpublished), the Third Circuit held that a HUD-1 *could* evidence a contractual amendment.  *See also Luttenegger v. Conseco Financial Servicing Corp.*, 671 N.W.2d 425, 435-36 (Iowa 2003) (consumer bound by HUD-1).[10]

Moreover, First American's assertion that it "received no benefit from the settlement and closing of the transaction," Memorandum, at 4, is flatly incorrect.  First American was paid an inflated title insurance premium of $1,198.75.  Complaint, Ex. 2 at p. 2 (Line 1108).

First American's argument that Plaintiffs have failed to identify the terms of the HUD-1 that First American breached simply ignores the allegations of the Complaint.  Paragraphs 61 and 62 of the Complaint quote the reference to "actual" costs on the first page of the HUD-1.  The cost of title insurance identified on Line 1108 of the HUD-1 was not the "actual" cost of title insurance, because it did not correspond to the applicable rate under the Manual.  *See supra*. footnote 1.

### C.     The Complaint Adequately Alleges a Claim for Breach of Implied Contract

Contrary to First American's argument, Memorandum, at 8, Plaintiffs' implied contract claim is entirely consistent with their express contract claim.  Plaintiffs are not seeking to prove-up a contract that is inconsistent with another applicable contract, but rather are seeking to enforce the undertakings and representations set forth in the HUD-1.  This is an entirely appropriate application of a claim for breach of implied contract.

---

[10]*Daas v. Epplen,* 162 Colo. 60, 424 P.2d 779 (1967), cited by First American, Memorandum, at 3-4, held only that a settlement statement did not foreclose a claim for a credit not specified in the statement.  *Daas* did not involve an affirmative representation that the costs listed in the statement were "actual" costs.

Assuming *arguendo* that Plaintiffs' express contract claim is deemed legally deficient, the implied contract claim provides an appropriate means of curing any purported deficiency. For example, if the Court deems that the term "actual settlement costs" in the HUD-1 does not by itself incorporate by reference the discounted title insurance rates stated in the Manual, such incorporation may be implied under a theory of implied contract. Under the "doctrine of necessary implication,"

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied.

*John B. Conomos, Inc. v. Sun Co.,* 831 A.2d 696, 706 (Pa. Super. 2003) (citations omitted).

In light of the representations in the HUD-1, the exchange of consideration, and the legally binding nature of the rate Manual, "reason and justice" dictate that First American is contractually obligated to charge Plaintiffs the rate set forth in the Manual.[11]

### D.      Plaintiffs Have Alleged Actionable Representations and Omissions

#### 1.      Plaintiffs Have Adequately Alleged a Claim for Affirmative Misrepresentation

Contrary to First American's argument, Memorandum, at 6, the Complaint alleges that First American falsely represented that the charge for title insurance set forth in Line

---

[11]The implied contract alleged in the First Amended Complaint is distinguishable from the implied contract alleged in *Patterson.* Here, Plaintiff is not asking the Court to imply a price term different from that specified in the applicable contract but to enforce the representation in the HUD-1 that the cost for title insurance listed on Line 1108 of the HUD-1 was the "actual" cost. This theory was not presented to Judge Horgos at the preliminary objection stage in *Patterson. Cf. Patterson,* 152 P.L.J. at 287.

1108 of the HUD-1 was the "actual" charge for title insurance.  Complaint ¶ 73.  This representation was false and misleading, because (as First American knew from its title research, *see id.* ¶¶ 23, 55) Plaintiffs qualified for the Refinance Rate specified in the Manual.  This alleged knowing misrepresentation -- by itself and without independent proof of a duty to disclose discussed below -- is sufficient to maintain a fraud claim.[12]

**a.     The Filed Rate Doctrine Does Not Bar Plaintiffs' Suit**

First American asserts that it had no duty to disclose the existence of the discounted title insurance premium because constructive knowledge of the applicable rate is imputed to Plaintiffs.  Memorandum, at 7.  First American invokes the "filed rate doctrine," without identifying it or explaining its full import.  *See* Memorandum, at 6-8.

The filed rate doctrine bars any claim that would either "invalidate, alter or add to the terms of the filed tariff" or "challenge [the terms of a tariff] that [an] agency has reviewed and filed.'"  *Evanns v. AT&T Corp.,* 229 F.3d 837, 840 (9th Cir. 2000) (internal citations omitted); *see also American Telephone & Telegraph Co. v. Central Office Telephone, Inc.,* 524 U.S. 214, 229 (1998) (concurring opinion) (Rehnquist, C.J.) (the filed-rate doctrine "pre-empt[s] only those suits that seek to alter the terms and conditions provided for in the tariff").

Here, however, Plaintiffs neither seek to "invalidate, alter, or add to the terms of the filed tariff," nor to "challenge [the terms of a tariff]."  Instead, Plaintiffs seek to uphold and enforce the mandatory filed rates set out in the Manual.  This is entirely appropriate under the decisions cited by First American. *E.g.*, *Marco Supply Co. v. AT & T Communications, Inc.*, 875 F.2d 434, 436 (4th Cir. 1989) (cited in Memorandum, at 7).

---

[12]*LaCourse v. Kiesel,* 366 Pa. 385, 388-89, 77 A.2d 877, 879-80 (1950); *New York Life Ins. Co. v. Brandwene,* 316 Pa. 218, 224, 172 A. 669, 671 (1934).

9

First American fails to cite a single case in which a court has employed the filed rate doctrine to insulate a defendant from a claim that it had overcharged a customer in violation of a filed rate.  Courts have consistently held that the filed rate doctrine does not bar actions such as this which seek to enforce the filed rate.[13]

In short, far from shielding First American from liability, the filed rate doctrine actually mandates that First American charge the rates specified in the Manual.

### 2. Consistent with *Patterson,* First American Owed Fiduciary Duties to Plaintiffs

In *Patterson,* Judge Horgos adopted a narrow theory of fiduciary duty applicable to the specific circumstance where "the Plaintiffs did delegate responsibility to Defendants for the structuring of the transaction."  *Patterson,* 152 P.L.J. at 288.  Judge Horgos drew this theory from Judge Wettick's decision in another consumer action against an insurance company, *Ihnat v. Pover,* 146 P.L.J. 299, 310 (Allegh. Co. 1998) ("*Ihnat II*").  These decisions are squarely aligned with Pennsylvania precedent holding that an insurer is subject to fiduciary duties when it assumes responsibility for acting on behalf of a purchaser of insurance.  *See Gray v. Nationwide Mut. Ins. Co.,* 422 Pa. 500, 504, 223 A.2d 8, 9-10 (1966).

First American has articulated no valid reason why this Court should disregard Judge Horgos's well-reasoned decision in *Patterson.*  First American's argument that no fiduciary duty should be found due to the purported role of the lender, Memorandum, at

---

[13]*E.g., Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1171-72 (9th Cir. 2002) (filed rate doctrine "'does not serve as a shield' staving off claims against a carrier based on the tariff itself" and "does not preclude courts from interpreting the provisions of a tariff and enforcing that tariff.") (citations omitted); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 188 (D.D.C. 2001) ("[T]he filed-tariff doctrine bars courts from hearing any challenge to duly filed rates. . . .  On the other hand, a claim that seeks to enforce the tariff may be brought in federal court.").

9, rests on factual assertions which are inconsistent with the face of the HUD-1.  For example, First American argues that Plaintiffs paid the title insurance premium "at the direction" and "for the benefit" of the lender.  *Id.*  However, the HUD-1 is signed by the agent of First American, and Line 1108 of the HUD-1 provided for payment of the title insurance premium to First American.  Complaint Ex. 2, at page 2.[14]

First American's conclusion that the law of "confidential relationships" has changed in Pennsylvania since Judge Horgos rendered his decision in *Patterson* cannot be drawn from the cited cases.  Memorandum, at 9.[15]  First American has cited no authority for its remarkable suggestion that the long-established, generally-applicable principles of fiduciary duty are inapplicable if an insurance policy names a loss beneficiary other than the purchaser.  *Compare Ihnat II,* 146 P.L.J. at 310 (fiduciary duty may be found in sale of life insurance policy which, by definition, often names a beneficiary other than the policy purchaser).

---

[14]A proposed Stipulation for the filing of a complete copy of the HUD-1 for the Nat. City Financing, Ex. 2 to the Complaint, is pending.  *See* Docket Entry No. 9.

[15]Plaintiffs in *Becker v. Chicago Title Ins. Co.,* 2004 U.S. Dist LEXIS 1988 (E.D. Pa. Feb. 4, 2004), "ma[d]e no allegations that . . . Plaintiffs had a dependence on the title agents."  *Id.* at *24.  Where such allegations have been made, the same court has denied a motion to dismiss.  *Heller v. Deutsche Bank AG,* 2005 U.S. Dist. LEXIS 3444, at *5 (E.D. Pa. Mar. 3, 2005) (*citing Becker).*  The viability of the fiduciary duty theory articulated in *Patterson* is expressly recognized by another case cited by First American: *In re Johnson,* 292 B.R. 821, 828 (E.D. Pa. Bankr. 2003) ("[a] fiduciary relationship may nevertheless arise if the lender gains substantial control over the borrower's business affairs."); *accord Contawe v. Crescent Heights of America, Inc.*, 2004 WL 2244538 (E.D. Pa. 2004) (no fiduciary relationship because plaintiffs did not allege "a special relationship of trust").

E.     **Plaintiffs Can Maintain a UTPCPL Claim Arising From the Purchase of a Title Insurance Policy on Their Residences**

First American also asks this Court to reconsider Judge Horgos's decision in *Patterson* that the alleged conduct is actionable under the UTPCPL.   Again, First American has cited no valid reason doing so.

1.     **Plaintiffs Engaged in the Quintessential Consumer Transaction**

First American's characterization of a home refinancing as an unprotected, "commercial" transaction, Memorandum, at 10, is contrary to the facts alleged in the Complaint and the spirit of the UTPCPL.[16]  Consumers, not lenders, purchase title policies from title insurance companies using loan proceeds belonging to the consumers. *See* Complaint ¶¶ 1, 6, 10, 58.  Pennsylvania's courts have repeatedly held that consumers may bring private damages actions against insurers under the UTPCPL in relation to various  types of insurance that routinely afford coverage to lenders.[17]

2.     **Plaintiffs Have Alleged Facts Sufficient to State a Claim for Relief Under Sections 201-2(4)(v), (vii) and (ix) of the UTPCPL**

First American's argument that sections 201-2(4)(v), (vii) and (ix) of the UTPCPL are not applicable to this case is directly contrary to the holding of *Tran v. Metropolitan Life Ins. Co.,* 408 F.3d 130, 139-40 (3d Cir. 2005), wherein the United States Court of Appeals for the Third Circuit reversed the entry of summary judgment

---

[16]The UTPCPL is "'to be construed liberally to effect its object of preventing unfair or deceptive practices.'"  *Pekular v. Eich*, 513 A.2d 427, 432 (Pa. Super. 1986) (action against insurer) (*quoting Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812, 815-17 (Pa. 1974)).

[17]*See, e.g., Hardy v. Pennock Insur. Agency, Inc.*, 529 A.2d 471, 476-77 (Pa. Super. 1987) (fire insurance); *Pekular v. Eich,* 513 A.2d 427, 430-31 (Pa. Super. 1986) (automobile insurance).

against the plaintiffs in an insurance overcharge case alleging claims under these specific provisions of the UTPCPL and remanded for further proceedings.  Moreover, First American's false representation that title insurance was being sold at its "actual" cost is actionable under the plain meaning of the cited provisions of the UTPCPL.

### 3. Plaintiffs Have Adequately Alleged a Claim for Relief Under the Catch-All Provision of the UTPCPL

Judge Horgos held in *Patterson* that the plaintiffs had adequately alleged a violation of the catch-all provision of the UTPCPL, 73 P.S. § 201-2(xxi), because they had adequately alleged a claim of common law fraud.  *Patterson*, 152 P.L.J. at 288. Moreover, although Judge Horgos did not reach the issue, the catch-all provision of the UTPCPL proscribes "deceptive conduct" as well as conduct constituting common law fraud.  *See In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517, 548 (D. N.J. 2004); *Commonwealth v. Percudani*, 825 A.2d 743 (Pa. Cmwlth. 2003).  It is plainly deceptive for a title insurer to represent in a HUD-1 Settlement Statement that an amount corresponding to the Basic Rate is the appropriate charge even though the insurer knows (based on its underwriting) that a mandatory discount is applicable.

### F. Plaintiffs Have Alleged a Valid Conversion Claim

Plaintiffs' conversion claim is based on First American's conduct in inducing Plaintiffs to pay amounts that Defendant was not entitled to receive.  Complaint, at 24-26. In *Bristol Township v. Independence Blue Cross*, 2001 U.S. Dist. LEXIS 16594, **15-16 (E.D. Pa. Oct. 10, 2001), the court refused to dismiss a comparable conversion claim.

**G.      Plaintiffs Have Alleged a Valid Unjust Enrichment Claim**

Plaintiffs' unjust enrichment claim is an appropriate means of affording relief in the event that other theories of relief are deemed inapplicable. *See* Fed. R. Civ. P. 8(a); *Gonzalez v. Old Kent Mortgage Co.*, 2000 U.S. Dist. LEXIS 14530, **11-13, 17-18 (E.D. Pa. Sept. 21, 2000). Here, Plaintiffs conferred a benefit upon First American, in the form of an excessive title insurance premium, which it would be inequitable for First American to retain.

**H.      Plaintiffs' Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Should be Merged into Their Express Contract**

Plaintiffs maintain that title insurers are subject to an implied duty of good faith and fair dealing. *See Pressley v. The Travelers Property Casualty Corp.,* 817 A.2d 1131, 1141 (Pa. Super. 2003). Judge Horgos ruled in *Patterson* that such a claim necessarily relates to a breach of contract claim and should not be considered as an independent cause of action. *Patterson,* 152 P.L.J. at 288. In light of Judge Horgos's ruling, Plaintiffs consent to the dismissal of Count VII of the First Amended Complaint without prejudice to their express and implied contract claims.

**I.      Plaintiffs Have Alleged a Viable Action Under the Insurance Bad Faith Statute, 42 P.S. § 8371**

The *Patterson* Court held that the plaintiffs could not recover under Pennsylvania's insurance bad faith statute, 42 P.S. § 8371. *Patterson,* 152 P.L.J. at 288. However, since the Court's decision in *Patterson,* the Superior Court has opined that the bad faith statute applies to "fraudulent" sales practices. *Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918 (Pa. Super. 2004). The issue is currently before the Pennsylvania Supreme Court. *Toy v. Metropolitan Life Ins. Co.*, ___ Pa. ___, 882 A.2d 462 (Pa. 2005).

14

In light of *Brickman,* and pending further direction from the Pennsylvania Supreme Court, this Court should permit Plaintiffs to proceed with their bad faith claim.  *Cf. Nationwide Mut. Ins. Co. v. Brown,* 2005 U.S. Dist. LEXIS 25417 (W.D. Pa. Sept. 8, 2005) (Hardiman, J.).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny First American's Motion to Dismiss.

Respectfully submitted,

Dated:  March 3, 2006

/S/ Adrian N. Roe
Adrian N. Roe
  Pa. Bar No. 61391
Charles B. Watkins
  Pa. Bar No. 01082
Kenneth J. Witzel
  Pa. Bar No. 82814

*Of Counsel:*

Mark R. Koberna
Sonkin & Koberna Co., LPA
3401 Enterprise Parkway, Suite 400
Cleveland, Ohio 44122
(216) 514-8300

David D. Yeagley
Shannan L. Katz
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7194

Watkins Dulac & Roe P.C.
Two Gateway Center, 17 East
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
(412) 434-5544
aroe@watkinsdulac.com

Counsel for Plaintiffs Anthony and Alice Slapikas on behalf of themselves and all others similarly situated

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Plaintiffs' Brief In Opposition To Defendant's Motion To Dismiss was filed electronically on this the 3rd day of March, 2006, and was served on counsel of record by operation of the Court's electronic filing system.

Larry K. Elliott (PA35261)
E-mail: lelliott@cohenlaw.com
David F. Russey (PA84184)
E-mail: drussey@cohenlaw.com
COHEN & GRIGSBY, P.C.

11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222
Phone: (412) 297-4900/Fax: (412) 209-0672

Attorneys for First American Title Insurance Company

*Of Counsel:*

Charles A. Newman (MO24735)
Douglas W. King (MO34242)
Elizabeth T. Ferrick (MO52241)
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

/S/ Adrian N. Roe
Adrian N. Roe