IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY L. SLAPIKAS, ALICE B. SLAPIKAS and IVY FODOR, for themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-84 |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| MEZZO LAND SERVICES, LLC, | ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**Conti, District Judge.**

### I. Introduction

Pending before the court is a motion for decertification filed pursuant to Federal Rule of Civil Procedure 23(c)(1)(C). (Docket No. 289.) During the course of a hearing conducted on November 11, 2009, the court partially denied that motion. (Docket No. 304-1 at 74.) For the reasons that follow, the remainder of the motion will likewise be denied.

## II. Background[1]

Pennsylvania law requires every title insurance company to file "every manual of classifications, rules, plans, and schedules of fees and every modification of any of the foregoing relating to the rates which it proposes to use." 40 PA. STAT. § 910-37(a). A title insurance company "may satisfy its obligations to make such filings by becoming a member of, or a subscriber to, a licensed rating organization which makes such filings." 40 PA. STAT. § 910-37(b). Defendant First American Title Insurance Company ("First American") was a member of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP") from December 19, 1999, through August 1, 2005. (Docket No. 249 ¶ 1.) The TIRBOP is licensed by the Pennsylvania Department of Insurance pursuant to 40 PA. STAT. § 910-41(a). (*Id.* ¶ 2.) The TIRBOP prepared a Rate Manual setting forth the rates that its members would use. (*Id.* ¶ 3.) The Rate Manual was approved by the Pennsylvania Department of Insurance. (*Id.* ¶ 4.) Section 2.1 of the Rate Manual provided that "[a]ll charges for title insurance provided by the approved policies and endorsements" were to be made "as set forth" in the Rate Manual. (*Id.* ¶ 6.)

During the period of time at issue, the Rate Manual specified a "Basic Rate" and two discount rates. (*Id.* ¶¶ 7-8.) The discount rates were known as the "Reissue Rate" and the "Refinance Rate." (*Id.* ¶ 8.) These discount rates were established by sections 5.3 and 5.6 of the Rate Manual, which provided:

> 5.3  REISSUE RATE
> A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real

---
[1] The court assumes the parties' familiarity with its prior memorandum opinion of March 24, 2008. *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232 (W.D.Pa. 2008). The factual background of this case will be repeated in this opinion only insofar as it is directly relevant to the pending motion for decertification.

> property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy.
>
> \*\*\*
>
> 5.6   REFINANCE OR SUBSTITUTION LOANS
> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate.

(*Id.* ¶¶ 10, 12.)  The Reissue Rate was 90% of the Basic Rate.  (*Id.* ¶ 11.)  The phrase "when evidence of the earlier policy is produced," as used in section 5.3, was not defined or explained within the text of the Rate Manual.  (*Id.* ¶ 13.)

On May 10, 2005, the TIRBOP filed an amended Rate Manual with the Department of Insurance.  (*Id.* ¶ 14.)  A cover letter accompanying the filing stated that the proposed revisions to the Rate Manual were designed to clarify, *inter alia*, "the nature of the evidence of previous insurance that would entitle the purchaser of title insurance to a reduced rate."  (*Id.* ¶ 15.)  The Department of Insurance approved the revisions relevant to this case on August 1, 2005.  (*Id.* ¶ 18.)  The revisions were effective as of that date.  (*Id.*)  Section 2.8 of the Rate Manual, along with the amended sections 5.3 and 5.6, provided:

> 2.8   Sections 5.3, 5.4 and 5.6 of the Manual provide that reduced rates are applicable when evidence of previous insurance is provided within a specified time period.  As evidence of previous insurance, an Insurer will rely upon:
>   a.   the recording (within the period of time specified within the applicable Section of the Manual) of either:
>     i.   a deed to a bona fide purchaser for value, or
>     ii.  an unsatisfied mortgage to an institutional lender; or in the alternative,
>   b.   any of the following documents provided by or on behalf of the purchaser of the title insurance policy:
>     iii. a copy of the prior policy;

> iv. a copy of the marked-up commitment;
> v. a settlement sheet showing payment of a title insurance premium; or
> vi. other written evidence acceptable to the Insurer that title insurance coverage was purchased for the property.
>
> \*\*\*
> 5.3 REISSUE RATE
> A purchaser of a title insurance policy shall be entitled to the reissue rate if the real property to be insured is identical to or part of real property insured 10 years immediately prior to the date the insured transaction closes. Evidence of previous insurance in accordance with the provisions of Section 2.8 of this Manual must be considered in order to apply the reissue rate. Insurer shall comply with the written notice provisions of Section 2.9.
>
> \*\*\*
> 5.6 REFINANCE AND SUBSTITUTION LOANS
> When a refinance or substitution loan is made within 3 years from the date of closing or a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in fee simple ownership, the Charge shall be 80% of the reissue rate. Evidence of previous insurance in accordance with the provisions of Section 2.8 of this Manual must be considered in order to apply this Charge. Insurer shall comply with the written notice provisions of Section 2.9.

(*Id.* ¶¶ 22, 20-21.)

Plaintiffs Anthony and Alice Slapikas (the "Slapikases") are the record owners of a parcel of property (the "Slapikas Property"). (Docket No. 188 ¶ 6.) On September 19, 2001, they refinanced the Slapikas Property through the proceeds of a loan provided by the Chase Manhattan Bank (the "Chase Refinancing"). (*Id.* ¶ 7.) The Slapikases purchased a title insurance policy in connection with the Chase Refinancing. (*Id.* ¶ 8.) The mortgage executed by the Slapikases (the "Chase Mortgage") was recorded by the Allegheny County Recorder of Deeds on November 7, 2001. (*Id.* ¶ 10.)

On June 24, 2003, the Slapikases refinanced the Slapikas Property through the proceeds of a loan provided by the National City Mortgage Corporation in the amount of $168,000.00 (the "National City Refinancing"). (*Id.* ¶ 11.) Third-party defendant Mezzo Land Services, LLC ("Mezzo"), an authorized agent of First American, acted as the settlement agent in connection with the National City Refinancing. (*Id.* ¶ 12.) The Slapikases purchased a lender's policy of title insurance from First American. (*Id.* ¶ 13.) In connection with this transaction, First American searched for prior deeds and mortgages in the chain of title for the Slapikas Property. (*Id.* ¶ 24.) This search resulted in the discovery of the Chase Mortgage. (*Id.*) The title insurance policy was purchased by the Slapikases for a premium of $1,198.75, which was consistent with the Basic Rate under the Rate Manual. (*Id.* ¶¶ 13, 25.) In this instance, the difference between the Basic Rate and the Refinance Rate was $335.65. (*Id.* ¶ 29.)

Plaintiff Ivy Fodor ("Fodor") is the record owner of a parcel of property (the "Fodor Property"). (*Id.* ¶ 30.) She acquired title to the Fodor Property pursuant to a deed dated January 23, 1998 (the "Fodor Deed"). (*Id.* ¶ 31.) The Fodor Deed was recorded by the Allegheny County Recorder of Deeds on January 28, 1998. (*Id.*) On March 16, 1998, Fodor executed a mortgage (the "First Fodor Mortgage") in favor of National City Bank of Pennsylvania in the amount of $115,000.00. (*Id.* ¶ 32.) The First Fodor Mortgage was recorded by the Allegheny County Recorder of Deeds on March 17, 1998. (*Id.*)

Fodor purchased title insurance in connection with her purchase of the Fodor Property and her execution of the First Fodor Mortgage. (*Id.* ¶ 33.) On February 5, 2004, Fodor refinanced the Fodor Property (the "AWL Refinancing") through the proceeds of a loan from

America's Wholesale Lender ("AWL") in the amount of $110,000.00. (*Id.* ¶ 34.) Mezzo acted as the settlement agent in connection with the AWL Refinancing. (*Id.* ¶ 35.)

Fodor purchased a lender's policy of title insurance from First American. (*Id.* ¶ 36.) In connection with the AWL Refinancing, First American searched for prior deeds and mortgages in the chain of title for the Fodor Property. (*Id.* ¶ 40.) This search resulted in the discovery of both the Fodor Deed and the Fodor Mortgage. (*Id.*) The title insurance policy was purchased by Fodor for a premium of $908.75, which was consistent with the Basic Rate under the Rate Manual. (*Id.* ¶¶ 36, 41.) In this instance, the difference between the Basic Rate and the Reissue Rate was $90.87. (*Id.* ¶ 45.)

On December 19, 2005, the Slapikases commenced this class action in the Court of Common Pleas of Allegheny County, Pennsylvania. (Docket No. 1-1.) The case was removed to this court pursuant to 28 U.S.C. § 1441. (Docket No. 1.) The Slapikases allege that First American's actions in charging them a premium at the Basic Rate rather than at the Refinance Rate constituted a breach of an express contract, a breach of an implied contract, fraud, a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. §§ 201-1 *et seq.*, and unjust enrichment. (Docket No. 188 ¶¶ 91-131.)

On May 31, 2007, the Slapikases filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23. (Docket No. 123.) The court granted the motion for class certification in a memorandum opinion and order dated March 24, 2008. *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232 (W.D.Pa. 2008). The certification order defined the class as follows:

> All persons in the Commonwealth of Pennsylvania who, at any time after December 19, 1999 through July 31, 2005: (a) paid premiums for the purchase of residential title insurance at the Basic Rate or Reissue Rate from defendant First American; (b) who had either an unsatisfied mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within ten years of the payment of the premium; and (c) did not receive a discount specified in the Title Insurance Rate Manual.

*(*Docket No. 167, at 1.) The Slapikases amended their complaint on July 8, 2008, in order to add Fodor as a named plaintiff. (Docket No. 188.) Fodor was added as a party because she was allegedly entitled to be charged at the Reissue Rate.

The Slapikases and Fodor (the "plaintiffs") filed a motion for partial summary judgment on December 9, 2008, seeking a decision that they were entitled to be charged at the applicable discount rates, and that First American was liable for breaching an implied contract. (Docket No. 218.) In a memorandum opinion and order dated September 4, 2009, the court granted the motion for partial summary judgment which was filed by plaintiffs. *Slapikas v. First Am. Title Ins. Co.*, 650 F.Supp.2d 445 (W.D.Pa. 2009). On October 6, 2009, plaintiffs moved for an order regarding class notice. (Docket No. 287.)

First American filed a motion for decertification on October 21, 2009. (Docket No. 289.) The primary ground relied upon by First American for seeking decertification was that it had been prejudiced by the court's issuance of an opinion granting partial summary judgment in favor of plaintiffs before members of the certified class were notified about the certification. (*Id.* at 9-20.) First American argued that class members would be disinclined to opt out of the class in light of the previous finding of liability, and that this situation had presented a "one-way intervention" problem. (*Id.* at 19-20.) First American also asserted that the court's certification

7

order was entered on the basis of a "false premise" that all prior institutional mortgages and deeds to bona fide purchasers were accompanied by the issuance of title insurance. (*Id.* at 20.)

On November 11, 2009, the court held a hearing on the motion for decertification. In order to alleviate the prejudice suffered by First American, the court vacated the decision of September 4, 2009 which granted the partial summary judgment, and prohibited the parties from relying on that decision during the course of this litigation.[2] (*Id.* at 85.) Due to the vacation of that order, the court declined to decertify solely on that first basis. The court reserved judgment about whether the class should be decertified on the second ground – the decision granting certification was based on a "false premise." First American's motion for decertification is still pending to the extent that it is based on this "false premise" theory and that matter is the subject of this memorandum opinion.

**III. Discussion**

Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C). Subsections (a) and (b) of Rule 23 provide:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

---

[2] Any issue raised in the motion for partial summary judgment will be considered *de novo* with respect to any subsequent motion, since the court's prior decision dated September 4, 2009, has been vacated.

> (1) prosecuting separate actions by or against individual class members
> would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual
>> class members that would establish incompatible standards of
>> conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as
>> a practical matter, would be dispositive of the interests of the other
>> members not parties to the individual adjudications or would
>> substantially impair or impede their ability to protect their
>> interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that
> apply generally to the class, so that final injunctive relief or corresponding
> declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for
> fairly and efficiently adjudicating the controversy. The matters pertinent
> to these findings include:
>> (A) the class members' interests in individually controlling the
>> prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the
>> controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation
>> of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(a)-(b). In certifying the class in the instant action, the court held that the criteria applicable under subsections (a) and (b)(3) had been satisfied. *Slapikas*, 250 F.R.D. at 239-51.

Before First American's "false premise" argument is specifically addressed, a brief review of some recent caselaw is warranted. In certifying the class at issue in this case, the court observed that it was not necessary for plaintiffs to establish the merits of their case at the class certification stage, and that the substantive allegations contained in their complaint were to be regarded as true for class certification purposes. *Slapikas*, 250 F.R.D. at 238. This line of reasoning was derived from *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), in which the

Supreme Court declared that Rule 23 does not provide a district court with the "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen*, 417 U.S. at 177. In subsequent decisions, the Supreme Court recognized that certification determinations are often entangled with the merits of a cause of action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978). In *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), the Supreme Court explained that "actual" conformity with the requirements of Rule 23, rather than "presumed" conformity, is required before a class can be property certified. In *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 596 (3d Cir. 2009), the court of appeals found that this inquiry requires a trial court to conduct a "rigorous analysis" of the factual and legal circumstances of a case before certifying it as a class action. This court noted:

> Because class certification questions are often "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the court may need to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006)(quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir.2001)); see Robinson v. Texas Auto Dealers Ass'n, 387 F.3d 416, 421 (5th Cir. 2004)("[W]e take care to inquire into the substance and structure of the underlying claims without passing judgment on their merits. 'Although "the strength of a plaintiff's claim should not affect the certification decision," the district court must look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."'")(quoting McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 548 (5th Cir. 2003)(quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir.1996))).

*Slapikas*, 250 F.R.D. at 238-39.

Nine months after the issuance of the court's certification order in this case, the court of appeals decided *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008). In that decision, the court of appeals stated:

> In this appeal, we clarify three key aspects of class certification procedure. First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits–including disputes touching on elements of the cause of action. Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

*Hydrogen Peroxide*, 552 F.3d at 307. The court of appeals noted that while a "district court's findings for the purpose of class certification are conclusive on that topic," they do not bind the trier of fact with respect to the merits of the plaintiffs' claims. *Id.* at 318. In light of *Hydrogen Peroxide*, it is now clear that "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* at 316.

In order to be a member of the class that was certified in this case, an individual must (a) have paid a premium "for the purchase of residential title insurance at the Basic or Reissue Rate from defendant First American;" (b) "had either an unsatisfied mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within ten years of the payment of the premium;" and (c) not received a discount as provided in the Rate Manual. *Slapikas*, 250

F.R.D. at 251. The second element of this class definition is what is challenged by First American.[3] (Docket No. 289 at 20-32.)

In determining that "the questions of law or fact common to class members predominate[d] over any questions affecting only individual members," as required under Rule 23(b)(3), the court stated:

> Several preliminary legal and factual issues related to the Rate Manual predominate across the entire class, and across each one of the class claims. At the merits stage the court must first interpret the meaning of certain language contained in sections 5.3 and 5.6 of the Rate Manual; specifically, what constitutes "evidence of a prior policy" and what is meant by "when evidence of the prior policy is produced." The court must determine whether the language is ambiguous, and if so, what the legal consequences are. At this stage, the court refrains from making any determination about the merits of this claim. The court, however, recognizes for the purpose of deciding the class certification motion that determining whether contract language is ambiguous is a question of law for the court. *In re Montgomery Ward & Co., Inc.*, 428 F.3d 154, 161 (3d Cir. 2005). If an agreement is unambiguous, the court can declare its meaning as a matter of law. *Id.* (citations omitted). If an agreement is ambiguous, its meaning is a question of fact. *Id.* The next issue related to the interpretation of the Rate Manual is the effect of the 2005 Amendment to the Rate Manual which added § 2.8: was it a substantive change to the evidentiary requirements of the discounted rates as argued by the [sic] First American or was it a clarification of previously ambiguous language as argued by plaintiffs? The court would need to determine whether the presence of a prior mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within the applicable look-back periods constitutes "evidence of a prior policy" within the meaning of the Rate Manual. Finally, the court would need to determine whether the purchaser has the burden of producing evidence of a prior policy or if information produced as a result of the title examination or during the settlement process satisfies the evidentiary requirements of the Rate Manual.

---

[3] This element of the class definition was previously altered specifically to address an argument raised by First American concerning plaintiffs' proposed class definition. Plaintiffs proposed using the phrase "qualified for the Reissue rate or Refinance rate discounts," but First American argued that the proposed language would create a "fail safe" class that impermissibly determined membership on the basis of a finding of liability. *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250-51 (W.D.Pa. 2008). The court found the language proposed by plaintiffs to be too broad. *Id.* First American now argues that the language ultimately adopted by the court is still overbroad because it includes individuals who had not actually purchased earlier title insurance policies and, hence, were not entitled to discounts under the terms specified in the Rate Manual. (Docket No. 289 at 20-32.)

> These issues all lend themselves to class-wide treatment. The legal and factual interpretation of the Rate Manual will apply to each member of the putative class, and adjudication of these issues may be possible at the summary judgment stage. Because these issues span the entire class, and all the class claims, resolution of these issues related to the Rate Manual could result in summary judgment for First American, negating the need for further costly litigation or, if resolved in favor of plaintiffs, could help facilitate class-wide settlement of all the claims.

*Slapikas*, 250 F.R.D. at 244.

The crux of First American's argument at this point is that the court's predominance analysis proceeded on the "false premise" that everyone with *evidence* of a prior title insurance policy actually *possessed* such a prior policy. (Docket No. 289 at 20-32.) In support of its position, First American details evidence suggesting that neither "an unsatisfied mortgage from an institutional lender" nor "a deed to a bona fide purchaser in the chain of title" confirms the *actual existence* of an underlying title insurance policy. (*Id.*) Instead of focusing on the nature of the "evidence" required to establish the existence of an earlier title insurance policy, First American now centers its argument on the underlying issue of the *existence* of an earlier title insurance policy *vel non*. (*Id.*) According to First American, many individuals with "evidence" of prior policies did not actually *have* preexisting title insurance and, hence, were not entitled to be charged at the Reissue Rate or Refinance Rate in any event. (*Id.*)

Plaintiffs differently interpret the language of the Rate Manual. They maintain that "evidence of previous insurance" in the form of "an unsatisfied mortgage to an institutional lender" or "a deed to a bona fide purchaser for value" entitled an individual to a discount rate regardless whether he or she had actually purchased title insurance within the applicable look-back period. (Docket No. 295 at 5-9.) The court does not understand plaintiffs specifically to

dispute the evidence presented by First American indicating that some individuals included within the defined class had not actually purchased title insurance policies prior to the challenged purchases from First American.

Since plaintiffs bear the burden of *proving* the satisfaction of each requirement under Rule 23 by a preponderance of the evidence, a determination that class certification in this case was dependent upon an unfounded factual premise arguably may require the class at issue to be decertified. *Hydrogen Peroxide*, 552 F.3d at 307. Nonetheless, the court's earlier predominance analysis is not impugned by First American's evidence indicating that some class members had not actually purchased earlier title insurance policies within the applicable look-back period. The new issue raised by First American, like the issues previously identified by the court, can be adjudicated on a class-wide basis.

If the court determines that neither "an unsatisfied mortgage from an institutional lender" nor "a deed to a bona fide purchaser for value" constituted "evidence of [an] earlier policy" during the relevant period of time, First American could be entitled to summary judgment with respect to the claims asserted by *all* members of the class, including *both* those who had actually purchased prior policies *and* those who had not. *Slapikas*, 250 F.R.D. at 244. If the court on a motion for summary judgment determines that there is no genuine issue of material fact and individuals with "evidence" of prior title insurance policies were entitled to discounts regardless whether they had *actually purchased* such policies, all members of the defined class (including *both* those who had actually purchased prior policies *and* those who had not) may be entitled to summary judgment with respect to the issue of liability, thereby facilitating the class-wide settlement of all pending claims. *Id.* In either case, "the central issue in this matter is [First

American's] practices in the collection of title insurance premiums, and whether those practices precluded the proposed class members from receiving the discounted rates to which they were entitled." *Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242, 250 (E.D.Pa. 2008). "Undoubtedly, this common issue of law and fact predominates over any individual issues in this case."[4] *Id.* Here, due to the minimal value of each potential plaintiff's claim, individual class members would be unlikely to pursue individual claims against First American (because of the small amounts of money involved), which counsels in favor of a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the [present] controversy."[5] FED. R. CIV. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616-17 (1997).

The court acknowledges that if the "existence of an earlier policy" issue is resolved in favor of First American and the "evidence of an earlier policy" issue is resolved in favor of plaintiffs, the class may need to be decertified or the class definition altered. *See Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203, 205-08 (E.D.Pa. 2010). Whether there may

---

[4] First American did not specifically isolate the portion of the court's earlier analysis that it believes to have been tainted by a "false" factual premise. (Docket No. 289 at 20-32.) The court understands First American's argument to relate primarily to the predominance inquiry required under Rule 23(b)(3). First American's "false premise" theory clearly bears no relationship to the numerosity, commonality and adequacy requirements of Rule 23(a). *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 239-43 (W.D.Pa. 2008). Plaintiffs' claims are "typical" of those of the other class members because they are based on similar legal theories and factual circumstances, they are not subject to unique defenses that would be inapplicable to the claims of other class members, and they are the product of "interests and incentives" that are sufficiently aligned with those of other class members to warrant class treatment in this case. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

[5] In the opinion dated March 24, 2008, the court explained why each of the different claims asserted by plaintiffs were amenable to resolution within the context of a class action. *Slapikas*, 250 F.R.D. at 244-48 (W.D.Pa. 2008). In its motion for decertification, First American does not differentiate among the various theories of liability advanced by plaintiffs. (Docket No. 289 at 20-32.) Instead, First American attacks the certification determination in a more general sense. Because First American does not specifically discuss whether any of the *particular* claims advanced by plaintiffs are capable of class treatment, there is no need for the court to repeat its prior analysis concerning the application of Rule 23's requirements to specific claims. *Slapikas*, 250 F.R.D. at 244-48.

be a need to decertify due to individualized inquires at a later time will not undermine the court's finding at this stage that "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3); *Markocki*, 254 F.R.D. at 250-51. At this point, it suffices to say that the matters raised by First American do not warrant the drastic remedy of immediate decertification.

## IV.     Conclusion

For the foregoing reasons, the court stands by its previous determination that this case can proceed as a class action consistent with the requirements of Rule 23. Accordingly, First American's motion for decertification will be denied to the extent that it has not already been orally denied at the hearing conducted on November 11, 2009.

## ORDER

**AND NOW**, this 13th day of August, 2010, upon consideration of the motion for decertification filed by the defendant, First American Title Insurance Company. (Docket No. 289), **IT IS HEREBY ORDERED** that the motion for decertification is **DENIED**.

**IT IS FURTHER ORDERED** that in light of the vacation of the order granting partial summary judgment, the Motion for Order Adopting Plaintiffs' Proposed Notice Plan and Form of Notice (Docket No. 287) filed by plaintiffs Anthony L. Slapikas and Alice B. Slapikas and Ivy Fodor is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that the parties shall promptly meet and confer with respect to a plan of class notice that complies with Rule 23(c)(2)(B) and directs to class

members, the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, and which concisely and clearly states in plain, easily understood language: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). The parties shall submit a plan of class notice that complies with these requirements within twenty (20) days from the date of entry of this Order.

                                            By the court,

                                            `/s/ JOY FLOWERS CONTI`
                                            Joy Flowers Conti
                                            United States District Judge