**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY L. SLAPIKAS, ALICE B.** | ) |
| **SLAPIKAS, and IVY FODOR, for** | ) |
| **themselves and all others similarly** | ) |
| **situated,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Civil Action No. 06-0084** |
| | ) |
| **FIRST AMERICAN TITLE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| **MEZZO LAND SERVICES, LLC**, | ) |
| | ) |
| Third-Party Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

**CONTI, Chief District Judge**

       Anthony L. Slapikas and Alice B. Slapikas (the "Slapikases") and Ivy J. Fodor ("Fodor") (collectively "plaintiffs") brought this suit on behalf of themselves and a class of similarly situated consumers alleging that agents of First American Title Insurance Company ("First American") overcharged them for title insurance obtained in connection with refinancing their mortgages. (ECF No. 1.)  Pending before the court is First American's motion for decertification (ECF No. 366), First American's motion for summary judgment (ECF No. 367), and plaintiffs' renewed motion for partial summary judgment (ECF No. 370).  The court will GRANT both of First American's motions because plaintiffs are unable to establish an essential element of their claim, i.e. justifiable reliance, and no other representative plaintiff could do so on this record.  Plaintiffs' motion is thereby rendered moot.

I. Factual Background

A. Title Insurance Rates

First American is a national title insurance underwriter that issues title insurance policies in Pennsylvania through a network of agents. (ECF No. 433 Part A: ¶ 1.) First American and third-party defendant Mezzo Land Services, LLC ("Mezzo") entered into an agency agreement on November 16, 2001 under which Mezzo employees completed various tasks prior to and during real estate closings on behalf of First American. (Id. ¶¶ 4, 7.) Mezzo's employees prepared the HUD-1 Settlement Statement ("HUD-1"), which listed the title insurance premium to be charged. (Id. ¶ 4) First American was issued monthly remittance reports reflecting the premium fees due to the insurer for each transaction. (ECF No. 433 Part C: ¶ 3.) There is some dispute regarding the details of the agency relationship between Mezzo and First American. (See, e.g., ECF No. 433 Part A: ¶¶ 1, 3, 6, 7.) These disputes are construed in the plaintiffs' favor for purposes of deciding the instant action and Mezzo will be treated as an agent acting on behalf of First American. (Id.)

Pennsylvania law requires every title insurance company to file a manual specifying the rules, plans, schedules of fees, and modifications for the rates it plans to charge. 40 Pa. Cons. Stat. § 910-37(a). Approved rates are recorded in the Manual of the Title Insurance Rating Bureau of Pennsylvania ("Rate Manual") which provides that all charges for title insurance policies must correspond to the rates filed with and approved by the Pennsylvania Department of Insurance. 40 Pa. Cons. Stat. § 910-37(h). (ECF No. 188-3.) The Rate Manual used by First American contained three separate rate tiers that a customer could be charged: (1) the basic rate, (2) the reissue rate, which is 90% of the basic rate, and (3) the refinance rate, which is 80% of the reissue rate. (ECF No. 311 at 2 – 3.) Under section 5.3 and 5.6 of the Rate

Manual a customer may qualify for the lower reissue or refinance rate if she purchased title insurance for an identical property within the applicable "look-back" period. (ECF No. 215 ¶¶ 22-23, 38-39.)  Plaintiffs contend that they qualified for discounted title insurance rates but were charged the basic rate instead. (ECF No. 188 ¶¶ 27, 41.)

The charge for title insurance is memorialized on line 1108 of the HUD-1 for each transaction. (ECF No. 433 Part A: ¶ 10.)  The settlement agent is required to itemize clearly "all charges imposed upon a borrower" on the HUD-1. 12 U.S.C. § 2603(a).  Under 24 C.F.R. § 3500.8(b)(1),  "[t]he settlement agent shall state the actual charges paid by the borrower and seller on the HUD-1…and separately itemize each third party charge paid… ."  Following each transaction Mezzo placed the proceeds from the closing into a fiduciary trust account. (ECF No. 433 Part B: ¶ 11.)  Mezzo used this account to pay First American its premium due from each transaction. (Id.)

B.  Plaintiffs' Transactions

1. Slapikases' Transaction

On June 24, 2003, the Slapikases refinanced a parcel of property (the "Slapikases Property") through the proceeds of a loan provided by the National City Mortgage Corporation ("National City") in the amount of $168,000.00. (ECF No. 433 Part A: ¶ 12.)  Mrs. Slapikas testified that the "low mortgage rate" was "what made us want to" refinance. (Id. ¶ 27.)  Mr. Slapikas testified that he focused on "two numbers" stating, "[o]ne, I want the rate. Two, what is the total rolled up closing costs. Giving very little thought to the individual pieces of it."  (Id. ¶ 25.)  He further explained that, "there wasn't much on my end in terms of attention paid to the specifics." (Id.)  Mr. Slapikas testified, "[w]e expected the close [sic] was going to be done with the correct numbers, with the professionalism that you would expect from a transaction…." (Id. ¶

26.)

Mezzo prepared and executed the documentation for the Slapikases' refinancing. (Id. ¶ 13)  The Slapikases played no role in selecting Mezzo. (Id. ¶ 14.)  Mrs. Slapikas testified that she recalled that a woman, whom she later identified as "Lisa," had signed the HUD-1 for Mezzo as the "settlement agent." (Id. ¶ 15.)  The Slapikases did not have any other contact with Lisa, or anyone else representing Mezzo, before or after the closing. (Id. ¶ 24.)  The record does not reflect that the Slapikases knew Lisa's last name.  The Slapikases do not recall any discussion with anyone concerning title insurance before, during or after the closing. (Id. ¶¶ 19, 20, 22.)

The title insurance policy was purchased by the Slapikases for a premium of $1,198.75, which was consistent with the basic rate under the Rate Manual. (Id. ¶¶ 16, 18.)  The difference between the basic rate and the refinance rate (i.e., the rate the Slapikases assert they should have been charged) was $335.65. (ECF No. 166 at 8.)  The record is devoid of any evidence that the Slapikases read line 1108 of the HUD-1.  There is no evidence in the record to indicate that the Slapikases would have refused to refinance their mortgage if they knew about the purported title insurance overcharge.

2. Fodor Transaction

Fodor is the record owner of a parcel of property (the "Fodor Property"). (ECF No. 433 ¶ 28.)  On February 5, 2004, Fodor refinanced the Fodor Property through the proceeds of a loan from America's Wholesale Lender ("AWL") in the amount of $110,000.00. (Id. ¶ 29.)  Fodor testified that the interest rate was the "most important consideration" in her decision to refinance. (Id. ¶ 40.)  Third-party defendant Mezzo prepared and executed the documentation for the Fodor refinancing. (Id. ¶ 29.)  Fodor was not consulted regarding the decision to choose

Mezzo. (Id. ¶ 33.) Fodor stated she "was not sure" if David Gould, her mortgage broker and then-boyfriend, or someone else in his company choose Mezzo. (Id. ¶¶ 30, 32.) Fodor does not recall having any conversations with Mr. Gould about title insurance. (Id. ¶ 36.)

Fodor did not read the HUD-1 or the other closing documents before signing them. (Id. ¶ 45.) When she described her closing she stated, "they were just handing me papers and showing me where to sign, and I was just signing away…." (ECF No. 433 Part B: ¶¶ 8, 9.) Fodor did not discuss title insurance with anyone during the meeting and did not question the title insurance cost. (ECF No. 433. Part A: ¶ 46.)

The title insurance policy was purchased by Fodor for a premium of $908.75, which is consistent with the basic rate under the Rate Manual. (Id. ¶¶ 34.) The difference between the basic rate and the reissue rate (i.e., the rate Fodor asserts she should have been charged) was $90.87. (ECF No. 311 at 6.) There is no evidence in the record to indicate that Fodor would have refused to refinance her mortgage if she knew about the purported title insurance overcharge.

C.  Procedural Background

On December 19, 2005, the Slapikases filed a class action complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. (ECF No. 1-1) On January 19, 2006 this case was removed to federal court pursuant to 28 U.S.C. § 1441. (ECF No. 1.) First American filed a motion to dismiss which the court granted in part and denied in part at a hearing held on May 8, 2006. (ECF No. 29.) On June 6, 2006, the Slapikases filed an amended complaint. (ECF No. 32.)

In the amended complaint the Slapikases asserted four common law claims sounding in contract, unjust enrichment, and fraud and a claim asserting a violation of

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (ECF No. 32 at 12 – 19.) The Slapikases specifically alleged that First American violated the UTPCPL by overcharging them for title insurance in connection with the refinancing of their mortgage. (Id. at 17 – 18.) The catchall provision of the UTPCPL, under which the Slapikases pled their UTPCPL claim, provides: "a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss." 73 Pa. Cons. Stat. § 201-9.2.

On June 27, 2006, First American moved to dismiss the common law fraud and UTPCPL claims and filed a third-party complaint against Mezzo. (ECF Nos. 34 and 37.) First American alleged that Mezzo and its agents dealt directly with plaintiffs for the purpose of selling title insurance policies, and that Mezzo is accountable for the premiums charged. (ECF No. 37 ¶¶ 13-19.) Mezzo filed a motion to dismiss the third-party complaint, as well as a motion to dismiss the first amended complaint, arguing that the Slapikases failed to exhaust administrative remedies provided to them under 40 Pa. Cons. Stat. § 910-1 of the Pennsylvania Title Insurance Company Act. (ECF Nos. 51 and 55.) First American joined Mezzo and filed a motion for judgment on the pleadings asserting the same ground. (ECF No. 67.)

At a hearing held on December 21, 2006, the court denied First American's motion to dismiss and motion for judgment on the pleadings, as well as Mezzo's motions to dismiss the first amended complaint and the third-party complaint. (12/31/2006 minute entry; ECF No. 94.) On March 2, 2007, upon joint motion by First American and Mezzo, this court certified the order of December 21, 2006 for interlocutory appeal concerning the exhaustion of administrative remedies issue and stayed these proceedings pursuant to 28 U.S.C. § 1292(b). (ECF No. 115.) On May 30, 2007, the Court of Appeals for the Third Circuit denied the petition

for permission to appeal. (ECF No. 122.)

The Slapikases promptly filed a renewed motion for class certification. (ECF No. 123.) The court granted the motion for class certification in a memorandum opinion and order dated March 24, 2008. (ECF No. 167, published at Slapikas v. First Am. Title Ins. Co., 250 F.R.D. 232 (W.D. Pa. 2008)). The order defined the class as:

> All persons in the Commonwealth of Pennsylvania who, at any time after December 19, 1999 through July 31, 2005: (a) paid premiums for the purchase of residential title insurance at the Basic or Reissue Rate from defendant First American; (b) who had either an unsatisfied mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within ten years of the payment of the premium; and (c) did not receive a discount specified in the Title Insurance Rate Manual.

(ECF No. 167 at 1.)

At the time of this decision, plaintiffs' amended complaint consisted of four Pennsylvania common law claims and one UTPCPL claim. (ECF No. 32 at 12 – 19.) The Slapikases, who allegedly were entitled to be charged at the refinance rate, filed a second amended complaint on July 8, 2008, in order to add Fodor as a named plaintiff because she was allegedly entitled to be charged at the reissue rate. (ECF No. 311 at 6.) First American moved for decertification of the class in October 2010. (ECF No. 289.) The court found that immediate decertification was not necessary, even though there was a dispute in the record regarding what evidence was required to prove entitlement to a discounted rate. (ECF No. 311 at 15 – 16, published at Slapikas v. First Am. Title Ins. Co., No. 06-84, 2010 WL 3222129 (W.D. Pa. Aug. 13, 2010)).

On October 15, 2012, the court dismissed all common law claims after the Pennsylvania Supreme Court held that common law claims alleging title insurance overcharges

must be pursued administratively before the Pennsylvania Department of Insurance. (ECF No. 324); White v. Conestoga Title Ins. Co., 53 A.3d 720, 735 (Pa. 2012). Thereafter, the UTPCPL count became the only remaining claim in this case.

First American filed a second motion to decertify in July 2013 based on substantive changes in the law regarding class actions and proof of justifiable reliance when asserting a claim under UTPCPL's catchall provision. (ECF No. 366.) That motion is ripe for disposition.

D. Changes in Applicable Law

Five months after this court certified the class the Court of Appeals for the Third Circuit held in Hunt v. United States Tobacco Company, 538 F.3d 217 (3d Cir. 2008), that Pennsylvania's Supreme Court has "categorically and repeatedly stated that, due to causation requirements in the UTPCPL standing provision, 73 Pa. Stat. Ann. § 201-9.2(a), a private plaintiff pursuing a claim under the statute must prove justifiable reliance." Hunt, 538 F.3d at 221. The court found in Hunt that the plaintiff did not adequately allege that he justifiably relied on the defendant's deception because he did not allege that the defendant's deception induced him to purchase the defendant's product. Id. at 227 (noting that "[a] presumption of reliance is also inconsistent with Pennsylvania Superior Court precedent").

Prior to Hunt, some courts did not require proof of justifiable reliance under the UTPCPL's catchall provision. Chiles v. Ameriquest Mortgage Co., 551 F. Supp. 2d 393 (E.D. Pa. 2008); Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa. 2002). This court noted the split in authority with respect to this issue in its class certification opinion, but applied "the more strict standard" and presumed that plaintiffs would have to prove justifiable reliance. (ECF No. 166 at 32 – 33 & n.9.) At that time, the court found that the plaintiffs' allegation that they

had a fiduciary relationship with First American satisfied this requirement. (Id. at 31.)  This court also noted that other courts found that reliance can be proven on a class-wide basis through the implausibility that a consumer would voluntarily pay a higher price. (Id. at 31 – 32.)  After Hunt, courts have been reluctant to permit class treatment of UTPCPL claims because proof of justifiable reliance makes individual issues predominate over issues common to the class.

Additionally, since the instant action began, the United States Supreme Court redefined the framework for class certification.  In Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011), the Court transformed Rule 23's commonality requirement, which can no longer be satisfied by mere common questions, but demands proof that a classwide proceeding will generate "common answers apt to drive the resolution of the litigation." Wal-Mart, 131 S. Ct. at 2551.  The Court recognized a defendant's "substantive right" to present countervailing evidence of liability as to each class member stating "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.  The Court also recently emphasized the requirement that plaintiffs provide a sound methodology for determining damages across the class without individual fact-finding. Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013).  Proof of justifiable reliance makes it difficult to satisfy the Court's redefined standard.  Glover v. Udren, No. 08-990, 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2013) (noting that "many courts have found that a violation of the UTPCPL's catchall provision is not appropriate for class certification under Rule 23(b)(3) because the element of justifiable reliance is dependent upon predominantly individual issues" (and collecting decisions));  Cohen v. Chicago Title Ins. Co., No. 06-873, 2013 WL 842706, at *5 (E.D. Pa. Mar. 7, 2013) (concluding that "[t]he [c]ourt finds Cohen cannot maintain a class

action for violation of the UTPCPL's catchall provision because the need to show justifiable reliance on Chicago's deceptive conduct renders such claims unsuitable for class treatment"); Lewis v. Ford Motor Co., 263 F.R.D. 252, 264 (W.D. Pa. 2009) (finding that predominance was not met where "each class member would have to show not only justifiable reliance, but also loss as a result of that reliance, aspects [that are] subject to individual, rather than common questions of law or fact").

II. First American's Motion for Summary Judgment

A. Standard of Review

A motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). A court is required to construe disputed facts in favor of the nonmoving party. See, e.g., Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009). Summary judgment must be denied if a reasonable trier of fact could find in favor of the nonmoving party on each of the elements of the claim. Belmont v. MB Investment Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013).

B. Discussion

First American moves for summary judgment on the ground that plaintiffs failed to adduce sufficient evidence of justifiable reliance to establish a UTPCPL claim. First American contends Hunt laid to rest the claim that circumstantial evidence of reliance can be used to defeat a summary judgment motion because Hunt requires that justifiable reliance be proven as to each class member under the UTPCPL's catchall provision. (ECF No. 367-1 at 10); Hunt, 538 F.3d at 224. First American argues that plaintiffs are not able to assert the fiduciary

relationship exception to the general rule laid out by <u>Hunt</u> because the facts do not support a finding that the parties entered into a fiduciary relationship. (ECF No. 367-1 at 14.)  Plaintiffs contend that they demonstrated justifiable reliance in one of two ways: (1) presumption of justifiable reliance due to a fiduciary relationship; or (2) First American's deceptive conduct caused an ascertainable loss for each plaintiff. (ECF No. 389 at 8, 17.)  As set forth below, the court finds that plaintiffs failed to adduce sufficient evidence for a reasonable jury to find that they justifiably relied on First American, or its agents, as required to sustain a UTPCPL claim.

      1. <u>Legal Framework</u>

      The UTPCPL generally prohibits unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce. 73 Pa. Cons. Stat. § 201-3.  Section 201-2(4) referred to as the catchall provision, allows a "private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss." 73 Pa. Cons. Stat. § 201-9.2.  To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss.  <u>Seldon v. Home Loan Servs.</u>, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (citing <u>Hunt</u>, 538 F.3d at 223).  In this case the dispositive issue is whether plaintiffs justifiably relied on line 1108 of the HUD-1, which stated the cost of title insurance.

      a) <u>Justifiable Reliance</u>

      Pennsylvania law requires that "plaintiff[s] alleging violations of the UTPCPL must prove justifiable reliance." <u>Toy v. Metro. Life Ins. Co.</u>, 928 A.2d 186, 202 (Pa. 2007).  "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied

on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) (citing Weinberg v. Sun Co. Inc., 777 A.2d 442, 446 (Pa. 2001)).  Evidence of reliance must go beyond simply a causal connection between the misrepresentation and the harm; a plaintiff must "show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." Selmmer v. McGlaughlin Spray Foam Insulation, Inc., No. 12-6542, 2013 WL 3380590, at *6 (E.D. Pa. July 8, 2013) (citing Hunt, 538 F.3d at 222).  The only exception to proving justifiable reliance is when the parties have entered into a fiduciary relationship.  Hunt, 538 F.3d at 227 (citing Debbs v. Chrysler Corp., 810 A.2d 137, 157 (Pa. Super. Ct. 2002)).  If this exception applies, reliance may be presumed.

b) Fiduciary Exception

Plaintiffs contend they presented enough evidence from which a reasonable jury could find they fall within the fiduciary relationship exception to Pennsylvania's general rule.  Plaintiffs assert a number of theories to support their contention that they had a fiduciary relationship with First American: (1) the direct dealings between plaintiffs and First American detail the creation of a fiduciary relationship; (2) title insurance policies are issued as part of a standardized process, over which First American exerts an "overmastering influence;" and (3) statutory requirements allow reliance to be inferred since First American placed plaintiffs' funds into fiduciary trust accounts after each transaction. (ECF No. 389 at 2 – 3.)  Plaintiffs contend the fiduciary relationship created a duty requiring First American to act for the benefit of its customers and to charge the discounted rate.  (Id.)

First American argues a reasonable jury could not find that a fiduciary relationship was created based on the record and therefore it is entitle to summary judgment.

First American contends that the record is bare of any facts that would allow a reasonable jury to conclude that there was a fiduciary relationship. (ECF No. 367-1 at 14.) First American asserts that unless there was a fiduciary relationship, it had no independent duty to disclose and therefore cannot be liable under the UTPCPL for nondisclosure of the discounted rates. (Id. at 19.) First American maintains it fully complied with the controlling law, 24 C.F.R. § 3500.8(b)(1), requiring it to recite only the "actual charges paid" on the HUD-1. (Id. at 17.)

The court finds the plaintiffs did not adduce evidence of any special or unusual facts upon which a reasonable jury could find that a fiduciary relationship was created. As a result, no reasonable jury could infer justifiable reliance based on the fiduciary relationship exception.

A fiduciary relationship exists where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." Johnson v. Robinson (In re Johnson), 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003). Generally, in Pennsylvania insurers do not owe a fiduciary duty to their insureds. Allen-Wright v. Allstate Ins. Co., No. 07-4087, 2008 WL 5336701, at *6 (E.D. Pa. Dec. 17, 2008); Smith v. Berg., No. 99-2133, 2000 WL 365949, at *4 (E.D. Pa. Apr. 10, 2000). Under Pennsylvania law "the relationship between the insurance agent and the purchaser reflects "the quintessential arm's-length relationship, that of seller and buyer, ... rather than a confidential relationship." Glauser v. Deutsche Bank Nat'l Trust Co., 365 B.R. 531, 537 (Bankr. E.D. Pa. 2007) (citing Weisblatt v. Minnesota Mut. Life Ins. Co., 4 F. Supp. 2d 371, 381 (E.D. Pa. 1998)). In Contawe v. Crescent Heights of America Inc., No. 04-2304, 2004 WL 2244538 (E.D. Pa. Oct.1, 2004), the court held that "[p]laintiffs' claim fails because Pennsylvania does not, absent

special or unusual facts, recognize a fiduciary relationship between a title insurance agent and a purchaser of real estate." Id. at *5.

Plaintiffs argue that a fiduciary relationship was formed because First American was under a duty to charge the proper and lawful rate, as specified in the Rate Manual, for each standardized title insurance transaction over which First American exerted an "overmastering influence." (ECF No. 389 at 2-3.) The record does not support plaintiffs' contention. The general rule in Pennsylvania is that insurers do not owe consumers a fiduciary duty. To depart from the general rule the record must detail special or unusual facts indicating an "overmastering influence." Plaintiffs adduced no evidence indicating that special circumstances existed in this case to justify a departure. The record shows the plaintiffs did not choose Mezzo to act as their title agent for their refinancing. (ECF No. 433 ¶¶ 14, 33.) The plaintiffs did not discuss title insurance with anyone and did not question the title insurance cost during the meeting at which the HUD-1 was signed. (Id. ¶¶ 19, 46.) These facts are not indicative of a transaction where an "overmastering influence" is exerted by one party over the transaction. No special confidences were disclosed to First American or Mezzo. Each party entered the arms-length transaction on equal terms. Under these facts a reasonable jury could find no basis on which to depart from Pennsylvania's general rule.

Without factual evidence detailing the fiduciary relationship, nondisclosure of the discounted rate is not actionable. The duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence…." Chiarella v. United States, 445 U.S. 222, 227-28, 235 (1980). Without establishing a fiduciary, or similar, relationship there is no duty to disclose and plaintiffs cannot

independently rely on First American's nondisclosure to establish a UTPCPL claim that requires justifiable reliance.

Plaintiffs contend that reliance may be presumed because agents of First American were required by statute to deposit funds into fiduciary trust accounts. (ECF No. 433 Part B: ¶ 11.)  Plaintiffs, however, do not allege that any misdeeds occurred while First American held funds in these accounts and failed to provide any evidence or controlling authority in support of this theory.  The fact that funds were placed into fiduciary trust accounts after the transaction occurred is not determinative.

Even accepting all plaintiffs' evidence as true and making all factual inferences in their favor, plaintiffs failed to offer any evidence from which a reasonable jury could conclude that a fiduciary relationship existed between the parties.  Plaintiffs cannot establish justifiable reliance based on the presumption applicable to a fiduciary relationship.

   c)   Deceptive Conduct / Ascertainable Loss

Plaintiffs contend that they produced sufficient evidence of justifiable reliance in support of their UTPCPL claim because they suffered an ascertainable loss as a result of First American's deceptive conduct, i.e. the overcharges.  In support of this claim, plaintiffs argue that: (1) Cohen wrongly states the law established in Hunt; (2) First American acted deceptively by charging plaintiffs, who relied on it, rates in excess of available discounted rates allowing justifiable reliance to be presumed; and (3) circumstantial evidence allows a reasonable fact finder to infer consumers would not voluntary elect to pay a higher charge had they known about the discounts. (ECF No. 389 at 2-3.)

First American argues that the court of appeals' decision in Hunt precludes circumstantial evidence from establishing a UTPCPL claim.  According to First American, Hunt

states that a private plaintiff pursuing a claim under the UTPCPL must prove justifiable reliance as to each class member. (ECF No. 367-1 at 9 – 10); <u>Hunt</u>, 538 F.3d at 224. First American contends that <u>Cohen</u> is factually indistinguishable from the instant action, and properly applied the principals of <u>Hunt</u> to a title insurance transaction. (ECF No. 412 at 2.) First American asserts plaintiffs failed to establish that First American engaged in any deceptive conduct because the HUD-1 makes no affirmative representations regarding the legality or fairness of the charges, but simply itemizes the charges collected. (ECF No. 367-1 at 17.)

Plaintiffs failed to adduce sufficient evidence for a reasonable jury to find they justifiably relied on First American, or its agents. Plaintiffs failed to produce evidence to prove that their conduct would have changed with knowledge of the overcharge.

Under the UTPCPL, a plaintiff must establish that a defendant's conduct caused her to take action. <u>Hunt</u>, 538 F.3d at 222. This principle was discussed by the Court of Appeals for the Third Circuit in <u>Belmont v. MB Investment Partners, Inc.</u>, 708 F.3d 470 (3d Cir. 2013). In <u>Belmont</u>, the plaintiffs failed to state a UTPCPL claim because they failed to allege any conduct, "deceptive or otherwise," by the defendant that caused them to invest. <u>Id.</u> at 499. In the context of a mortgage transaction, "[t]o show justifiable reliance a plaintiff must provide evidence demonstrating how his knowledge of a mortgage loan's actual terms would have altered his decision to execute the mortgage." <u>Laidley v. Johnson</u>, No. 09–395, 2011 WL 2784807, at *3 (E.D. Pa. July 11, 2011).

The United States District Court for the Eastern District of Pennsylvania in <u>Cohen</u> recently considered the effect of deceptive conduct and ascertainable loss under the UTPCPL's catchall provision in a case virtually on all fours with the instant action. In <u>Cohen</u>, the court held the plaintiff "failed to present evidence [that] she read line 1108 of the HUD-1 or that she relied

on it." <u>Cohen</u>, 2013 WL 842706, at *6. The plaintiff in <u>Cohen</u> was not entitled to summary judgment because she failed to present the necessary individualized evidence to prove that a) she was entitled to a discount rate, b) the HUD-1 stated a different rate than the one she was entitled to, c) she read the HUD-1, and d) she justifiably relied on the charge in line 1108 of the HUD-1. <u>Id.</u> at *6 – 7. In <u>Cohen</u> the plaintiff failed to present "the court with any evidence that she relied on the HUD-1 other than asserting general and conclusory arguments that the purchase of the title insurance demonstrates reliance or that a consumer would expect to receive an entitled discount rate and be charged accordingly." <u>Id.</u> The district court found that the plaintiff failed "to provide the court with sufficient evidence that she justifiable relied on the contents of the HUD-1 such that she would have acted differently had she known of the overcharge." <u>Id.</u> Plaintiffs contend that <u>Cohen</u> misstates the law. The court disagrees. The court in <u>Cohen</u> required a plaintiff asserting a claim under the UTPCPL to provide evidence demonstrating how her knowledge about the discount rate would have altered her decision to refinance. <u>Id.</u> at *6. The court's holding in <u>Cohen</u> is in line with <u>Hunt</u>'s requirements to establish justifiable reliance. <u>Hunt</u>, 538 F.3d at 222.

    In the instant action there is no evidence that plaintiffs reviewed line 1108 of the HUD-1 or relied on the amount being charged in deciding to refinance their mortgages. Fodor did not read the HUD-1 or the other closing documents before signing them. (ECF No. 433. Part A: ¶ 45.) There is no evidence in the record that supports that the Slapikases read the HUD-1 and the Slapikases do not recall any discussion concerning title insurance before, during or after the closing. (<u>Id.</u> ¶¶ 19, 20.) Further, the record is undisputed that the incentive for plaintiffs' refinancing was the historically low mortgage rates offered at the time. (<u>Id.</u> ¶¶ 27, 40) Although the named plaintiffs were concerned with the total closing cost, there is no evidence in the record

that they would have altered their decision to obtain the low mortgage rates based upon the title insurance overcharges. Plaintiffs produced no evidence demonstrating their reliance on the HUD–1, other than asserting general and conclusory statements that a purchaser of title insurance would expect to receive a discounted rate if they qualified. (ECF No. 433 Part A: ¶ 26; ECF No. 433 Part B: ¶¶ 8, 9.) Plaintiffs did not satisfy the requirement that a plaintiff must provide evidence demonstrating how his or her knowledge about a mortgage loan's actual terms would have altered his or her decision to execute the mortgage. Plaintiffs failed to adduce sufficient evidence for a reasonable jury to find there was justifiable reliance.

Plaintiffs contend that justifiable reliance can be presumed because plaintiffs relied on First American to charge the proper rates for their refinancing transactions. In support of this argument plaintiffs rely heavily on the deposition of First American's designated witness, Evan Zanic, who testified that consumers rely on agents to prepare the HUD-1 correctly and rely on the agent to put the correct premium on the HUD-1. (ECF No. 433 Part B ¶ 2; ECF No. 389 at 5.) As an initial matter, Mr. Zanic's testimony is taken out of context. Viewed in its entirety, Mr. Zanic testified that the consumer would rely on the settlement agent to insert the fees that are being charged to them and collected at the closing. (ECF No. 376 at 166 (Depo. Trans. 132:8-12), 167 – 68 (Depo. Tran. 133:25 – 134 – 8.), 169 – 70 (Depo. Tran. 135:23 – 136: 1)). Mr. Zanic's testimony mirrors the findings of various courts which have been reluctant to find the charges disclosed on the HUD-1 to be anything other than an itemization of charges actually collected at the closing, and not an affirmative representation as to the accuracy of the amounts.

In Arthur v. Ticor Title Insurance Company of Florida., 569 F.3d 154, 162 (4th Cir. 2009), the court held that the defendant title insurer did not make a false statement on the HUD-1 by charging customers unlawfully high rates since the dollar amount listed was the dollar

amount charged. See Woods v. Stewart Title Guar. Co., No. 06-0705, 2006 WL 2135518, at *3 (D. Md. July 28, 2006) (dismissing negligent representation claim which alleged that title insurer "disclosed an excessive rate for title insurance on [plaintiff's] HUD-1 statement" finding that the HUD-1 did not make "any representation as to the legality" of the premium); Moll v. United States Life Title Ins. Co. of N.Y., 700 F. Supp. 1284, 1292 (S.D.N.Y. 1988) (HUD-1 was "not in fact deceptive, but correctly listed the premiums which were charged"); McCarrick v. Polonia Fed. Sav. & Loan Ass'n, 502 F. Supp. 654, 657 (E.D. Pa. 1980) (finding that the plaintiff failed to present evidence of the defendant's failure to disclose because the HUD-1 stated "all the charges and their purposes are clearly delineated" as required by 24 C.F.R. § 3500.8).

Federal law requires the settlement agent to itemize clearly "all charges imposed upon a borrower" and the "actual charges paid" by the parties on the HUD-1. 12 U.S.C. § 2603(a); 24 C.F.R. § 3500.8(b)(1). These statutes and regulations reflect that the HUD-1's utility is in its itemization and disclosure of charges being paid. Here, the record contains no information that First American or Mezzo collected more than the amount listed on line 1108 of the HUD-1. Plaintiffs' allegation that they were entitled to a discount for title insurance does not transform the HUD-1 into an affirmative misrepresentation on which justifiable reliance can be presumed. This theory is neither the law, nor supported by the evidence of record. No reasonable jury could conclude that plaintiffs justifiably relied on line 1108 of the HUD-1 based only on allegations that the amount listed was wrong because they were entitled to a discount.

Plaintiffs argue circumstantial evidence would permit a reasonable fact-finder to infer that a consumer would reasonably expect to be charged a lawful rate and would not voluntarily elect to pay a higher charge had they known about the discount. (ECF No. 389 at 17.) Plaintiffs cite a number of decisions which they contend allow recoveries based upon proof of

overcharges. (Id. at 11 – 17.)  The Court of Appeals for the Third Circuit in Hunt rejected a theory of liability based on "a causal connection between the misrepresentation and the harm" and required factual evidence showing the plaintiff's justifiable reliance. Hunt, 538 at 222.  The plaintiffs cannot overcome the precedential effect of that decision.

The decisions cited by plaintiffs are distinguishable.  In Grimes v. Enterprise Leasing Company of Philadelphia, LLC., 66 A.3d 330 (Pa. Super. Ct. 2013), the court liberally construed the UTPCPL and held that the plaintiff's allegations about intentional inflation of costs were sufficient to plead a claim under the statute, concluding that the true costs and threatening and planning to contact plaintiff's insurer and credit card issuer were sufficient to plead deceptive conduct.  The court also focused on whether the defendant could prevent the plaintiff from pleading ascertainable loss by stipulating that it would not attempt to collect her debt and would accept that Grimes incurred costs and fees associated with asserting her rights under the UTPCPL.  The holding in Grimes contradicts the Pennsylvania Supreme Court holdings in Toy, Yocca, and Weinberg.   Notably, First Americans' notice of supplemental authority, (ECF No. 436), reflects that on January 30, 2014, the Supreme Court of Pennsylvania granted a Petition for Allowance of Appeal filed by the defendant to decide whether the superior court erred when it held that a) "a private plaintiff who alleges deceptive conduct under the UTPCPL's catch-all provision…need not allege and prove justifiable reliance," and b) the plaintiff satisfied "the UTPCPL's 'ascertainable loss' requirement by voluntarily hiring an attorney and allegedly incurring litigation costs… ." Grimes v. Enterprise Leasing Co. of Philadelphia LLC., No. 488 MAL 2013, 2014 WL 349263 (Pa. Jan. 30, 2014).  This court declines to speculate on the possible holding of this case.

In <u>Toth v. Northwest Savings Bank</u>, No. 12-008014, 2013 WL 3477029 (Ct. Comm. Pl. June 25, 2013), a Pennsylvania trial court did not require the named plaintiff for the class to adduce evidence of her justifiable reliance where the losses were ascertainable and flowed "from the fraud or deceit." (<u>Id.</u> at *5.)  In other words, if evidence of reliance is not needed to show an ascertainable loss, it is not required to be proven.  While the trial court in <u>Toth</u> attempted to distinguish the Pennsylvania Supreme Court cases of <u>Toy</u>, <u>Yocca</u>, and <u>Weinberg</u>, it failed to recognize the difference between the plaintiffs in those cases and the plaintiff in <u>Toth</u>.  The plaintiff in <u>Toth</u> was a passive party subject to the internal banking procedures implemented by Northwest Savings Bank.  Plaintiff's loss flowed directly from Northwest Savings Bank's unilateral act of reordered withdrawals at the end of the day, which resulted in increased overdraft fees.  The plaintiffs in <u>Toy</u>, <u>Yocca</u>, and <u>Weinberg</u> all actively entered into an agreement or purchased a product.  They participated in the transaction as an equal party and their losses flowed from their decision to act.  In cases where the plaintiff actively participates in creating his or her ascertainable loss the plaintiff must demonstrate that he or she was induced into acting.  To hold otherwise directly contradicts the requirement that a plaintiff produce evidence of her justifiable reliance as recognized by the Court of Appeals for the Third Circuit and the Supreme Court of Pennsylvania. <u>Hunt</u>, 538 F.3d at 227; <u>Cohen</u>, 2013 WL 842706, at *6; <u>Toy</u>, 928 A.2d at 202; <u>Yocca</u>, 854 A.2d at 438; <u>Weinberg</u>, 777 A.2d at 446. Further, as discussed below, the court's decision in <u>Toth</u> fails to avoid individualized fact finding to determine damages across the class as required by the Supreme Court of the United States in <u>Comcast Corporation v. Behrend</u>, 133 S. Ct. 1426, 1433 (2013).  For those reasons, <u>Toth</u> is not persuasive in the context of this case.

Finally, In re U.S. Foodservices Inc. Pricing Litigation, 729 F.3d 108, (2d Cir. 2013), does not include a UTPCPL claim. The decisions cited by plaintiffs fail to address the requirement that a plaintiff must provide the fact-finder with sufficient evidence that she or he justifiably relied on the contents of the HUD-1 such that she would have acted differently had she known about the overcharge. Without this kind of evidence no reasonable jury could conclude that plaintiffs justifiably relied on the HUD-1 in support of their UTPCPL claim.

Even accepting all plaintiffs' evidence as true, and making all factual inferences in their favor, plaintiffs fail to offer evidence from which a reasonable jury could find justifiable reliance, which is an essential element of their UTPCPL claim. First American's motion for summary judgment must be GRANTED.

III. First American's Motion for Decertification

A. Standard of Review

Under Federal Rule of Civil Procedure 23 "an order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P 23(c)(1)(C) "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." Gen. Tel. Co of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). "Developments in the litigation, such as the discovery of new facts or changes in the parties or in the substantive or procedural law, will necessitate reconsideration of the earlier [class certification order]." Nelson v. Astra Merck, Inc., No. 98-1283, 1998 WL 737982, at *2 (E.D. Pa. Oct. 22, 1998). In this case additional facts were developed and significant changes occurred in the law governing class actions and UTPCPL claims. See Comcast, 133 S. Ct. at 1433; Wal-Mart, 131 S. Ct. at 2561; Hunt, 538 F.3d at 224; Cohen, 2013 WL 842706, at *5.

B. <u>Discussion</u>

Based on recent decisions issued by the Supreme Court of the United States and the Court of Appeals for the Third Circuit, First American moves to decertify the class on the ground that individual questions predominate over questions common to the class. (ECF No. 366-1.) Relying on <u>Cohen</u>, First American maintains that proof of justifiable reliance is "typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." (<u>Id.</u> at 6 (citing <u>Cohen</u>, 2013 WL 842706, at *4 (citing <u>Johnson v. Metlife Bank, N.A.</u>, 883 F.Supp.2d 542, 548-49 (E.D. Pa. 2012)))); <u>see</u> <u>Lewis</u>, 263 F.R.D. at 259; <u>Toy</u>, 928 A.2d at 208. First American argues that establishing entitlement to the reissue and refinancing rates will raise questions that must be answered class member by class member, underscoring the fundamental incompatibility between plaintiffs' claim and Federal Rule of Civil Procedure 23 after <u>Wal-Mart</u>. (ECF No. 411 at 1.) First American contends that <u>Comcast Corporation v. Behrend</u>, 133 S. Ct. 1426 (2013), requires that plaintiffs provide a sound methodology for determining damages across the class and plaintiffs failed to provide a system that does not include individual fact finding. (ECF No. 366-1 at 16.)

In opposition, plaintiffs content that legal and factual issues related to the Rate Manual predominate across the class. (ECF No. 390 at 1.) Plaintiffs argue that this case is distinguishable from the <u>Wal-Mart</u> decision because, whereas in Wal-Mart the employee policies and practices had to be considered in thousands of different stores around the country, this case turns on the legal construction of a single Rate Manual and its application to thousands of identical transactions within Pennsylvania. (<u>Id.</u> at 4.) Plaintiffs argue that they meet the requirements of <u>Comcast</u> because the mandated rates First American was obligated to charge

correspond directly to plaintiffs' theory of liability. (Id. at 3.)  Finally, plaintiffs reassert that individual inquiries are not required because justifiable reliance can be presumed based on the fiduciary relationship exception or on the theory that the overcharges caused an ascertainable loss across the class. (Id. at 3.)

First American's motion must be granted because the court already decided that the named plaintiffs failed to establish justifiable reliance under any asserted theory.  It follows that the fiduciary relationship exception and the theory concerning overcharges are not applicable here and justifiable reliance would need to be proven on an individual basis in this case, causing individual questions to predominate.  As set forth below no other class member can adequately represent the class.  The court must decertify the class.

In Wal-Mart, which the Supreme Court of the United States decided after this court's initial class certification opinion, the Court held commonality includes proof that a classwide proceeding will generate "common answers apt to drive the resolution of the litigation." Wal-Mart. 131 S. Ct. at 2551.  The Court explained that common contentions central to the classwide issues should be resolved "in one stroke." Id.  Here, a jury will need to inquire into each transaction to establish entitlement to the reissue or refinancing rate.  These individual inquires are incompatible with Federal Rules of Civil Procedure 23 after Wal-Mart.  By way of example, in Ramirez v. Fidelity National Insurance. Co., No. 09-230, 2013 WL 5493023 (D. Ariz. Sept. 11, 2013), the district court decertified the class based on Wal-Mart's analysis and the resulting tightening of the standards for class certification. Ramirez, 2013 WL 5493023, at *4. The district court observed that, "a large body of case law regarding class certification in nearly identical title insurance litigation has developed…all of which has uniformly rejected the contention that issues such as proof of refinancing and proof of prior title insurance can be

resolved on a class-wide basis… ."[1] Ramirez, 2013 WL 5493023, at *5; see Haskin v. First American Title Insurance Co., No. 10-5044, 2014 WL 294654, at *14 (D.N.J. Jan. 27, 2014) (files from each class member's transaction would need to be examined to determine whether a new loan was used to refinance a prior mortgage and if the transaction involved the same borrowers, the same property and violated the requirements of the Rate Manual). Plaintiffs in the instant case cannot establish their entitlement to a discounted rate, or their justifiable reliance on line 1108 of the HUD-1 on a class wide basis. Glover, 2013 WL 6237990, at *21. The lack of a single stroke resolution underlines the predominance of individual issues in this case and the need for decertification. Yarger, 285 F.R.D. at 327.

Further, to find special or unusual circumstances capable of allowing the plaintiffs to assert the fiduciary relationship exception "would…involve individual inquires and demonstrates lack of commonality and predominance." Cohen, 2013 WL 842706, at *5; see Allen-Wright, 2008 WL 5336701, at *7 (attempting to establish a presumption of reliance based on a fiduciary relationship that can exist only in "extraordinary circumstances…would contain the same individualized burden as the problem that plaintiff purports to solve"). A review capable of uncovering special or unusual circumstances with respect to an individual transaction requires a focused and detailed inquiry that would preclude class certification.

---

[1] See, e.g., Ahmad v. Old Republic Nat. Title Ins. Co., 690 F.3d 698 (5th Cir. 2012) (holding that insureds failed to satisfy commonality requirement for class certification because the jury will have to engage in file-by-file review); Randleman v. Fid. Nat. Title Ins. Co., 646 F.3d 347, 353 (6th Cir. 2011) (affirming the district court's decertification because title insurance purchases are not mandatory in Ohio and the resulting purchase by purchase review to find liability would force individual issues to predominate); Loef v. First Am. Title Ins. Co., No.311-GZS, 2012 WL 6113844 (D. Me. Dec. 10, 2012) (granting decertification because each class member would have to prove they qualified for a discounted refinance rate and First American had individualized defenses to individual class members); Boucher v. First Am. Title Ins. Co., No. C10-199RAJ, 2012 WL 3023316 (W.D. Wash. July 24, 2012) (denying a renewed motion to certify because each class member's claim depended on a file-by-file review of the class member's transaction).

Individualized fact finding will also be required to determine damages across the class, which is incompatible with Comcast's requirement that plaintiffs provide a system for finding damages that does not include individual fact finding. Comcast, 133 S. Ct. at 1433. Here, each plaintiff will need to present individual facts specifying which discounted rate they allege they were entitled to, and the corresponding monetary difference between the overcharge and their alleged entitled rate. "Questions of individual damage calculations will inevitably overwhelm questions common to the class." Id. In this case there will be the need to perform a fact-specific inquiry into each transaction to prove justifiable reliance and to find the value of each class member's damages. Ultimately, this review will require the court to parse out the details of each transaction and individual issues will continue to predominate over questions common to the class. Before Wal-Mart and Comcast "the case law was far more accommodating to class certification." In re Rail Freight Fuel Surcharge Antitrust Litig., 725 F.3d 244, 255 (D.C. Cir. 2013). After Wal-Mart and Comcast, Rule 23 requires a harder look at issues such as commonality and predominance.

Here, no named plaintiff could adequately represent the class to preserve this claim because summary judgment will be granted against them and in favor of First American. Courts have recognized a plaintiff may amend their complaint to find a suitable class representative if the court concludes that the named plaintiff's no longer suitable to represent the class. Foman v. Davis, 371 U.S. 178, 182 (1962). Rule 15(a) declares that leave to amend "shall be freely given when justice so requires; this mandate is to be heeded." Id.; see Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). In this particular instance, however, the class will be unable to name a plaintiff capable of asserting liability classwide without the need to perform an individualized review of their particular

transaction, and the individualized inquires will preclude a final determination about classwide commonality and predominance standards as required by <u>Wal-Mart</u> and <u>Comcast</u>. The court must decertify the class.

IV. <u>Other Issues and Plaintiffs' Renewed Motion for Partial Summary Judgment</u>

In light of the above discussion there is no need to decide any other issue raised by First American with respect to class certification, and plaintiffs' renewed motion for summary judgment will be denied as moot.

V. <u>Conclusion</u>

For the forgoing reasons, First American's motion for summary judgment and decertification must be GRANTED. Plaintiff's motion for summary judgment will be denied as moot.

Dated: March 7, 2014                                      <u>*/s/ Joy Flowers Conti*</u>
                                                         Joy Flowers Conti
                                                         Chief U.S. District Judge